1  RANDY S. GROSSMAN
   Acting United States Attorney
2  PETER S. HORN
   Assistant United States Attorney
3  California Bar No. 321358
   Office of the United States Attorney
4  880 Front Street, Room 6293
   San Diego, CA 92101-8893
5  Telephone: (619) 546-6795
6  Email: peter.horn@usdoj.gov

7  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF RODERICK MUCHIKEKWANAPE<br><br>a/k/a<br><br>"MUCHIKEKWANAPE, RODERICK, RODNEY"<br>"MUCH, RODERICK, TOOT"<br>"GAMBLER, THOMAS ROBERT"<br>"STARKES, PAUL EDWARD"<br>"GREEN, KEVIN" | Misc. Case No.: 21-MJ-1181-BGS<br><br>**UNITED STATES' MEMORANDUM OF EXTRADITION LAW AND REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS**<br><br>Hon. Bernard G. Skomal |

## INTRODUCTION

The United States respectfully requests that the fugitive Roderick Muchikekwanape be held without bond pending a hearing on the certification of his extraditability pursuant to 18 U.S.C. §§ 3181 *et seq.* Muchikekwanape brutally murdered and sexually assaulted a woman in Canada. He was convicted of first degree murder and sentenced to life prison without the possibility of parole until after he served 25 years. In October 2020, he escaped from his prison. A warrant was issued for his apprehension and recommitment in Canada, and he has been wanted by United States Marshals. He was arrested in San Diego on March 26, 2021, and the United States has filed in this Court a complaint for provisional arrest

with a view towards his extradition. Muchikekwanape should remain in custody pending extradition proceedings in this District. He cannot overcome the strong presumption against bail in extradition matters, and he cannot show he is not a flight risk or danger to the community, or that any special circumstances exist and warrant release.

In addition to setting forth the reasons Muchikekwanape should be detained, this memorandum summarizes the law on extradition. Extradition proceedings are unique and involve particular procedural, substantive, and evidentiary rules.

The United States submits this memorandum acting on behalf of the Government of Canada and pursuant to the Complaint in this matter and the Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), *and* the Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively, the "Treaty").

## BACKGROUND

**I.  Canada Seeks the Provisional Arrest and Extradition of Muchikekwanape When Muchikekwanape, Serving a Life Sentence for First Degree Murder, Escapes from Prison**

Through diplomatic channels, Canada has asked the United States for the provisional arrest of Muchikekwanape with a view towards his extradition. This request is pursuant to and in accordance with Article 11 of the Treaty. His arrest and extradition is sought because of his 2000 conviction for first degree murder and escape from prison in October 2020.

In July 1998, in Winnipeg, Manitoba, Muchikekwanape followed a woman as she was walking home. Muchikekwanape attacked her and dragged her under a bridge, where he then killed her in the course of a sexual assault. He beat her severely, causing fatal skull fractures, and breaking her jaw, cheekbones, and nose. He also removed her clothing from the waist down and used a sharp object to cut her genitalia. He removed her bracelet and threw her body into the river.

Immediately following the murder and assault, Muchikekwanape fled to a friend's home, where he washed his bloody clothes and took a bath. Two witnesses at the house, including Muchikekwanape's 14-year-old nephew, saw him with blood smeared on his face and body. Muchikekwanape gave his nephew the bracelet and his watch, which were covered in blood, and instructed him to wash them. But his nephew did not clean the bracelet and watch.

The victim's body was recovered from the river. Police also located the bracelet and watch at the house. Forensic analysis revealed that the blood on the bracelet and watch contained the victim's DNA.

In August 1998, Muchikekwanape was arrested and charged with first degree murder, in violation of Section 235(1) of the Criminal Code of Canada . In December 2000, he was convicted and sentenced—to life in prison, without the possibility of parole until after he served 25 years of his sentence.

Article 2 of the Treaty covers this offense. This Article states that "[e]xtradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment." Art. 2, Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* Arts. II, III Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990).

On October 29, 2020, Muchikekwanape escaped from the prison where he was serving his sentence. The same day, the Institution Head of Mission Institution in Mission, British Columbia issued a warrant for his apprehension and recommitment to custody in a penitentiary.

