# EXHIBIT B

| 101st Congress 2d Session | SENATE | Treaty Doc. 101-17 |

# PROTOCOL AMENDING THE EXTRADITION TREATY WITH CANADA

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE PROTOCOL SIGNED AT OTTAWA ON JANUARY 11, 1988, AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA, SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974



APRIL 24, 1990.—Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

39-118                    WASHINGTON : 1990

B00001

# LETTER OF TRANSMITTAL

THE WHITE HOUSE, *April 24, 1990.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Protocol signed at Ottawa on January 11, 1988, amending the Treaty on Extradition Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. I transmit also, for the information of the Senate, the report of the Department of State with respect to the protocol.

The protocol amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. It represents an important step in improving law enforcement cooperation and combatting terrorism by excluding from the scope of the political offense exception serious offenses typically committed by terrorists; e.g., murder, manslaughter, kidnapping, use of an explosive device capable of endangering life or causing grievous bodily harm, and attempt or conspiracy to commit the foregoing offenses.

The protocol also will help to improve implementation of the current extradition treaty in several other respects. Most significant, the protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, *inter alia,* parental child abduction and certain additional narcotics offenses will be covered by the new treaty.

I recommend that the Senate give early and favorable consideration to the protocol and give its advice and consent to ratification.

GEORGE BUSH.

(III)

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, April 10, 1990.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Protocol amending the 1971 Extradition Treaty Between the United States of America and Canada signed at Ottawa January 11, 1988. I recommend that the Protocol be transmitted to the Senate for advice and consent to ratification.

The Protocol supplements and amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974 (27 U.S.T. 983; TIAS 8237). The Protocol would exclude specified crimes of violence, typically committed by terrorists, from the scope of the political offense exception to extradition. It therefore represents an important step toward improving law enforcement cooperation and countering the threat of international terrorism and other crimes of violence. In addition, the Protocol will help improve the implementation of the current Treaty in several other respects. Most significantly, the Protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, inter alia, parental child abduction and certain additional narcotics offenses will be covered.

Article 2 of the 1971 Extradition Treaty, as amended, which incorporates a Schedule of extraditable offenses, has been replaced in its entirety. Pursuant to the current Extradition Treaty, only crimes that are listed in the Schedule are considered extraditable offenses. As amended by Article I of the Protocol, Article 2 of the 1971 Treaty, as amended, adopts a dual criminality approach, which emphasizes extradition based on underlying criminal conduct rather than for a particular offense. A dual criminality clause permits extradition for any crime that is punishable in both countries by imprisonment or other detention for at least one year. Inclusion of a dual criminality clause, therefore, obviates the need to renegotiate or supplement the Treaty as offenses, such as computer-related crimes or money laundering, become punishable under the laws of both states.

Article I of the Protocol replaces Article 2 of the 1971 Treaty and provides that an offense is extraditable notwithstanding that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States. This provision will allow the United States to request extradition for offenses including interstate and foreign travel or transportation in aid of racketeering enterprises

(1)

even though the Canadian laws do not include analogous jurisdictional elements for similar underlying criminal behavior. The new provision also stipulates that offenses that relate to taxation or revenue or that are of a "purely fiscal character" will be extraditable offenses.

Article II of the Protocol is a technical amendment, deleting the Schedule of extraditable offenses annexed to the 1971 Treaty, as amended, and incorporated by reference in Article 2.

Article III of the Protocol deletes Article 3 of the 1971 Treaty, in which a particularized definition of "territory," which was necessary at that time to cover certain types of hijacking offenses, is no longer necessary, as both the United States and Canada are parties to the Hague Convention for the Suppression of Unlawful Seizure of Aircraft, done at The Hague December 16, 1970, and entered into force October 14, 1971, (Hijacking Convention) (22 U.S.T. 1641; TIAS 7192) and the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, done at Montreal September 23, 1971, and entered into force January 26, 1973, (Sabotage Convention) (24 U.S.T. 564; TIAS 7570).

Article 3(3) of the 1971 Treaty is amended to give the Executive or other appropriate Authority the discretion to extradite fugitives when the requesting state has jurisdiction over an offense in a situation where the laws of the requested state would not provide for jurisdiction in similar circumstances.

Article IV of the Protocol replaces Article 4 of the 1971 Treaty, and effectively limits the scope of the political offense exception. It specifies certain crimes which shall not be regarded as political offenses, including murder, manslaughter, malicious assault, kidnapping, specified explosives offenses, and conspiracy or attempt to commit any of the foregoing offenses.

