RANDY S. GROSSMAN
Acting United States Attorney
PETER S. HORN
Assistant United States Attorney
California Bar No. 321358
New York Bar No. 5333653
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: 619-546-6795
Email: peter.horn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF<br>THE EXTRADITION OF<br>RODERICK MUCHIKEKWANAPE<br><br>a/k/a<br><br>"MUCHIKEKWANAPE, RODERICK, RODNEY"<br>"MUCH, RODERICK, TOOT"<br>"GAMBLER, THOMAS ROBERT"<br>"STARKES, PAUL EDWARD"<br>"GREEN, KEVIN" | Misc. Case No.: 21-MJ-1181-BGS<br><br>**UNITED STATES'<br>MEMORANDUM OF LAW IN<br>SUPPORT OF EXTRADITION**<br><br>Date: July 22, 2021<br>Time: 1:30 p.m.<br><br>Hon. Bernard G. Skomal |

# **TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| INTRODUCTION | | | 1 |
| BACKGROUND | | | 1 |
| I. | Factual Background | | 1 |
| II. | Procedural Background | | 4 |
| ARGUMENT | | | 5 |
| I. | Legal Framework of Extradition Proceedings | | 5 |
| II. | The Requirements for Certifying Extraditability Are Met | | 6 |
| | A. | This Court Has Authority over the Proceedings | 7 |
| | B. | This Court Has Jurisdiction over Muchikekwanape | 7 |
| | C. | The Treaty Is in Full Force and Effect | 7 |
| | D. | The Treaty Covers Muchikekwanape's Offenses | 8 |
| | | 1.  Legal Framework | 8 |
| | | 2.  First-Degree Murder Is an Extraditable Offense | 9 |
| | | 3.  Escape from Prison Is an Extraditable Offense | 11 |
| | E. | There Is Probable Cause To Believe Muchikekwanape Committed These Offenses | 12 |
| | | 1.  Legal Framework | 12 |
| | | 2.  Muchikekwanape's Conviction for Murder Is Conclusive | 13 |
| | | 3.  Muchikekwanape Escaped from Prison | 14 |
| | | 4.  The Person Before the Court Is the Person Wanted by Canada | 14 |
| III. | Extradition Hearings Follow Unique Procedures, and Certification Here Is Appropriate Based on the Documents Canada Has Submitted | | 15 |
| CONCLUSION | | | 18 |

# INTRODUCTION

Roderick Muchikekwanape is wanted in Canada. He was convicted of first-degree murder, received a life sentence, escaped from a British Columbia prison, and was at large until his arrest in San Diego in March 2021.

Muchikekwanape was arrested here on a warrant for provisional arrest with a view towards extradition. The United States subsequently received a formal request from Canada for his extradition (attached hereto as Exhibit A). Canada made its formal and provisional requests in accordance with the Extradition Treaty between the United States and Canada.

Canada's request to extradite Muchikekwanape has two grounds. First, Canada seeks extradition to enforce his life sentence for murder. In 2000, Muchikekwanape was convicted of first-degree murder in the course of a horrendous sexual assault and sentenced to life in prison without the possibility of parole for at least 25 years. But in October 2020, he escaped from prison and remained at large until he was arrested here in March. Second, because Muchikekwanape escaped from custody, Canada has charged him by indictment with escape and being large without excuse. Canada's inclusion of this escape charge is proper and justified.

Both offenses are extraditable offenses. And there is no question the fugitive before the Court, Muchikekwanape, is the same person who committed these offenses and whom Canada seeks to have extradited. The Court should certify his extraditability based on the documents submitted here.

# BACKGROUND

## I.   Factual Background

In 1998, Muchikekwanape attacked, sexually assaulted, and murdered a woman in Winnipeg, Canada. Ex. A at 56-57 ¶¶ 5-6, 80-81 ¶ 4. He dragged her under a bridge and beat her with a rock, causing serious injuries including a fractured skull, broken jaw, cheekbones, and nose. *Id.* at 56-57 ¶¶ 5-6, 80 ¶ 4. He removed her clothing from the waist down and cut her genitalia with a sharp object. *Id.* at 56-57 ¶ 6, 80-81 ¶ 4. After removing

her bracelet, he dragged the woman's body down a riverbank and threw it into the river. *Id.* at 81 ¶ 4.

Muchikekwanape was arrested and charged with first-degree murder, in violation of § 235(1) of the Criminal Code of Canada. *Id.* ¶ 5. In October 2000, after a jury trial, he was convicted and sentenced to life in prison without the possibility of parole for at least 25 years. *Id.* at 61, 81 ¶¶ 6-7, 85.

In December 2000, he began serving his sentence at a Canadian federal penitentiary in Manitoba. *Id.* at 81 ¶ 9. In August 2020, he was transferred to a different federal penitentiary: Mission Institution in Mission, British Columbia. *Id.* at 57 ¶ 8, 81 ¶ 9.