Canada has requested Muchikekwanape's provisional arrest with a view towards extradition, in accordance with Article 11 of the Treaty. In accordance with its own treaty obligations, the United States, through the United States Attorney for the Western District of Washington, filed under seal a complaint for provisional arrest with a view towards

extradition of Muchikekwanape on December 14, 2020. Based on that complaint, the chief magistrate judge of that district issued a warrant for the arrest of Muchikekwanape.

**II.    Muchikekwanape Is Arrested in San Diego**

On March 26, 2021, the San Diego Fugitive Task Force was notified that San Diego Police officers had identified Muchikekwanape at the University of California San Diego Hospital and placed him in custody. Deputy United States Marshals ("DUSMs") responded to the hospital. Muchikekwanape admitted his identity; he correctly spelled his name and provided his date of birth to DUSMs, and he acknowledged that each of a series of eight photos in Canada Correctional Service's photo history of him was a photo of him. DUSMs placed Muchikekwanape under arrest and transported him to the United States Marshals Service cell block for subsequent booking.  Muchikekwanape remains in the custody of the United States Marshals Service. Also on March 26, the United States filed an out-of-district complaint based on the arrest warrant and complaint for provisional arrest with a view towards extradition from the Western District of Washington. *United States v. Muchikekwanape*, No. 21-MJ-01157-DEB (Mar. 26, 2021), ECF No. 1.

On March 29, in accordance with its obligations under the Treaty and pursuant to 18 U.S.C. § 3184, the United States filed a complaint in this matter for provisional arrest with a view towards extradition because he may be found in the jurisdiction of this Court. ECF No. 1.[1]

The United States submits this memorandum of law to summarize applicable extradition law and set forth the several reasons for Muchikekwanape's detention pending extradition proceedings.

## DISCUSSION

This brief first explains the legal framework of extradition proceedings, which are not criminal proceedings. A court's role is limited. A court considers the requesting country's evidence and determines whether the legal requirements for certification and

---

[1] The United States intends to dismiss without prejudice its out-of-district complaint against Muchikekwanape once he appears on this extradition matter.

4

extraditability have been established. Those requirements are set out in the Treaty, statutes, and case law. An extradition hearing may be held, and at that hearing, a court decides whether to certify to the Secretary of State that the evidence provided is sufficient to sustain the charge by the requesting country. The Secretary of State, not the Court, determines whether to extradite the fugitive.

Special procedural and evidentiary rules apply to extradition hearings. The Federal Rules of Evidence do not apply. Nor do the Federal Rules of Criminal Procedure. In addition, the fugitive has no right to discovery or several constitutional protections that attach in criminal cases. The fugitive's ability to present evidence or defenses also are constrained.

Second, this brief explains why Muchikekwanape should be detained pending a hearing on the certification of his extraditability. Bail determinations, too, are different in extradition matters. The Bail Reform Act does not apply. There is a strong presumption against bail. A fugitive may be given bail only if he shows he is not a flight risk and not a danger to the community, and no special circumstances warrant his release. Here, there are no special circumstances justifying release, and Muchikekwanape plainly is a danger and serious flight risk. He committed a horrific first degree murder and sexual assault and then escaped prison in Canada, where he was serving a life sentence for his conviction.

## I. Legal Framework of Extradition Proceedings

The extradition process is *sui generis*. It shares some characteristics of a criminal proceeding, but international extradition is an executive function in which the judicial branch has a limited role—a role determined by treaty, statute, and case law.