In addition, Article IV of the Protocol includes a provision that excludes from the reach of the political offense exception any offense for which both the United States and Canada have an international treaty obligation to extradite the person or submit his case for prosecution; e.g., aircraft hijacking pursuant to the Hijacking Convention; aircraft sabotage pursuant to the Sabotage Convention; crimes against internationally protected persons, including diplomats, under the Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents, done at New York December 14, 1973 (28 U.S.T. 1975; TIAS 8532); and hostage taking pursuant to the International Convention against the Taking of Hostages, done at New York on December 17, 1979. This exception will also extend to crimes similarly defined in future multilateral treaties.

Article V of the Protocol replaces Article 7 of the 1971 Extradition Treaty, which allows the Requested State to defer surrender of a fugitive being proceeded against or serving a sentence in its territory until the conclusion of the proceedings and the full execution of any punishment. Under the Protocol, the Requested State has the discretion to choose to extradite to the Requesting State a fugitive who is serving a prison sentence in the Requested State before the expiration of his sentence. This alternative of temporary surrender is routinely included in our modern extradition treaties.

Article VI of the Protocol replaces Article 11(3) of the current Treaty to extend the period of provisional arrest in the Requested State from forty-five days to sixty days, which is the time period most commonly provided under U.S. extradition treaties. The extension will allow prosecutors greater latitude in assembling extradition packages and in making necessary adjustments or additions to the documents.

Article VII of the Protocol amends the 1971 Treaty by adding a provision that establishes that, in cases where both states have jurisdiction to prosecute for an offense, the Executive Authority of the Requested State will consult with the Executive Authority of the Requesting State and make a decision whether to extradite the fugitive, or whether to submit the case to its competent authorities for the purpose of prosecution, after considering all relevant factors.

Article VIII of the Protocol provides that its provisions shall apply to any offense committed, any request made or any person found extraditable before or after the entry into force of the Protocol, but shall not apply to an offense committed before the Protocol enters into force if the offense in question was not an offense under the laws of both Contracting Parties at the time of its commission.

Article IX of the Protocol sets forth the procedures for ratification and entry into force.

I enclose, for the information of the Senate, an exchange of letters, dated January 11, 1988, which restates that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters," is an extraditable offense under the 1971 Extradition Treaty.

The Department of Justice joins the Department of State in favoring transmission of this Protocol to the Senate at the earliest possible date.

Respectfully submitted,

JAMES W. BAKER III.

Enclosure: As stated.

THE SECRETARY OF STATE,
*Washington, January 11, 1988.*

Hon. JOE CLARK, P.C., M.P.,
*Secretary of State for External Affairs of Canada, Ottawa.*

DEAR MR. MINISTER: I refer to the Protocol Amending the Treaty on Extradition between the United States and Canada we signed today and have the honor to address to you the following.

The United States and Canada recognize that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters", is an extraditable offense under the United States-Canada Extradition Treaty.

Where a person has been charged with or convicted of such an offense in Canada and is found within the jurisdiction of the United States, the United States agrees, upon request, to commence extradition proceedings against such a person pursuant to the Treaty in order that the person may be returned to Canada.

4

The United States will use its best efforts to honor Canadian requests for testimony, information, or other assistance pertaining to such abductions.

Canada and the United States agree to cooperate to deter such transborder abductions. To assist in achieving that purpose, the United States will continue to exert its best efforts to inform those engaged in business as bail bondsmen or bounty hunters and other interested parties of the positions set forth in this exchange of letters.

Canada and the United States agree to consult promptly concerning any case of transborder abduction involving bounty hunters which might arise in the future. The purpose of such consultations shall be to address matters relating to any such case, including any request by the Government of Canada for the return of the person so abducted. In the event of return, the Governments agree to cooperate to have the abducted person escorted to Canada and taken into custody at the border, pursuant to a request for provisional arrest, pending the outcome of extradition proceedings. For the purpose of these consultations, the principal law enforcement contact for the United States will be the Director of the Office of International Affairs of the Criminal Division of the Department of Justice.

I have the honor to propose that this letter and your reply constitute an understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Sincerely yours,

GEORGE P. SHULTZ.

OTTAWA, *January 11, 1988.*

JLA-0026.
Hon. GEORGE P. SHULTZ,
*Secretary of State of the United States of America.*

DEAR MR. SECRETARY: I have the honour to acknowledge receipt of your letter of today's date concerning transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters". I accept your proposal that your letter and this reply constitute an Understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Yours sincerely,

JOE CLARK.