He escaped from that prison two months later. *Id.* at 57 ¶¶ 9-12, 81 ¶ 10. A headcount at Mission Institution around 10:00 p.m. on October 29, 2020 revealed that Muchikekwanape was not accounted for and could not be found in the prison or on its grounds. *Id.* at 57 ¶ 10. All of his personal effects were missing from his room. *Id.* ¶ 11. Muchikekwanape had told another inmate about his desire to go to the United States, and earlier that day, he was observed behaving unusually—restless and under stress. *Id.* ¶ 12. Around 10:30 p.m. that evening, a correctional manager at Mission Institution reported Muchikekwanape's escape to the Correctional Service of Canada. *Id.* at 57 ¶ 9, 81-82 ¶ 11. The institutional head of Mission Institution immediately issued a warrant for Muchikekwanape's recommitment to custody in a penitentiary. *Id.* at 58 ¶ 13, 64, 82 ¶ 12, 87. The period remaining on his sentence is life. *Id.* at 82 ¶ 16.

On November 6, Muchikekwanape was charged by indictment in the Provincial Court of British Columbia with escape from lawful custody and being at large without excuse, in violation of § 145(1) of Canada's Criminal Code. *Id.* at 49 ¶¶ 13-15, 50-51 ¶¶ 18-31, 58 ¶ 14, 66. The same court also issued a warrant for his arrest for this escape offense. *Id.* at 50, 68.

A person matching Muchikekwanape's description was seen outside Seattle, Washington in November 2020, and so on December 4, Canada sent the United States a request for Muchikekwanape's provisional arrest with a view towards extradition. *Id.* at 82

¶¶ 13-14. Canada's request was pursuant to the governing Treaty here, the Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), *and* the Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively, the "Treaty"), Ex. A at 5-43.

Canada has provided identifying information including his full name and several aliases, date of birth, height (183 cm / 6 ft. 0 in.), weight (98 kg / 216 lbs.), eye color (brown), hair color (black), and a photo of him taken in August 2020. Ex. A at 59 ¶ 19, 70, 72, 82 ¶ 17, 83 ¶ 18, 89.

Muchikekwanape remained at large between October 2020 and March 2021. He was arrested by San Diego Police on March 13 and March 25 on different sets of charges but was not identified as Roderick Muchikekwanape because he was using and provided authorities with an alias, "Kevin Green". Following his March 25 arrest, he was booked into San Diego County Jail, and upon his release on March 26, paramedics (but not law enforcement officers) brought him to University of California San Diego Hospital for medical attention.

Muchikekwanape finally was identified and arrested at UCSD Hospital. Hospital staff found it unusual that he provided two different names—one of them his real one, Muchikekwanape. Law enforcement at the hospital conducted a search of these names and Muchikekwanape's real date of birth, which he provided, and noticed the warrant for his provisional arrest. San Diego Police officers and Sheriff's Deputies thus placed him in custody and informed the U.S. Marshals Service. Deputy U.S. Marshals responded, and Muchikekwanape admitted his identity: he correctly spelled his full name, provided his date of birth (the same date Canada provided), and acknowledged that each of a series of eight photos in Canada Correctional Service's photo history of him—including the photo in Canada's extradition package, Ex. A at 72, 89—was a photo of him. The Deputy Marshals placed Muchikekwanape under arrest and brought him into federal custody. His

physical identifiers upon booking match those Canada provided, and his booking photos also show that he is the same person wanted by Canada.[1]

## II.     Procedural Background

On March 29, pursuant to the Treaty and 18 U.S.C. § 3184, and because Muchikekwanape was found within this Court's jurisdiction, the United States filed a complaint in this Court for provisional arrest with a view towards extradition. Compl., ECF No. 1.[2] Muchikekwanape made his initial appearance on April 1, and the Court ordered that he remain detained pending extradition proceedings. ECF No. 12.

On May 12, Muchikekwanape moved for his release. App. for Order To Release Relator from Federal Custody (May 12, 2021), ECF No. 18. He argued he should be released because the United States had not filed a formal extradition request from Canada within 45 days of his arrest here. *Id.* The United States opposed his application for release because the timeframe for the receipt of a formal extradition request is 60 days, not 45 days, based on the First Protocol Amending the Treaty: until May 25. U.S. Resp. in Opp. to Muchikekwanape's App. for Release (May 13, 2021), ECF No. 19. The United States also explained the timing and process of filing Canada's formal extradition package. *Id.* at 3-5. The Court denied Muchkekwanape's motion and adopted the United States' response in full. Order Denying App. for Release (May 18, 2021), ECF No. 21 at 2.