### A. The Limited Role of the Court in Extradition Proceedings

Extradition is primarily an executive function with a specially defined role for the Court, which is authorized by statute to hold a hearing at which it determines whether to certify to the Secretary of State that the evidence provided by the requesting country is "sufficient to sustain the charge." 18 U.S.C. § 3184; *see, e.g.*, *United States v. Knotek*, 925 F.3d 1118, 1124 (9th Cir. 2019). The Secretary of State, and not the Court, then decides

whether the fugitive should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005). This bifurcated procedure reflects the fact that extradition involves "legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

At the extradition hearing, the Court's role is limited to considering the requesting country's evidence and determining whether the legal requirements for certification of extraditability—as defined in the applicable extradition treaty, statutes, and case law—have been established. *See Quinn v. Robinson*, 783 F.2d 776, 786 n.3 (9th Cir. 1986) (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)) (analogizing extradition hearing to a preliminary hearing in a criminal case). If the Court finds that the requirements for certification have been met, then it must provide the certification to the Secretary of State and commit the fugitive to the custody of the U.S. Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184 (following certification, the extradition judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made"); *see Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006); *Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000).

**B.     The Requirements for Certification**

The Court should certify to the Secretary of State that a fugitive is extraditable when the following requirements have been met: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge. *See Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008). These requirements are discussed in turn below.

### 1. Authority over the proceedings

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. The judicial officer conducting the extradition hearing Section 3184 prescribes does not exercise "any part of the judicial power of the United States," but rather acts in a "non-institutional capacity by virtue of a special authority." *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993) (citations and internal quotation marks omitted).

Both magistrate judges and district judges may render a certification under Section 3184. *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993). In this District, Local Criminal Rule 57.4 expressly permits magistrate judges to conduct extradition proceedings. L. Crim. R. 57.4(a)(3).

### 2. Jurisdiction over the fugitive

The Court has jurisdiction over a fugitive such as Muchikekwanape who is found within its jurisdictional boundaries. 18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person found within his jurisdiction…issue his warrant for the apprehension of the person so charged.").

### 3. Treaty in full force and effect

Section 3184 provides for extradition in specifically defined situations, including whenever a treaty or convention for extradition is in force between the United States and the requesting state. *See id.*; *Then v. Melendez*, 92 F.3d 851, 853 (9th Cir. 1996). The United States will satisfy this requirement at the extradition hearing by offering into evidence a declaration from an attorney in the Office of the Legal Adviser for the U.S. Department of State, attesting that there is a treaty in full force and effect between the United States and Canada. The Court must defer to the Department of State's determination in that regard. *Then*, 92 F.3d at 854.

### 4. Crimes covered by the treaty

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the treaty. Article I of the Treaty provides for the return of fugitives charged with, or convicted of, an extraditable offense—"any of the offenses covered by Article 2 of this Treaty committed within the territory of the other[.]" Art. 1, Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983. The question whether an offense is extraditable means determining "(1) whether it is listed as an extraditable crime in the relevant treaty; (2) whether the alleged conduct is criminalized in both countries; and, (3) whether the offenses in both countries are substantially analogous." *Knotek*, 925 F.3d at 1128-29.

Article 2 of the Treaty states that "[e]xtradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment." Art. 2, Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* Arts. I, II, III, Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990). This requirement is known as "dual criminality." *Knotek*, 925 F.3d 1118. In assessing whether the conduct alleged by Canada is criminalized both there and in the United States, the Court should examine the description of criminal conduct provided by Canada in support of its charges and decide whether that conduct, if it had been committed here, would be criminal under United States federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states. *See, e.g.*, *id.* at 1129, n.10. A requesting country need not establish that its crimes are identical to ours. *Id.* at 1131; *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998). Instead, "the court looks at whether 'the essential character of the transaction is the same, and made criminal by both statutes.'" *Knotek*, 925 F.3d at 1131 (quoting *Wright v. Henkel*, 190 U.S. 40, 62 (1903) (brackets omitted). "The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or,

in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312 (1922).