B00006

PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974

The Government of the United States of America and the Government of Canada;

Desiring to make more effective the Extradition Treaty between the Contracting Parties, signed at Washington on December 3, 1971, as amended by the agreement effected by an Exchange of Notes on June 28 and July 9, 1974 (hereinafter referred to as "the Extradition Treaty");

Have agreed as follows:

### ARTICLE I

Article 2 of the Extradition Treaty is deleted and replaced by the following:

#### "ARTICLE 2

"(1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

"(2) An offense is extraditable notwithstanding

"(i) that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States, or

"(ii) that it relates to taxation or revenue or is one of a purely fiscal character."

### ARTICLE II

The SCHEDULE to the Extradition Treaty, as amended, is deleted.

### ARTICLE III

Paragraph (2) of Article 3 of the Extradition Treaty is deleted. Paragraph (3) of Article 3 of the Extradition Treaty is amended to read as follows:

"(2) When the offense for which extradition is requested was committed outside the territory of the requesting State, the executive or other appropriate authority of the requested State shall grant extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances. If the laws in the requested State do not so provide, the executive

(5)

authority in the requested State may, in its discretion, grant extradition."

## Article IV

Paragraph (2) of Article 4 of the Extradition Treaty, as amended, is deleted and replaced by the following:

"(2) For the purpose of this Treaty, the following offenses shall be deemed not to be offenses within subparagraph (iii) of paragraph 1 of this Article:

"(i) An offense for which each Contracting Party has the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to its competent authorities for the purpose of prosecution;

"(ii) Murder, manslaughter or other culpable homicide, malicious wounding or inflicting grievous bodily harm;

"(iii) An offense involving kidnapping, abduction, or any form of unlawful detention, including taking a hostage;

"(iv) An offense involving the placing or use of explosives, incendiaries or destructive devices or substances capable of endangering life or of causing grievous bodily harm or substantial property damage; and

"(v) An attempt or conspiracy to commit, or counselling the commission of, any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses."

## Article V

Article 7 of the Extradition Treaty is deleted and replaced by the following:

### "Article 7

"When the person sought is being proceeded against or is serving a sentence in the requested State for an offense other than that for which extradition is requested, the requested State may surrender the person sought or postpone surrender until the conclusion of the proceedings or the service of the whole or any part of the sentence imposed."

## Article VI

Paragraph (3) of Article 11 of the Extradition Treaty is deleted and replaced by the following:

"(3) A person arrested shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to such application if a request for extradition and the documents specified in Article 9 have not been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request and documents are subsequently received."

## Article VII

The Extradition Treaty is amended by adding the following after Article 17:

B00008

7

"Article 17 bis

"If both contracting Parties have jurisdiction to prosecute the person for the offense for which extradition is sought, the executive authority of the requested State, after consulting with the executive authority of the requesting State, shall decide whether to extradite the person or to submit the case to its competent authorities for the purpose of prosecution. In making its decision, the requested State shall consider all relevant factors, including but not limited to:

"(i) the place where the act was committed or intended to be committed or the injury occurred or was intended to occur;

"(ii) the respective interests of the Contracting Parties;

"(iii) the nationality of the victim or the intended victim; and

"(iv) the availability and location of the evidence."

Article VIII

Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date.

Article IX

(1) This Protocol shall be subject to ratification in accordance with the applicable procedures of the Government of the United States and the Government of Canada and instruments of ratification shall be exchanged as soon as possible.

(2) The Protocol shall enter into force upon the exchange of instruments of ratification.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

DONE in duplicate at Ottawa, this 11th day of January 1988, in the English and French languages, the two texts being equally authentic.

For the Government of the United States of America.

George P. Shultz.

For the Government of Canada.

Joe Clark.

O

B00009

**FORM:**      **Certificate of Official Records**

<u>CERTIFICATE OF AUTHENTICITY OF OFFICIAL RECORDS</u>

I, the undersigned, _____, attest that my position with the Government of Canada is _____ and that in that position I am authorized by the laws of Canada to attest that the documents attached hereto and described below:

(1)   are true copies of official records that are authorized by the laws of Canada to be recorded or filed in _____, which is a government office or agency.

(2)   set forth matters that are authorized by the laws of Canada to be reported and recorded or filed.

Description of Documents:

(SEAL)

_____
(Signature)

_____
(Title)

_____
(Place)

_____
(Date)

B00010