The U.S. Department of State received a formal extradition request from the Government of Canada on May 21. *See* Ex. A; *see also id.* at 1 ¶ 3, 2 ¶ 6. Canada's request complies with the Treaty, including its 60-day timeline for submitting formal extradition requests. *See* Ex. A at 1 ¶ 3, 2 ¶ 6; Treaty Art. 11(3), Ex. A at 44. And the Charge d'Affaires

---

[1] If Muchikekwanape contests identity, then the United States will submit additional evidence of his identifying information, including his appearance in booking photos taken after his arrest here, all of which shows that the person before the Court is the same person whose extradition Canada seeks.

[2] Muchikekwanape's arrest was pursuant to a warrant on a complaint filed in U.S. District Court for the Western District of Washington for provisional arrest with a view towards extradition. *See* Compl. ¶¶ 4, 9 (Mar. 29, 2021), ECF No. 1; Compl., *In re Extradition of Muchkwanape*, 20-MJ-800 (Dec. 14, 2020), ECF No. 1. Because extradition proceedings have properly gone forward here, the Western District of Washington case has been dismissed without prejudice. *Id.*, ECF Nos. 7-8.

4

of the United States, of the U.S. Embassy in Ottawa, Canada, certified Canada's extradition package in accordance with 18 U.S.C. § 3190. *Id.* at 2 ¶ 6, 44. Canada's documents thus are properly and legally authenticated and must be admitted into evidence in these proceedings. *Id.* at 44; 18 U.S.C. § 3190; Treaty Art. 10(2)(a), Ex. A at 42. The United States produced Canada's extradition request to Muchikekwanape on May 28.

In accordance with the briefing schedule set at the May 27 status hearing, the United States now files this memorandum of law in support of extradition together with Canada's formal extradition package.

## ARGUMENT

This section explains (I) the legal framework of extradition proceedings, (II) that the requirements for certifying extradition are met here, and (III) the unique procedures of extradition hearings and that Muchikekwanape's extraditability should be certified based on Canada's extradition package alone.

### I. Legal Framework of Extradition Proceedings

Extradition is primarily an executive function with a specially defined role for the Court. The Court is authorized by statute to hold a hearing at which it determines whether to certify to the Secretary of State that the evidence provided by the requesting country is "sufficient to sustain the charge." 18 U.S.C. § 3184; *see, e.g.*, *United States v. Knotek*, 925 F.3d 1118, 1124 (9th Cir. 2019). The Secretary of State, and not the Court, then decides whether the fugitive should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005); *see also* U.S. Mem. of Extradition Law and Request for Detention Pending Extradition Proceedings at 5-6 (Mar. 29, 2021), ECF No. 4.

At the extradition hearing, the Court's role is limited to considering the requesting country's evidence and determining whether the legal requirements for certification of extraditability—as defined in the applicable extradition treaty, statutes, and case law—have been established. *See Quinn v. Robinson*, 783 F.2d 776, 786 n.3 (9th Cir. 1986) (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)). If the Court finds that the requirements for

certification have been met, then it must provide the certification to the Secretary of State and commit the fugitive to the custody of the U.S. Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184; *see Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006); *Barapind v. Reno*, 225 F.3d 1100, 1105 (9th Cir. 2000).

In interpreting an extradition treaty, the court should construe it "to enlarge the rights of the parties." *Cucuzella v. Keliikoa*, 638 F.2d 105, 107 n.3 (9th Cir. 1981). And the treaty should be liberally construed to effectuate its purpose: the surrender of fugitives to the requesting country. *Factor v. Laubenheimer*, 290 U.S. 276, 298-300 (1933); *see, e.g.*, *Martinez v. United States*, 828 F.3d 451, 463 (6th Cir. 2016) (en banc); *In re Extradition of Mathison*, 974 F. Supp. 2d 1296, 1305 (D. Or. 2013); *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

## II.     The Requirements for Certifying Extraditability Are Met

The Court should certify to the Secretary of State that a fugitive is extraditable when the following requirements have been met: (1) the Court is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge. *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016); *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008). Each requirement is satisfied here.

### A.     This Court Has Authority over the Proceedings

Extradition proceedings may be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. The judicial officer conducting the extradition hearing does not exercise "any part of the judicial power of the United States," but rather acts in a "non-institutional capacity by virtue of a special authority." *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993) (citations and internal quotation marks omitted).

Both magistrate judges and district judges may render a certification under Section 3184. *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993). In this District, Local Criminal Rule 57.4 expressly permits magistrate judges to conduct extradition proceedings. L. Crim. R. 57.4(a)(3). This Court has authority.