In fulfilling its function under Section 3184, the Court should liberally construe the applicable extradition treaty to effectuate its purpose, namely, the surrender of fugitives to the requesting country. *Factor*, 290 U.S. 276, 298-300; *see, e.g.*, *Martinez v. United States*, 828 F.3d 451, 463 (6th Cir. 2016) (en banc) ("default rule" is that any ambiguity in extradition treaty must be construed in favor of "facilitat[ing] extradition"); *In re Extradition of Mathison*, 974 F. Supp. 2d 1296, 1305 (D. Or. 2013). Because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers," *Grin v. Shine*, 187 U.S. 181, 184 (1902), the Court should "approach challenges to extradition with a view towards finding the offenses within the treaty," *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

### 5. Probable cause that the fugitive committed the offense

To certify the evidence to the Secretary of State, the Court must conclude that there is probable cause to believe that the crime charged by Canada was committed by the person before the Court. *Vo*, 447 F.3d at 1237. The evidence is sufficient, and probable cause is established, if it would cause a "prudent man" to "believ[e] that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotation marks and citation omitted). The extradition judge's probable cause determination is "not a finding of fact 'in the sense that the court has weighed the evidence and resolved disputed factual issues,'" but instead "'serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based.'" *Quinn*, 783 F.2d at 791 (quoting *Caplan v. Vokes*, 649 F.2d 1336, 1342 n.10 (9th Cir. 1981)).

In the case of a conviction, as here, the Court's determination that there is probable cause may be based solely upon the existence of a judgment of conviction in the requesting country. *See* Art. 9(4), Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983; *Spatola v. United States*,

9

925 F.2d 615, 618 (2d Cir. 1991) (stating that when "there has been a judgment of conviction [entered by a foreign court], there is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which *a fortiori* establishes probable cause" (citation omitted)); *Sidali v. I.N.S.*, 107 F.3d 191, 196 (3d Cir. 1997); *In re Extradition of Knotek*, No. LA CV 13-9204 BRO (JCG), 2016 WL 4726537, at *4 (C.D. Cal. Sept. 8, 2016); *United States v. Vigil*, No. 2:12-MJ-0226 GGH, 2013 WL 314755, at *3 (E.D. Cal. Jan. 25, 2013).

### C. An Extradition Hearing Follows Unique Procedures

#### 1. An extradition hearing is not a criminal proceeding

The purpose of an extradition hearing is to decide the sufficiency of each charge for which extradition is requested under the treaty; it is not to determine the guilt or innocence of the fugitive, which is reserved for the foreign court. *Collins*, 259 U.S. at 316; *Neely v. Henkel*, 180 U.S. 109, 123 (1901). Accordingly, an extradition hearing is not a criminal proceeding, *see, e.g.*, *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 828 (11th Cir. 1993); and it is governed by "the general extradition law of the United States and the provisions of the Treaty," *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444, 1450-51 (9th Cir. 1987). This results in the application of special procedural and evidentiary rules at extradition hearings.

First, the Federal Rules of Evidence do not apply to extradition hearings. Fed. R. Evid. 1101(d)(3) (("These rules—except for those on privilege—do not apply to…miscellaneous proceedings such as extradition or rendition."); *Then*, 92 F.3d at 855; *see Afanasjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir. 2005). Hearsay evidence is admissible at an extradition hearing, and a certification of extraditability is properly based entirely on the authenticated documentary evidence and information provided by the requesting government. *See, e.g.*, *Collins*, 259 U.S. at 317; *Skaftouros v. United States*, 667 F.3d. 144, 155, n.16 (2d Cir. 2011); *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986). Nothing more is required, and typically nothing more is provided. *See, e.g.*, *Zanazanian v. United States*, 729 F.2d 624, 627-28 (9th Cir. 1984) (police report describing

witness statements is competent evidence); *In re Extradition of Mainero*, 990 F. Supp. 1208, 1212-13, 1226-29 (S.D. Cal. 1997) (statements of co-conspirators and other witnesses sufficient in extradition to Mexico). Extradition treaties do not require, or even anticipate, the testimony of live witnesses at the hearing. Requiring the "demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916); *see also, e.g.*, *Zanazanian*, 729 F.2d at 626-27.

Second, the Federal Rules of Criminal Procedure do not apply to extradition proceedings. Rule 1 provides that "[p]roceedings not governed by these rules include…the extradition and rendition of a fugitive." Fed. R. Crim. P. 1(a)(5)(A); *Mathison*, 974 F. Supp. 2d at 1304.

Third, and relatedly, the fugitive has no right to discovery. *See, e.g.*, *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005); *Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2d Cir. 1976).