### B. This Court Has Jurisdiction over Muchikekwanape

The Court has jurisdiction over a fugitive who is found within its jurisdictional boundaries. Section 3184 provides that a magistrate judge "may, upon complaint made under oath, charging any person found within his jurisdiction…issue his warrant for the apprehension of the person so charged, that he may be brought before such…magistrate judge, to the end that the evidence of criminality may be heard and considered." 18 U.S.C. § 3184. A provisional arrest warrant for extradition provides nationwide authority to arrest the fugitive. *Pettit v. Walshe*, 194 U.S. 205, 218-20 (1904). Under § 3184 and case law, extradition proceedings properly are held in the jurisdiction in which the fugitive is found. *See id.* at 218; *Zhenli Ye Gon v. Holt*, 774 F.3d 207, 210 (4th Cir. 2014); *see also, e.g.*, Compl., *In re Extradition of Cesar Horacio Duarte Jaquez*, No. 20-mc-22829-UNA (S.D. Fla. July 10, 2020), ECF No. 1; *In re Extradition of Trinidad*, 754 F. Supp. 2d 1075, 1079 (N.D. Cal. 2010); *In re Extradition of Lingad*, No. 06-mg-1278-POR, 2007 WL 628025, at *6 (S.D. Cal. Feb. 16, 2007).

Because Muchikekwanape was found within this District, this Court has jurisdiction over him in these proceedings.

### C. The Treaty Is in Full Force and Effect

Section 3184 provides for extradition in particular situations, including when there is a treaty or convention in force between the United States and a requesting state. 18 U.S.C. § 3184; *see Then v. Melendez*, 92 F.3d 851, 853 (9th Cir. 1996). The Court must defer to the U.S. Department of State's determination of a treaty's being in full force and effect. *Then*, 92 F.3d at 854; *see Kasternova v. United States*, 365 F.3d 980, 986 (11th Cir. 2004).

The Treaty here is in full force and effect. Attorney Advisor Tom Heinemann of the Department of State's Office of the Legal Advisor confirms this in his declaration accompanying Canada's extradition request. Ex. A at 1 ¶ 2.

### D. The Treaty Covers Muchikekwanape's Offenses

Muchikekwanape is wanted in Canada to serve his sentence for murder and for escape. Both of these offenses subject him to extradition under the Treaty. And Canada's adding an escape charge is entirely proper and justified here.

#### 1. Legal Framework

Extradition treaties create an obligation for the United States to surrender fugitives under defined circumstances. Article 1 of the Treaty provides for the return of fugitives charged with, or convicted of, an extraditable offense—"any of the offenses covered by Article 2 of this Treaty committed within the territory of the other[.]" Treaty Art. 1, Ex. A at 9. Article 2 states that "[e]xtradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment." Treaty Art. 2(1), Ex. A at 31; *see also Knotek*, 925 F.3d at 1128-29. This requirement is known as "dual criminality." *Knotek*, 925 F.3d at 1123, 1131-32.

To determine whether dual criminality exists, a court looks to the illegal conduct in the requesting country and decides whether it would be illegal in the United States. Specifically, here, the Court should examine the description of criminal conduct that Canada has provided and determine whether that conduct, if Muchikekwanape had committed it here, would be criminal under United States federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states. *Id.* at 1129 n.10; *Cucuzzella*, 638 F.2d at 107-08. Canada need not establish that its crimes are identical to those in the United States. *See Collins v. Loisel*, 259 U.S. 309, 312 (1922); *Knotek*, 925 F.3d at 1131; *Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998). Instead, "the court looks at whether 'the essential character of the transaction is the same, and made criminal by both statutes[,]'" *Knotek*, 925 F.3d at 1131 (quoting *Wright v. Henkel*, 190 U.S. 40, 62

(1903) (brackets omitted), and "[i]t is enough if the particular act charged is criminal in both jurisdictions[,]" *Collins*, 259 U.S. at 312; *see also Factor*, 290 U.S. at 298-300 (treaty should be construed to effectuate the surrender of a fugitive); *Cucuzella*, 638 F.2d at 107 n.3 (treaty should be construed to enlarge the rights of the parties). An offense satisfies the dual-criminality requirement notwithstanding that the comparable offense in the United States may require some conduct or element for federal jurisdiction. Treaty Art. 2(2)(i), Ex. A at 31. Further, a court should defer to the State Department's view on whether an offense is covered by the Treaty and extraditable. *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961); *Charlton v. Kelly*, 229 U.S. 447, 468 (1913).[3]

### 2.     First-Degree Murder Is an Extraditable Offense

In 2000, Muchikekwanape was convicted of first-degree murder, in violation of Section 235(1) of the Criminal Code of Canada. Ex. A at 57 ¶ 7, 60-61, 73-74 ¶ 4, 74 ¶ 5, 79, 81 ¶ 6, 85 (§ 235(1)). The mandatory minimum sentence for this offense is life in prison. *Id.* at 75 ¶ 14, 79 (§ 235).

---

[3] Canada properly may include a charge or charges beyond Muchikekwanape's murder conviction and sentence in a formal extradition request—as it has done in seeking him for the escape charge here.