Fourth, many constitutional protections for criminal defendants do not apply here. For example, a fugitive has no right to cross-examine witnesses who might testify at the hearing, *see, e.g.*, *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1406-07 (9th Cir. 1988); there is no Sixth Amendment right to a speedy trial, *see, e.g.*, *In re Extradition of Kraiselburd*, 786 F.2d 1395, 1398 (9th Cir. 1986); the Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings, *see, e.g.*, *In re Extradition of Powell*, 4 F. Supp. 2d 945, 951 (S.D. Cal. 1998) (citing *Collins*, 262 U.S. at 429); the exclusionary rule is not applicable, *see, e.g.*, *Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980); and a fugitive does not have the right to confront his accusers, *see, e.g.*, *Bingham*, 241 U.S. at 517.

Fifth, the fugitive's right to present evidence is severely constrained. *See Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973). A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but rather may introduce evidence only explaining the submitted evidence. *See Charlton*, 229 U.S. at 461-

62. A contrary rule "might compel the demanding government to produce all its evidence…both direct and rebutting, in order to meet the defense thus gathered from every quarter." *Collins*, 259 U.S. at 316 (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)). The admission of explanatory evidence is largely within the discretion of the Court. *See Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir. 1978).

In addition, courts routinely reject technical and affirmative defenses in extradition proceedings. *See, e.g.*, *Bingham*, 241 U.S. at 517 (rejecting objections to extradition that "savor of technicality"); *Hooker*, 573 F.2d at 1368 (noting that extradition court "properly may exclude evidence of alibi, or facts contradicting the government's proof, or of a defense such as insanity"). These issues, which require factual or credibility determinations, are reserved for the courts in the requesting country to resolve after the fugitive is extradited.

### 2. Rule of non-inquiry

All matters raised by the fugitive as a defense to extradition, other than those related to the requirements for certification, are to be considered by the Secretary of State, not by the Court. *See* 18 U.S.C. §§ 3184, 3186. For example, the Secretary of State and not the Court should address a fugitive's contentions that an extradition request is politically motivated, that the requesting state's justice system is unfair, or that extradition should be denied on humanitarian grounds. *Arias v. Warden*, 928 F.3d 1281, 1285 (11th Cir. 2019) (fairness of foreign court); *Prasoprat*, 421 F.3d at 1016 (humanitarian considerations); *Koskotas v. Roche*, 931 F.2d 169, 173-74 (1st Cir. 1991) (motives of requesting state); *Quinn*, 783 F.2d at 789-90 (political crimes). This practice is consistent with the long-held understanding that the surrender of a fugitive to a foreign government is "purely a national act…performed through the Secretary of State." *See In re Kaine*, 55 U.S. 103, 110 (1852).

## II. Muchikekwanape Should Be Detained

The determination of whether to release a fugitive on bail is also *sui generis*. The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181 *et seq.*, do not provide for bail. Further, the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, does not

apply because, as explained above, an extradition proceeding is not a criminal case.[2] *See Kamrin*, 725 F.2d at 1228; *Martin*, 993 F.2d at 828. Case law provides that bail should be granted in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

### A. The Legal Framework of Bail International Extradition Proceedings

#### 1. There is a strong presumption against bail

Unlike in domestic criminal cases, "[t]here is a presumption against bail in an extradition case." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *see Martin*, 993 F.2d at 827; *In re Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1294 (S.D. Fla. 2017) ("[A]ny release of a detainee awaiting extradition is largely antithetical to the entire process."). The United States Supreme Court established this presumption against bail in *Wright v. Henkel*, explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

190 U.S. at 62.

The prudential reasons for this presumption against bail in international extradition cases are clear and compelling. When, as here, a requesting country meets the conditions of the Treaty, the United States has an "overriding interest in complying with its treaty

---

[2] The Bail Reform Act applies only to "offenses" in violation of U.S. law that are triable in U.S. courts. *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). Here, Muchikekwanape is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but rather with a crime in violation of the law of the requesting state, Canada.

obligations" to deliver the fugitive. *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009); *see also Wright*, 190 U.S. at 62. It is important that the United States be regarded in the international community as a country that honors its agreements to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. *See Martinelli Berrocal*, 263 F. Supp. 3d at 1306 ("[O]ur Executive Branch has a vested interest in enforcing our own treaty obligations for fear that other treaty partners will refrain from doing so in the future. And a difficult but necessary measure in carrying out that responsibility is to secure a wanted individual and surrender him or her to the foreign jurisdiction.").