The Treaty enables a requesting country to submit a request for provisional arrest in case of urgency, Treaty Art. 11, Ex. A at 14-15, 32, and then submit a formal request for extradition of a fugitive who is wanted for prosecution, or who has been convicted of an offense, or both, Treaty Arts. 9-10, Ex. A at 13-14, 42. There is no limitation on which or how many charges the requesting country may include in its formal request. Further, even if a formal request is received after the 60-day timeframe for it under Article 11(3), extradition proceedings still may go forward against the fugitive if the request is subsequently received. Treaty Art. 11(3), Ex. A at 32.

Even a subsequent extradition request with new charges is permitted. "[S]upplementation of the record and the supplementation of [the requesting country's] request for extradition, with additional charges, are not inconsistent with the Treaty or its provisions." *In re Extradition of Mainero*, 990 F. Supp. 1208, 1215 (S.D. Cal. 1997) (analyzing U.S.-Mexico extradition treaty, Article 11(4) of which has substantively the same language as Article 11(3) of the Treaty here). And *res judicata* does not apply in extradition proceedings. *Hooker v. Klein*, 573 F.2d 1360, 1366-69 (9th Cir. 1978). So, even if a court reaches a determination of extraditability based on one extradition request, nothing prevents the requesting country from submitting a new extradition request—with the same or new charges (and evidence)—and extradition proceedings from going forward on that subsequent request. *Id.*; *see Quinn*, 783 F.2d at 786 n.3.

Canada's escape charge is properly submitted here. As discussed below, the Court should certify Muchikekwanape's extraditability on this offense in addition to his murder conviction.

9

The conduct underlying this offense is horrific and supports Muchikekwanape's conviction. *See id.* at 74 ¶¶ 8-9. Muchikekwanape attacked, sexually assaulted, and murdered a woman in Canada in 1998. *Id.* at 56-57 ¶ 6, 80-81 ¶ 4. He dragged her under a bridge and beat her with a rock, causing serious injuries including fractures of her head and face. *Id.* at 56-57 ¶ 6, 80-81 ¶ 4. He removed her clothing from the waist down and cut her genitalia. *Id.* at 56-57 ¶ 6, 80-81 ¶ 4. He then threw her body into the river. *Id.* at 81 ¶ 4.

The Department of State has found that this offense is covered by the Treaty and extraditable. Ex. A at 1 ¶ 5. The Court should defer to its view. *See Kolovrat*, 366 U.S. at 194; *Charlton*, 229 U.S. at 468.

Muchikekwanape's crime indeed is covered by the Treaty because, if he had committed it in the United States, he plainly could be charged with a murder felony. Under federal law, he could be charged under 18 U.S.C. § 1111, which provides:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by…willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any…aggravated sexual abuse or sexual abuse…is murder in the first degree.

*Id.* § 1111(a). First-degree murder under § 1111 is punishable by death or life imprisonment. *Id.* § 1111(b).

Under California law, Muchikekwanape could be charged under Penal Code §§ 187 and 189. Section 187 provides that "[m]urder is the unlawful killing of a human being…with malice aforethought." Cal. Penal Code § 187(a). And under § 189, first-degree murder is "[a]ll murder that is perpetrated by means of…willful, deliberate, and premeditated killing, or that is committed by the perpetration of, or attempt to perpetrate…rape[,]" among other means. *Id.* § 189(a). First-degree murder is punishable by death, imprisonment for life without the possibility for role, or imprisonment for a term of 25 years to life. *Id.* § 190(a).

Muchikekwanape's first-degree murder in Canada would be murder under United States federal and California state law at a minimum. *See Knotek*, 925 F.3d 1123, 1128-29

10

n.10, 1131-32. Article 2 of the Treaty thus covers this offense. Treaty Art. 2(1), Ex. A at 31; *see* Ex. A at 1 ¶ 5. And Muchikekwanape should be extradited for it.

### 3.     Escape from Prison Is an Extraditable Offense

In November 2020, after Muchikekwanape escaped his federal penitentiary in British Columbia, he was charged by indictment with one count of escape and being at large without lawful excuse, in violation of § 145(1) of the Criminal Code of Canada. Ex. A at 49 ¶¶ 13-15, 50-51 ¶¶ 18-31, 53. Section 145(1) provides that

> Every person who escapes from lawful custody or who is, before the expiration of a term of imprisonment to which they were sentenced, at large in or outside Canada without lawful excuse, is guilty of
> (a) an indictable offence and liable to imprisonment for a term of not more than two years; or
> (b) an offence punishable by summary conviction.

Ex. A at 49 ¶ 13. Because Canada is prosecuting Muchikekwanape by indictment, the offense is punishable by up to two years' imprisonment, and there is no limitations period. *Id.* at 49 ¶¶ 12-13, 49 ¶¶ 15-16, 50 ¶ 25.