### 2. A fugitive must be detained unless he establishes "special circumstances" and he is neither a flight risk nor a danger to the community

In light of the strong presumption against bail established in *Wright*, fugitives may not be released on bail unless they demonstrate that (1) they are neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant their release. *See, e.g.*, *In re Extradition of Kirby*, 106 F.3d 855, 862-63 (9th Cir. 1996); *Leitner*, 784 F.2d at 160-61; *In re Extradition of Antonowitz*, 244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017); *In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996).[3] "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." *In re the Extradition of Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996).

In evaluating a fugitive's risk of flight in the extradition context, courts have considered the fugitive's financial means, ties with foreign countries, and incentive to flee

---

[3] Several courts in this Circuit have required fugitives to meet this burden with clear and convincing evidence, reasoning that the presumption against bail in extradition cases justifies a heightened standard of proof, *see, e.g.*, *In re Extradition of Patel*, 08-430-MJ-HUBEL, 2008 WL 941628, at *1 (D. Or. Apr. 4, 2008); *Mainero*, 950 F. Supp. at 294; others have applied a preponderance of the evidence standard, *see, e.g.*, *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 n.4 (C.D. Cal. 2006). Other courts have found it unnecessary to resolve the issue because of the difficulty of satisfying either standard. *See, e.g.*, *In re Extradition of Perez-Cueva*, No. 16-0233M, 2016 WL 884877, at *2 (C.D. Cal. Mar. 7, 2016).

14

based on the severity of the offense, among other things. *See, e.g.*, *Martinelli Berrocal*, 263 F. Supp. 3d at 1304; *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010); *In re Extradition of Patel*, 08-430–MJ–HUBEL, 2008 WL 941628, at *2 (D. Or. Apr. 4, 2008).

Crucially, the special circumstances inquiry is separate from considerations of danger to the community or risk of flight. *See, e.g.*, *In re Extradition of Perez-Cueva*, No. 16-0233M, 2016 WL 884877, at *2 (C.D. Cal. Mar. 7, 2016) (special circumstances must exist in addition to absence of risk of flight). "Even a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance. *Leitner*, 784 F.2d at 161; *see also Salerno*, 878 F.2d at 317-18. Accordingly, a fugitive who poses a danger to the community or a risk of flight should be denied bail, even in the face of special circumstances. *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

For circumstances to be "special" and warrant bail in this context, they "must be extraordinary and not factors applicable to all defendants facing extradition." *Mainero*, 950 F. Supp. at 294 (citing *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992)). Courts have considered and rejected a lengthy list of alleged special circumstances, including:

- The complexity of the pending litigation, *see, e.g.*, *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996);

- The fugitive's need to consult with an attorney and/or participate in pending litigation, *see, e.g.*, *Smyth*, 976 F.2d at 1535-36;

- The fugitive's character, background, and/or ties to the community, *see, e.g.*, *In re Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017); *Beresford-Redman*, 753 F. Supp. 2d at 1089; *In re Extradition of Sidali*, 868 F. Supp. 656, 658 (D.N.J. 1994);

- The fact that the fugitive may have been living openly, *see, e.g.*, *Leitner*, 784 F.2d at 160-61; *In re Extradition of Pelletier*, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D. Fla. Nov. 16, 2009);

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, *see, e.g.*, *In re Extradition of Noeller*, 2017 WL 6462358, at *8-9; *Martinelli Berrocal*, 263 F. Supp. 3d at 1301-02; *In re the Extradition of Kyung Joon Kim*, 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004);

15

- U.S. citizenship or the pendency of naturalization or other immigration proceedings, *see, e.g.*, *Antonowitz*, 244 F. Supp. 3d at 1072; *Knotek*, 2016 WL 4726537, at *7; *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The fugitive's professional status, *see, e.g.*, *Pelletier*, 2009 WL 3837660, at *3-4; *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991);