Muchikekwanape's conduct plainly constitutes escape: he left his prison in British Columbia and was on the run for five months, until he was arrested in San Diego in late March. *Id.* at 57 ¶¶ 9-12, 81 ¶ 10-11, 82 ¶¶ 11-15.

The Department of State has found that this offense also is covered by the Treaty and extraditable. Ex. A at 1 ¶ 5. The Court should defer to its view, *see Kolovrat*, 366 U.S. at 194; *Charlton*, 229 U.S. at 468, which is correct: Muchikekwanape could be charged for escape here, too.

The clear analogues in United States law, particularly because Muchikwanape escaped from a Canadian federal prison, are 18 U.S.C. §§ 751(a) and 4082(a). Under § 4082(a): "The willful failure of a prisoner to remain within the extended limits of his confinement…shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title." 18 U.S.C. § 4082(a). Pursuant to § 751(a) (in chapter 35), a convicted person like Muchikekwanape may be punished for escape from custody by up to five years' imprisonment:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both[.]

18 U.S.C. § 751(a). A person violates this statute when (1) they were in lawful custody (2) as a result of a conviction and (3) escaped from that custody. *United States v. Bailey*, 444 U.S. 394, 407-08 (1980); *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003).

Muchikekwanape's escape from prison in Canada, where he was serving his sentence for murder, thus would be a criminal offense in the United States. Because the offense is punishable in both the United States and Canada by more than one year in prison, dual criminality exists, and the Treaty covers Canada's escape charge. Treaty Art. 2(1), Ex. A at 31. Muchikekwanape should be extradited for this offense.

### E. There Is Probable Cause To Believe Muchikekwanape Committed These Offenses

#### 1. Legal Framework

To certify to the Secretary of State a fugitive's extradition, the Court must find only that the evidence provided by the requesting country is "sufficient to sustain the charge." 18 U.S.C. § 3184; *see, e.g.*, *United States v. Knotek*, 925 F.3d 1118, 1124 (9th Cir. 2019); Treaty Art. 10(1), Ex. A at 14 (extradition shall be granted if the evidence is sufficient to justify committal for trial or to prove the fugitive is the identical person convicted by the courts of the requesting state). This means the Court must find only probable cause to believe that Muchikekwanape committed the crime charged by Canada: "whether there was any evidence warranting the finding that there was reasonable ground to believe [him] guilty." *Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir. 1988) (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)); *see Vo*, 447 F.3d at 1237. This determination is "not a finding of fact in the sense that the court has weighed the evidence

12

and resolved disputed factual issues," but instead "serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based." *Quinn*, 783 F.2d at 791 (citation omitted).

The documents Canada has submitted in its extradition package are properly certified, Ex. A at 2 ¶ 6, 44, and thus must be admitted as evidence here, 18 U.S.C. § 3190; *see* Treaty Art. 10(2)(a), Ex. A at 42.

### 2. Muchikekwanape's Conviction for Murder Is Conclusive

Because Muchikekwanape already has been convicted of murder, the Court's probable-cause determination may be based solely on the Canadian judgment of conviction. Ex. A at 61-62, 85; *see* Treaty Art. 9(4), Ex. A at 13.[4] "[T]here is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which *a fortiori* establishes probable cause." *Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) (citation omitted); *see Haxhiaj v. Hackman*, 528 F.3d 282, 289 (4th Cir. 2008) (opinion from foreign court "clearly afford[ed] a reasonable basis upon which to find probable cause" because of "its detailed description of the evidence developed during the investigation"); *Sidali v. I.N.S.*, 107 F.3d 191, 196 (3d Cir. 1997); *In re Extradition of Knotek*, No. LA CV 13-9204 BRO (JCG), 2016 WL 4726537, at *4 (C.D. Cal. Sept. 8, 2016). The facts underlying his conviction, as set forth in properly-authenticated affidavits Canada has provided, only further demonstrate Muchikekwanape's guilt. Ex. A at 74 ¶¶ 8-9, 80-81 ¶ 4. And the term remaining on his sentence is life; he will be required to serve the rest of it in custody. *Id.* at 74 ¶¶ 8-9, 76 ¶ 17, 82 ¶ 16.

Canada's extradition package sets forth more than enough evidence to "sustain the charge" of first-degree murder. *See* 18 U.S.C. § 3184.

---

[4] To be convicted of any criminal offense in Canada, the prosecution must prove all elements beyond a reasonable doubt. Ex. A at 48 ¶ 9, 51 ¶¶ 28-29. In any event, the standard for certifying extraditability is only probable cause—not that Canada, or the United States on Canada's behalf, needs to establish Muchikekwanape's guilt beyond a reasonable doubt. *Bozilov v. Seifert*, 983 F.3d 140, 143 (9th Cir. 1992).