- The availability of electronic monitoring, *see, e.g.*, *In re Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997);

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, *see, e.g.*, *Salerno*, 878 F.2d at 318; *Antonowicz*, 244 F. Supp. 3d at 1070; and

- The availability of bail for the same offense in the requesting country, *see, e.g.*, *Antonowicz*, 244 F. Supp. 3d at 1070; *Kyung Joon Kim*, 2004 WL 5782517, at *2; *Siegmund*, 887 F. Supp. at 1386-87.

While in certain exceptional cases some of the above may have been deemed a special circumstance, courts generally determine special circumstances to exist based on a confluence of factors, as opposed to any single consideration. Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**B. Muchikekwanape Should Not Be Released**

The Court should detain Muchikekwanape without bond because he is both a significant flight risk and a danger to the community, and no special circumstances exist.

Any fugitive charged or convicted of a crime in a foreign country necessarily is in flight or deliberately absent from that jurisdiction already, and that a fugitive has escaped prosecution or punishment in that country shows a risk of flight in the United States. *Cf. United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985).

Here, Muchikekwanape presents an especially serious risk of flight and danger to the community. He is a clear danger to the community because he committed first degree murder and a brutal sexual assault. In addition, he appears to have committed additional dangerous offenses *in this District within two weeks of his arrest*. There are several pending state charges against him.

Second, Muchikekwanape presents a serious flight risk because *he escaped from prison while serving a life sentence for his murder conviction*. He fled already, and he has been on the run in Canada and the United States for five months—since his escape in October 2020. He also has strong incentive to flee again because he was serving a life sentence, without the possibility of parole until he had served at least 25 years. *See Perez-Cueva*, 2016 WL 884877, at *3 (seriousness of allegations against fugitive "militates against release on bail"). Further, Muchikekwanape used at least one false name in San Diego just before he was arrested, and according to the information provided by Canada, he has several other aliases. This demonstrates an intent to hide his identity and abscond.

These reasons independently and together are more than sufficient to detain Muchikekwanape. In any event, even if the Court were to find that he is neither a flight risk nor a danger to the community, the United States is not aware of any circumstances that could warrant his release. And COVID-19 alone does not constitute a special circumstance justifying bail. Several courts have reached this conclusion. *See Matter of Extradition of Carr*, No. 20 CR 370, 2020 WL 4816052, at *5 (N.D. Ill. Aug. 18, 2020) ("generalized assertions of the risk of contracting COVID-19 in jail are insufficient to constitute 'special circumstances'"); *Risner v. Fowler*, No. 3:19-cv-03078-N (BT), 2020 WL 2110579, at *4–5, 7 (N.D. Tex. May 1, 2020) (concluding that risk of contracting virus was not a "special circumstance" even for defendant with underlying health conditions); *Valentino v. U.S. Marshal*, No. 4:20-CV-304, 2020 WL 1950765, at *1–2 (S.D. Tex. Apr. 15, 2020) (finding no "special circumstance" where senior defendant did not present evidence of "immediate danger" to him of contracting virus). Further, the subject of an extradition complaint must make "an extraordinary showing of conditions not merely applicable to all defendants facing extradition." *In the Matter of Extradition of Schumann*, 2018 WL 4777562, at *6 (N.D. Ill. Oct. 3, 2018) (citation omitted). If every extradition detainee at risk for Covid-19 has a special circumstance, then no detainee has a special circumstance.

If the Court would be inclined to grant bail here, the United States respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances." Moreover, to protect the ability of the United States to meet its treaty obligations to Canada, the government also requests that the Court notify the parties within a reasonable amount of time in advance of any contemplated release order.

## **CONCLUSION**

Muchikekwanape should be detained pending resolution of this extradition proceeding.

DATED: March 29, 2021

Respectfully submitted,

RANDY S. GROSSMAN
Acting United States Attorney

*/s/ Peter S. Horn*
PETER S. HORN
Assistant United States Attorney