13

### 3. Muchikekwanape Escaped from Prison

Muchikekwanape escaped from Mission Institution in British Columbia on October 29, 2020. Ex. A at 57 ¶¶ 9-12, 81 ¶ 10, 81-82 ¶ 11. Staff noticed him missing during a 10:00 p.m. headcount that evening, and he could not be located anywhere in the prison or on its grounds. *Id.* at 57 ¶ 12. At the time he went missing, he was serving a lawful life sentence for first-degree murder. *Id.* at 50 ¶ 23, 57 ¶¶ 7-10. On November 6, while still at large, Muchikekwanape was charged by indictment with escape and being at large without excuse. *Id.* at 49 ¶¶ 13-15, 50-51 ¶¶ 18-31, 58 ¶ 14, 66. Before this or any charge may be brought in Canada, Crown Counsel (in this case, in British Columbia) reviews all of the evidence obtained through investigation and approves a charge only if "(i) there is a substantial likelihood of conviction on the available evidence, and (ii) it is in the public interest to proceed against the accused." Ex. A at 48 ¶ 10.

Muchikekwanape was at large until March 2021, when he was arrested in San Diego by Deputy U.S. Marshals. The simple fact of his arrest here—outside of his Canadian facility, where he was lawfully confined and serving his sentence for murder—also demonstrates that he escaped from custody in Canada.

For Canada's escape count, too, the evidence is more than sufficient to sustain the charge. *See* 18 U.S.C. § 3184.

### 4. The Person Before the Court Is the Person Wanted by Canada

There also is more than probable cause to believe that the person before the Court—Roderick Muchikekwanape—is the person who committed these crimes in Canada. *See, e.g.*, *Gerstein*, 420 U.S. at 110 (standard for probable cause defined as facts and circumstances sufficient to warrant a prudent person in believing the suspect committed or is committing an offense); Treaty Art. 10(1), Ex. A at 14. The fugitive here is the person Canada seeks to have extradited.

Muchikekwanape has not contested his identity since Deputy U.S. Marshals arrested him here. He provided his name and thus admitted his identity at his initial appearance. ECF No. 12; Ex. B (Tr. of Apr. 1, 2021 Initial Appearance) at 2:16-21. He admitted to the

arresting Deputy Marshals his full name and date of birth, which match the name and date of birth Canada has provided about him. *E.g.*, Ex. A at 59 ¶ 19, 83 ¶ 18. His physical characteristics upon arrest and booking here match Canada's information. *See id.* A photo of Muchikekwanape in Canadian custody in August 2020 reflects his appearance in this District, *see id.* at 72, 89, and Muchikekwanape identified himself to Deputy Marshals in a series of eight photos from Canada's Correctional Service, which included the same August 2020 photo Canada has provided in its extradition package.[5]

The probable-cause requirement for extradition is satisfied.

### III. Extradition Hearings Follow Unique Procedures, and Certification Here Is Appropriate Based on the Documents Canada Has Submitted

This section briefly describes the purpose and special characteristics of an extradition hearing.[6] Because, as explained above, Canada's extradition package establishes all requirements for extraditability, Muchikekwanape's extradition may be certified based on Canada's extradition package alone.

The purpose of an extradition hearing is to decide the sufficiency of each charge for which extradition is requested under the treaty—not to determine the ultimate guilt or innocence of the fugitive, which is reserved for the foreign court. *Collins*, 259 U.S. at 316; *Neely v. Henkel*, 180 U.S. 109, 123 (1901). An extradition hearing is not a criminal proceeding. *See, e.g.*, *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 828 (11th Cir. 1993). It is governed by "the general extradition law of the United States and the provisions of the Treaty." *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444, 1450-51 (9th Cir. 1987).

---

[5] As noted above, if Muchikekwanape contests his identity, then the United States will submit additional evidence proving that he is the person wanted in Canada for these offenses.

[6] The United States has discussed this previously in its Memorandum of Extradition Law and Request for Detention Pending Extradition Proceedings, ECF No. 4 at 10-12, and its Motion for Reconsideration of the Court's *Brady* Order, ECF No. 16 at 1-2. The United States briefly sets forth the law on extradition hearings here, too, in anticipation of the July 22 extradition hearing.

The Federal Rules of Evidence do not apply. Fed. R. Evid. 1101(d)(3); *Then*, 92 F.3d at 855; *see Afanasjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir. 2005). Hearsay evidence is admissible at an extradition hearing, and a certification of extraditability is properly based entirely on the authenticated documentary evidence and information provided by the requesting government. *See* 18 U.S.C. § 3190; *Collins*, 259 U.S. at 317; *Skaftouros v. United States*, 667 F.3d. 144, 155, n.16 (2d Cir. 2011); *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986). Nothing more is required, and typically nothing more is provided. *See, e.g.*, *Zanazanian v. United States*, 729 F.2d 624, 627-28 (9th Cir. 1984); *In re Extradition of Mainero*, 990 F. Supp. 1208, 1212-13, 1226-29 (S.D. Cal. 1997). Extradition treaties do not require, or even anticipate, the testimony of live witnesses at the hearing. Requiring the "demanding government to send its citizens to another country to institute legal proceedings[ ] would defeat the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916); *see also, e.g.*, *Zanazanian*, 729 F.2d at 626-27. Here, Canada's extradition package has been properly certified, Ex. A at 2 ¶ 6, 44, and so pursuant to § 3190, Canada's documents in support of extradition "shall be received and admitted as evidence" in these proceedings, 18 U.S.C. § 3190; *see* Treaty Art. 10(2)(a), Ex. A at 42. These documents provide sufficient basis to certify Muchikekwanape's extraditability.

The Federal Rules of Criminal Procedure do not apply. Fed. R. Crim. P. 1(a)(5)(A); *Santos*, 830 F.3d at 992; *Mathison*, 974 F. Supp. 2d at 1304.

*Brady* does not apply. *Merino v. U.S. Marshal*, 326 F.2d 5, 13 (9th Cir. 1963); *see Caplan v. Vokes*, 649 F.2d 1336, 1342 n.10 (9th Cir. 1981); *In re Extradition of Ameen*, 378 F. Supp. 3d 902, 910 (E.D. Cal. 2019); *In re Extradition of Koskotas*, 127 F.R.D. 13, 27 (D. Mass. 1989). A fugitive does not have a right to discovery. *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005); *Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2d Cir. 1976); *In re Extradition of Mainero*, 990 F. Supp. at 1220 n.26.

Many constitutional protections for criminal defendants do not attach in extradition proceedings. For example, a fugitive has no right to cross-examine witnesses who might

testify at the hearing, *see, e.g.*, *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1406-07 (9th Cir. 1988); there is no Sixth Amendment right to a speedy trial, *see, e.g.*, *In re Extradition of Kraiselburd*, 786 F.2d 1395, 1398 (9th Cir. 1986); the Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings, *see, e.g.*, *In re Extradition of Powell*, 4 F. Supp. 2d 945, 951 (S.D. Cal. 1998) (citing *Collins*, 262 U.S. at 429); the exclusionary rule is not applicable, *see, e.g.*, *Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980); and a fugitive does not have the right to confront his accusers, *see, e.g.*, *Bingham*, 241 U.S. at 517.

The fugitive's right to present evidence is severely constrained. *See Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973). A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but rather may introduce evidence only explaining the submitted evidence. *See Charlton*, 229 U.S. at 461-62; *Santos*, 830 F.3d at 992-93. A contrary rule "might compel the demanding government to produce all its evidence…both direct and rebutting, in order to meet the defense thus gathered from every quarter." *Collins*, 259 U.S. at 316 (citation omitted). The admission of explanatory evidence is largely within the discretion of the Court. *See Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir. 1978). Courts reject technical and affirmative defenses as well as attacks on the credibility of the evidence the United States presents. *See, e.g.*, *Bingham*, 241 U.S. at 517 (rejecting objections to extradition that "savor of technicality"); *Santos*, 830 F.3d at 993 ("an individual contesting extradition may not, for example, present alibi evidence, facts contradicting the government's proof, or evidence of defenses like insanity, as this tends to call into question the credibility of the government's offer of proof"); *Hooker*, 573 F.2d at 1368 (extradition court "properly may exclude evidence of alibi, or facts contradicting the government's proof, or of a defense such as insanity"). These issues are reserved for courts in the requesting country after the fugitive is extradited.

Finally, the rule of non-inquiry means that any matters a fugitive raises in defense to extradition—other than those related to requirements for certification—are for the U.S. Secretary of State to consider, not for the Court. *See* 18 U.S.C. §§ 3184, 3186; *e.g.*, *Arias*

*v. Warden*, 928 F.3d 1281, 1285 (11th Cir. 2019) (fairness of foreign court); *Prasoprat*, 421 F.3d at 1016 (humanitarian considerations); *Koskotas v. Roche*, 931 F.2d 169, 173-74 (1st Cir. 1991) (motives of requesting state); *Quinn*, 783 F.2d at 789-90 (political crimes). This practice is consistent with the long-held understanding that the surrender of a fugitive to a foreign government is "purely a national act…performed through the Secretary of State." *See In re Kaine*, 55 U.S. 103, 110 (1852).

For all these reasons, the Court's certification may and should be based solely on the documents Canada has submitted in its extradition package and the United States files here.

## CONCLUSION

The United States respectfully requests that the Court certify the extraditability of Muchikekwanape to Canada.

DATED: June 4, 2021                                                             Respectfully submitted,

                                                              RANDY S. GROSSMAN
                                                              Acting United States Attorney

                                                              */s/ Peter S. Horn*
                                                              PETER S. HORN
                                                              Assistant United States Attorney