# EXHIBIT A

DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, hereby declare and say as follows:

1. I am an Attorney Adviser in the Office of the Legal Adviser for the Department of State in Washington, DC. This office has responsibility for extradition requests within the Department of State and I am charged with the extradition case of Roderick Muchikekwanape. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and Canada are found in the Treaty on Extradition between the United States of America and Canada of December 3, 1971, which entered into force on March 22, 1976 (the "1971 Treaty"), the Protocol Amending the Treaty on Extradition Between the United States of America and Canada of January 11, 1988, which entered into force on November 26, 1991 (the "1988 Protocol"), and the Second Protocol Amending the Treaty on Extradition Between the Government of the United States of America and the Government of Canada of January 12, 2001, which entered into force on April 30, 2003 (the "2001 Protocol"). Copies of the Treaty and Protocols are attached to this declaration.

3. In accordance with the provisions of the Treaty and Protocols, the Embassy of Canada has submitted Diplomatic Note No. 9685, dated May 20, 2021, formally requesting the extradition of Roderick Muchikekwanape. A copy of the Diplomatic Note is attached to this declaration.

4. In accordance with Article 17 of the 1971 Treaty, the Government of the United States provides legal representation in its courts for Canada in its extradition requests, and Canada provides legal representation in its courts for extradition requests made by the United States.

5. The offenses for which extradition is sought are extraditable offenses pursuant to Article 2 of the 1971 Treaty, as replaced by Article I of the 1988 Protocol.

6. The documents submitted by the Government of Canada in support of its extradition request were certified on May 19, 2021, by Katherine Brucker, Charge d'Affaires of the United States of America in Ottawa, in accordance with Title 18, United States Code, Section 3190. Ms. Brucker, at the time of her certification, was the principal diplomatic officer of the United States in Canada.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Santa Fe, New Mexico on May 26th, 2021.


Tom Heinemann
Attorney Adviser
Law Enforcement and Intelligence


Attachments:

1. Copy of the Note
2. Copies of Treaty and Protocols



Embassy of CanadaAmbassade du Canada

Note No. 9685

      The Embassy of Canada presents its compliments to the Department of State and has the honour to request the extradition of Roderick Muchikekwanape, a Canadian citizen, born on ▮▮▮▮▮▮▮▮▮▮.

      Photographs of the person sought are appended to the documents submitted in support of the extradition request.

      Canada is seeking the extradition of Roderick Muchikekwanape to stand trial in relation to:

      One count of escape and being at large without excuse, contrary to section 145(1) of the *Criminal Code.*

      Information number 92691-1 was sworn by C. Mitchell, a Court Liaison Officer, November 6, 2020 before a Justice of Peace in the Province of British Colombia.

      Warrant for Arrest dated November 6, 2020 was issued by a Justice of Peace in the Province of British Columbia.

      Canada is seeking the extradition of Roderick Muchikekwanape for enforcement of a sentence in relation to:

      One count of first degree murder, contrary to section 235(1) of the *Criminal Code*;

.../2



-2-

Disposition was issued by the Manitoba Court of Queen's Bench, dated December 13, 2000. Warrant for Apprehension and Recommitment to Custody dated October 29, 2020 was issued by Institution Head Shawna N. Hopfner in the Province of British Columbia.

There is no statute of limitations in respect of the offence for which the person sought stands charged.  The indictable offence is punishable by  more than one-year imprisonment. Roderick Muchikekwanape was provisionally arrested on March 26, 2021.

The Present Location of the accused is Western Regional Detention Facility (GEO), 220 West C Street, San Diego, CA  92101.

The Prosecuting Attorneys are Dorothy Pui Huen Tsui, Crown Counsel, Criminal Appeals and Special Prosecutions, BC Prosecution Service,  Ministry of the Attorney General of British Columbia,  telephone 778-666-2418; and  Daniel Alonso Veas-Henriquez, Legal Counsel, Legal Services, Correctional Service Canada, telephone 343-571-2478.  The Police Contact is Constable Darcy Wade Burke, Royal Canadian Mounted Police, telephone 604- 814-1639.

The Embassy of Canada avails itself of this opportunity to renew to the Department of State the assurances of its highest consideration.

WASHINGTON, D.C.

May 20, 2021



**TREATIES AND OTHER INTERNATIONAL ACTS SERIES 8237**

# EXTRADITION

Treaty Between the
UNITED STATES OF AMERICA
and CANADA

Signed at Washington December 3, 1971

*and*

Agreement Amending the Treaty
Effected by Exchange of Notes
Signed at Washington June 28 and July 9, 1974



# CANADA

## Extradition

*Treaty signed at Washington December 3, 1971;*
*And agreement amending the treaty*
*Effected by exchange of notes*
*Signed at Washington June 28 and July 9, 1974;*
*Ratification of the treaty, as amended, advised by the Senate of*
  *the United States of America December 1, 1975;*
*Ratified by the President of the United States of America De-*
  *cember 12, 1975;*
*Ratified by Canada February 2, 1976;*
*Ratifications exchanged at Ottawa March 22, 1976;*
*Proclaimed by the President of the United States of America*
  *May 6, 1976;*
*Entered into force March 22, 1976.*

---

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

CONSIDERING THAT:

The Treaty on Extradition between the United States of America and Canada was signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974, the original of which Treaty, as amended, is hereto annexed;

The Senate of the United States of America by its resolution of December 1, 1975, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty, as amended;

The Treaty was ratified by the President of the United States of America on December 12, 1975, in pursuance of the advice and consent of the Senate, and has been duly ratified on the part of Canada;

The respective instruments of ratification were exchanged at Ottawa on March 22, 1976;

It is provided in Article 18 of the Treaty that the Treaty shall enter into force upon the exchange of ratifications;

Now, THEREFORE, I, Gerald R. Ford, President of the United States of America, proclaim and make public the Treaty, as amended,

(1)                                    TIAS 8237

2

to the end that it shall be observed and fulfilled with good faith on and after March 22, 1976, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this sixth day of May in the year of our Lord one thousand nine hundred seventy-six [SEAL] and of the Independence of the United States of America the two hundredth.

GERALD R. FORD

By the President:
JOSEPH JOHN SISCO
*Acting Secretary of State*

TIAS 8237

3

TREATY ON EXTRADITION BETWEEN
THE UNITED STATES OF AMERICA
AND CANADA

The United States of America and Canada, desiring to make
more effective the cooperation of the two countries in the
repression of crime by making provision for the reciprocal
extradition of offenders, agree as follows:

•

TIAS 8237

4

## ARTICLE 1

Each Contracting Party agrees to extradite to the other, in the circumstances and subject to the conditions described in this Treaty, persons found in its territory who have been charged with, or convicted of, any of the offenses covered by Article 2 of this Treaty committed within the territory of the other, or outside thereof under the conditions specified in Article 3(3) of this Treaty.

## ARTICLE 2

(1) Persons shall be delivered up according to the provisions of this Treaty for any of the offenses listed in the Schedule annexed to this Treaty, which is an integral part of this Treaty, provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year.

(2) Extradition shall also be granted for attempts to commit, or conspiracy to commit or being a party to any of the offenses listed in the annexed Schedule.

(3) Extradition shall also be granted for any offense against a federal law of the United States in which one of the offenses listed in the annexed Schedule, or made extraditable by paragraph (2) of this Article, is a substantial element, even if transporting, transportation, the use of the mails or interstate facilities are also elements of the specific offense.

## ARTICLE 3

(1) For the purpose of this Treaty the territory of a Contracting Party shall include all territory under the jurisdiction of that Contracting Party, including air space

TIAS 8237

5

and territorial waters and vessels and aircraft registered in that Contracting Party or aircraft leased without crew to a lessee who has his principal place of business, or, if the lessee has no such place of business, his permanent residence in, that Contracting Party if any such aircraft is in flight, or if any such vessel is on the high seas when the offense is committed. For the purposes of this Treaty an aircraft shall be considered in flight from the moment when power is applied for the purpose of the take-off until the moment when the landing run ends.

(2)  In a case when offense 23 of the annexed Schedule is committed on board an aircraft at any time from the moment when all its external doors are closed following embarkation until the moment when any such door is opened for disembarkation, such offense and any other offense covered by Article 2 committed against passengers or crew of that aircraft in connection with such offense shall be considered to have been committed within the territory of a Contracting Party if the aircraft was registered in that Contracting Party, if the aircraft landed in the territory of that Contracting Party with the alleged offender still on board, or if the aircraft was leased without crew to a lessee who has his principal place of business, or, if the lessee has no such place of business, his permanent residence in that Contracting Party.

(3)  When the offense for which extradition has been requested has been committed outside the territory of the requesting State, the executive or other appropriate authority of the requested State shall have the power to grant the extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances.

TIAS 8237

EX_MUCHIKEKWANAPE_010

6

## ARTICLE 4

(1)  Extradition shall not be granted in any of the following circumstances:

(i)  When the person whose surrender is sought is being proceeded against, or has been tried and discharged or punished in the territory of the requested State for the offense for which his extradition is requested.

(ii) When the prosecution for the offense has become barred by lapse of time according to the laws of the requesting State.

(iii) When the offense in respect of which extradition is requested is of a political character, or the person whose extradition is requested proves that the extradition request has been made for the purpose of trying or punishing him for an offense of the above-mentioned character.  If any question arises as to whether a case comes within the provisions of this subparagraph, the authorities of the Government on which the requisition is made shall decide.

(2)  The provisions of subparagraph (iii) of paragraph (1) of this Article shall not be applicable to the following:

(i)  A kidnapping, murder or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt to commit such an offense with respect to any such person.

(ii) When offense 23 of the annexed Schedule, or an attempt to commit, or a conspiracy to commit, or being a party to the commission of that offense, has been committed  on board an aircraft engaged in commercial services carrying passengers.

**TIAS 8237**

7

## ARTICLE 5

If a request for extradition is made under this Treaty for a person who at the time of such request, or at the time of the commission of the offense for which extradition is sought, is under the age of eighteen years and is considered by the requested State to be one of its residents, the requested State, upon a determination that extradition would disrupt the social readjustment and rehabilitation of that person, may recommend to the requesting State that the request for extradition be withdrawn, specifying the reasons therefor.

## ARTICLE 6

When the offense for which extradition is requested is punishable by death under the laws of the requesting State and the laws of the requested State do not permit such punishment for that offense, extradition may be refused unless the requesting State provides such assurances as the requested State considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

## ARTICLE 7

When the person whose extradition is requested is being proceeded against or is serving a sentence in the territory of the requested State for an offense other than that for which extradition has been requested, his surrender may be deferred until the conclusion of the proceedings and the full execution of any punishment he may be or may have been awarded.

**TIAS 8237**

EX_MUCHIKEKWANAPE_012

8

### ARTICLE 8

The determination that extradition should or should not be
granted shall be made in accordance with the law of the requested
State and the person whose extradition is sought shall have the
right to use all remedies and recourses provided by such law.

### ARTICLE 9

(1)  The request for extradition shall be made through the
diplomatic channel.

(2)  The request shall be accompanied by a description of the
person sought, a statement of the facts of the case, the text of
the laws of the requesting State describing the offense and
prescribing the punishment for the offense, and a statement of the
law relating to the limitation of the legal proceedings.

(3)  When the request relates to a person who has not yet
been convicted, it must also be accompanied by a warrant of
arrest issued by a judge or other judicial officer of the
requesting State and by such evidence as, according to the laws
of the requested State, would justify his arrest and committal
for trial if the offense had been committed there, including
evidence proving the person requested is the person to whom the
warrant of arrest refers.

(4)  When the request relates to a person already convicted,
it must be accompanied by the judgment of conviction and sentence
passed against him in the territory of the requesting State, by
a statement showing how much of the sentence has not been served,
and by evidence proving that the person requested is the person
to whom the sentence refers.

TIAS 8237

9

### ARTICLE 10

(1)  Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting State.

(2)  The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when, in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada, or when, in the case of a request emanating from the United States, they are authenticated by an officer of the Department of State of the United States and are certified by the principal diplomatic or consular officer of Canada in the United States.

### ARTICLE 11

(1)  In case of urgency a Contracting Party may apply for the provisional arrest of the person sought pending the presentation of the request for extradition through the diplomatic channel. Such application shall contain a description of the person sought, an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or a judgment of conviction against that person, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested State.

**TIAS 8237**

EX_MUCHIKEKWANAPE_014

10

(2)  On receipt of such an application the requested State shall take the necessary steps to secure the arrest of the person claimed.

(3)  A person arrested shall be set at liberty upon the expiration of forty-five days from the date of his arrest pursuant to such application if a request for his extradition accompanied by the documents specified in Article 9 shall not have been received.  This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

ARTICLE 12

(1)  A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

(i)  He has left the territory of the requesting State after his extradition and has voluntarily returned to it;

(ii) He has not left the territory of the requesting State within thirty days after being free to do so; or

(iii) The requested State has consented to his detention, trial, punishment for an offense other than that for which extradition was granted or to his extradition to a third State, provided such other offense is covered by Article 2.

(2)  The foregoing shall not apply to offenses committed after the extradition.

**TIAS 8237**

11

## ARTICLE 13

(1) A requested State upon receiving two or more requests for the extradition of the same person either for the same offense, or for different offenses, shall determine to which of the requesting States it will extradite the person sought.

(2) Among the matters which the requested State may take into consideration are the possibility of a later extradition between the requesting States, the seriousness of each offense, the place where the offense was committed, the dates upon which the requests were received and the provisions of any extradition agreements between the requested State and the other requesting State or States.

## ARTICLE 14

(1) The requested State shall promptly communicate to the requesting State through the diplomatic channel the decision on the request for extradition.

(2) If a warrant or order for the extradition of a person sought has been issued by the competent authority and he is not removed from the territory of the requested State within such time as may be prescribed by the laws of that State, he may be set at liberty and the requested State may subsequently refuse to extradite that person for the same offense.

## ARTICLE 15

(1) To the extent permitted under the law of the requested State and subject to the rights of third parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence shall, if found, be surrendered to the requesting State if extradition is granted.

**TIAS 8237**

12

(2)  Subject to the qualifications of paragraph (1) of this
Article, the above-mentioned articles shall be returned to the
requesting State even if the extradition, having been agreed to,
cannot be carried out owing to the death or escape of the person
sought.

ARTICLE 16

(1)  The right to transport through the territory of one of
the Contracting Parties a person surrendered to the other
Contracting Party by a third State shall be granted on request
made through the diplomatic channel, provided that conditions
are present which would warrant extradition of such person by the
State of transit and reasons of public order are not opposed to
the transit.

(2)  The Party to which the person has been extradited shall
reimburse the Party through whose territory such person is
transported for any expenses incurred by the latter in connection
with such transportation.

ARTICLE 17

(1)  Expenses related to the transportation of the person
sought to the requesting State shall be paid by the requesting
State.  The appropriate legal officers of the State in which the
extradition proceedings take place shall, by all legal means
within their power, assist the requesting State before the
respective judges and magistrates.

TIAS 8237

EX_MUCHIKEKWANAPE_017

13

(2)  No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the requested State against the requesting State.

ARTICLE 18

(1)  This Treaty shall be ratified and the instruments of ratification shall be exchanged at Ottawa as soon as possible.

(2)  This Treaty shall terminate and replace any extradition agreements and provisions on extradition in any other agreement in force between the United States and Canada; except that the crimes listed in such agreements and committed prior to entry into force of this Treaty shall be subject to extradition pursuant to the provisions of such agreements.

(3)  This Treaty shall enter into force upon the exchange of ratifications.[1] It may be terminated by either Contracting Party giving notice of termination to the other Contracting Party at any time and the termination shall be effective six months after the date of receipt of such notice.

---

[1] Mar. 22, 1976.

TIAS 8237

14

IN WITNESS WHEREOF the undersigned, being duly authorized
thereto by their respective Governments, have signed this
Treaty.

DONE in duplicate, in the English and French languages,
each language version being equally authentic, at Washington
this third day of December, one thousand nine hundred seventy
one.

FOR THE UNITED STATES OF AMERICA:

[1]

FOR CANADA:

[2]

---

[1] William P. Rogers
[2] Mitchell Sharp

TIAS 8237

15

## SCHEDULE

1.  Murder; assault with intent to commit murder.

2.  Manslaughter.

3.  Wounding; maiming; or assault occasioning bodily harm.

4.  Unlawful throwing or application of any corrosive substances
    at or upon the person of another.

5.  Rape; indecent assault.

6.  Unlawful sexual acts with or upon children under the age
    specified by the laws of both the requesting and requested
    States.

7.  Willful nonsupport or willful abandonment of a minor when
    such minor is or is likely to be injured or his life is or
    is likely to be endangered.

8.  Kidnapping; child stealing; abduction; false imprisonment.

9.  Robbery; assault with intent to steal.

10. Burglary; housebreaking.

11. Larceny, theft or embezzlement.

12. Obtaining property, money or valuable securities by false
    pretenses or by threat of force or by defrauding the public
    or any person by deceit or falsehood or other fraudulent
    means, whether such deceit or falsehood or any fraudulent
    means would or would not amount to a false pretense.

13. Bribery, including soliciting, offering and accepting.

14. Extortion.

**TIAS 8237**

73–798 O—76

EX_MUCHIKEKWANAPE_020

16

15. Receiving any money, valuable securities or other property knowing the same to have been unlawfully obtained.

16. Fraud by a banker, agent, or by a director or officer of any company.

17. Offenses against the laws relating to counterfeiting or forgery.

18. Perjury in any proceeding whatsoever.

19. Making a false affidavit or statutory declaration for any extrajudicial purpose.

20. Arson.

21. Any act done with intent to endanger the safety of any person travelling upon a railway, or in any aircraft or vessel or other means of transportation.

22. Piracy, by statute or by law of nations; mutiny or revolt on board a vessel against the authority of the captain or commander of such vessel.

23. Any unlawful seizure or exercise of control of an aircraft, by force or violence or threat of force or violence, or by any other form of intimidation, on board such aircraft.

24. Willful injury to property.

25. Offenses against the bankruptcy laws.

26. Offenses against the laws relating to the traffic in, production, manufacture, or importation of narcotic drugs, Cannabis sativa L., hallucinogenic drugs, amphetamines, barbiturates, cocaine and its derivatives.

**TIAS 8237**

EX_MUCHIKEKWANAPE_021

17

27. Use of the mails or other means of communication in
connection with schemes devised or intended to deceive
or defraud the public or for the purpose of obtaining
money or property by false pretenses.

28. Offenses against federal laws relating to the sale or
purchase of securities.

29. Making or having in possession any explosive substance
with intent to endanger life, or to cause severe damage
to property.

30. Obstructing the course of justice in a judicial
proceeding, existing or proposed, by:

    a)    dissuading or attempting to dissuade a person by
threats, bribes, or other corrupt means from
giving evidence;

    b)    influencing or attempting to influence by threat,
bribes, or other corrupt means a person in his
conduct as a juror; or

    c)    accepting a bribe or other corrupt consideration
to abstain from giving evidence or to do or to
refrain from doing anything as a juror.

TIAS 8237

EX_MUCHIKEKWANAPE_022

35

[AMENDING AGREEMENT]

*The Canadian Ambassador to the Secretary of State*



Canadian Embassy        Ambassade du Canada

Washington, D.C.

June 28, 1974

No. 126

Excellency,

       I have the honour to refer to the Treaty on Extra-
dition between the Government of Canada and the Government
of the United States signed at Washington on December 3,
1971 and to subsequent discussions between representatives
of our two governments concerning the amendment of the said
Treaty.

       Further to those discussions I now have the honour
to propose that the said Treaty be amended as follows:

            (1) That Article 4(2)(i) of the Treaty shall
                be amended to read:  "A kidnapping, murder,
                or other assault against the life or physical
                integrity of a person to whom a Contracting
                Party has the duty according to international
                law to give special protection, or any attempt
                or conspiracy to commit, or being a party to

The Honourable
   Henry A. Kissinger,
     Secretary of State,
       Washington, D.C.
         20520

                                 **TIAS 8237**

36

the commission of, such an offence with
respect to any such person."

(2) That clause 26 of the Schedule annexed to
the Treaty shall be amended to read:
"Offences against the laws relating to
the traffic in, production, manufacture or
importation of drugs listed in Schedule I
to the Single Convention on Narcotic Drugs
of March 30, 1961 [1] and of drugs listed in
Schedules I, II and III to the Convention
on Psychotropic Substances of February 21,
1971."

If this proposal meets with the approval of your
government, I have the further honour to propose that
this Note, which is authentic in English and in French,
and your reply shall constitute an amendment to the Treaty
on Extradition between Canada and the United States referred
to above, which shall come into force on the date of the
entry into force of the said Treaty and which shall be con-
sidered an integral part of the said Treaty.

Accept, Excellency, the assurances of my highest
consideration.

M. Cadieux,
Ambassador.

---

[1] TIAS 6298; 18 UST 1559.

TIAS 8237

| 101st Congress 2d Session | SENATE | Treaty Doc. 101-17 |
| --- | --- | --- |

# PROTOCOL AMENDING THE EXTRADITION TREATY WITH CANADA

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE PROTOCOL SIGNED AT OTTAWA ON JANUARY 11, 1988, AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA, SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974



APRIL 24, 1990.—Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

39-118                                    WASHINGTON : 1990

EX_MUCHIKEKWANAPE_025

# LETTER OF TRANSMITTAL

THE WHITE HOUSE, *April 24, 1990.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Protocol signed at Ottawa on January 11, 1988, amending the Treaty on Extradition Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. I transmit also, for the information of the Senate, the report of the Department of State with respect to the protocol.

The protocol amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. It represents an important step in improving law enforcement cooperation and combatting terrorism by excluding from the scope of the political offense exception serious offenses typically committed by terrorists; e.g., murder, manslaughter, kidnapping, use of an explosive device capable of endangering life or causing grievous bodily harm, and attempt or conspiracy to commit the foregoing offenses.

The protocol also will help to improve implementation of the current extradition treaty in several other respects. Most significant, the protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, *inter alia,* parental child abduction and certain additional narcotics offenses will be covered by the new treaty.

I recommend that the Senate give early and favorable consideration to the protocol and give its advice and consent to ratification.

GEORGE BUSH.

(III)

## LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, April 10, 1990.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Protocol amending the 1971 Extradition Treaty Between the United States of America and Canada signed at Ottawa January 11, 1988. I recommend that the Protocol be transmitted to the Senate for advice and consent to ratification.

The Protocol supplements and amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974 (27 U.S.T. 983; TIAS 8237). The Protocol would exclude specified crimes of violence, typically committed by terrorists, from the scope of the political offense exception to extradition. It therefore represents an important step toward improving law enforcement cooperation and countering the threat of international terrorism and other crimes of violence. In addition, the Protocol will help improve the implementation of the current Treaty in several other respects. Most significantly, the Protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, inter alia, parental child abduction and certain additional narcotics offenses will be covered.

Article 2 of the 1971 Extradition Treaty, as amended, which incorporates a Schedule of extraditable offenses, has been replaced in its entirety. Pursuant to the current Extradition Treaty, only crimes that are listed in the Schedule are considered extraditable offenses. As amended by Article I of the Protocol, Article 2 of the 1971 Treaty, as amended, adopts a dual criminality approach, which emphasizes extradition based on underlying criminal conduct rather than for a particular offense. A dual criminality clause permits extradition for any crime that is punishable in both countries by imprisonment or other detention for at least one year. Inclusion of a dual criminality clause, therefore, obviates the need to renegotiate or supplement the Treaty as offenses, such as computer-related crimes or money laundering, become punishable under the laws of both states.

Article I of the Protocol replaces Article 2 of the 1971 Treaty and provides that an offense is extraditable notwithstanding that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States. This provision will allow the United States to request extradition for offenses including interstate and foreign travel or transportation in aid of racketeering enterprises

(1)

EX_MUCHIKEKWANAPE_027

2

even though the Canadian laws do not include analogous jurisdictional elements for similar underlying criminal behavior. The new provision also stipulates that offenses that relate to taxation or revenue or that are of a "purely fiscal character" will be extraditable offenses.

Article II of the Protocol is a technical amendment, deleting the Schedule of extraditable offenses annexed to the 1971 Treaty, as amended, and incorporated by reference in Article 2.

Article III of the Protocol deletes Article 3 of the 1971 Treaty, in which a particularized definition of "territory," which was necessary at that time to cover certain types of hijacking offenses, is no longer necessary, as both the United States and Canada are parties to the Hague Convention for the Suppression of Unlawful Seizure of Aircraft, done at The Hague December 16, 1970, and entered into force October 14, 1971, (Hijacking Convention) (22 U.S.T. 1641; TIAS 7192) and the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, done at Montreal September 23, 1971, and entered into force January 26, 1973, (Sabotage Convention) (24 U.S.T. 564; TIAS 7570).

Article 3(3) of the 1971 Treaty is amended to give the Executive or other appropriate Authority the discretion to extradite fugitives when the requesting state has jurisdiction over an offense in a situation where the laws of the requested state would not provide for jurisdiction in similar circumstances.

Article IV of the Protocol replaces Article 4 of the 1971 Treaty, and effectively limits the scope of the political offense exception. It specifies certain crimes which shall not be regarded as political offenses, including murder, manslaughter, malicious assault, kidnapping, specified explosives offenses, and conspiracy or attempt to commit any of the foregoing offenses.

In addition, Article IV of the Protocol includes a provision that excludes from the reach of the political offense exception any offense for which both the United States and Canada have an international treaty obligation to extradite the person or submit his case for prosecution; e.g., aircraft hijacking pursuant to the Hijacking Convention; aircraft sabotage pursuant to the Sabotage Convention; crimes against internationally protected persons, including diplomats, under the Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents, done at New York December 14, 1973 (28 U.S.T. 1975; TIAS 8532); and hostage taking pursuant to the International Convention against the Taking of Hostages, done at New York on December 17, 1979. This exception will also extend to crimes similarly defined in future multilateral treaties.

Article V of the Protocol replaces Article 7 of the 1971 Extradition Treaty, which allows the Requested State to defer surrender of a fugitive being proceeded against or serving a sentence in its territory until the conclusion of the proceedings and the full execution of any punishment. Under the Protocol, the Requested State has the discretion to choose to extradite to the Requesting State a fugitive who is serving a prison sentence in the Requested State before the expiration of his sentence. This alternative of temporary surrender is routinely included in our modern extradition treaties.

3

Article VI of the Protocol replaces Article 11(3) of the current Treaty to extend the period of provisional arrest in the Requested State from forty-five days to sixty days, which is the time period most commonly provided under U.S. extradition treaties. The extension will allow prosecutors greater latitude in assembling extradition packages and in making necessary adjustments or additions to the documents.

Article VII of the Protocol amends the 1971 Treaty by adding a provision that establishes that, in cases where both states have jurisdiction to prosecute for an offense, the Executive Authority of the Requested State will consult with the Executive Authority of the Requesting State and make a decision whether to extradite the fugitive, or whether to submit the case to its competent authorities for the purpose of prosecution, after considering all relevant factors.

Article VIII of the Protocol provides that its provisions shall apply to any offense committed, any request made or any person found extraditable before or after the entry into force of the Protocol, but shall not apply to an offense committed before the Protocol enters into force if the offense in question was not an offense under the laws of both Contracting Parties at the time of its commission.

Article IX of the Protocol sets forth the procedures for ratification and entry into force.

I enclose, for the information of the Senate, an exchange of letters, dated January 11, 1988, which restates that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters," is an extraditable offense under the 1971 Extradition Treaty.

The Department of Justice joins the Department of State in favoring transmission of this Protocol to the Senate at the earliest possible date.

Respectfully submitted,

JAMES W. BAKER III.

Enclosure: As stated.

THE SECRETARY OF STATE,
*Washington, January 11, 1988.*

Hon. JOE CLARK, P.C., M.P.,
*Secretary of State for External Affairs of Canada, Ottawa.*

DEAR MR. MINISTER: I refer to the Protocol Amending the Treaty on Extradition between the United States and Canada we signed today and have the honor to address to you the following.

The United States and Canada recognize that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters", is an extraditable offense under the United States-Canada Extradition Treaty.

Where a person has been charged with or convicted of such an offense in Canada and is found within the jurisdiction of the United States, the United States agrees, upon request, to commence extradition proceedings against such a person pursuant to the Treaty in order that the person may be returned to Canada.

4

The United States will use its best efforts to honor Canadian requests for testimony, information, or other assistance pertaining to such abductions.

Canada and the United States agree to cooperate to deter such transborder abductions. To assist in achieving that purpose, the United States will continue to exert its best efforts to inform those engaged in business as bail bondsmen or bounty hunters and other interested parties of the positions set forth in this exchange of letters.

Canada and the United States agree to consult promptly concerning any case of transborder abduction involving bounty hunters which might arise in the future. The purpose of such consultations shall be to address matters relating to any such case, including any request by the Government of Canada for the return of the person so abducted. In the event of return, the Governments agree to cooperate to have the abducted person escorted to Canada and taken into custody at the border, pursuant to a request for provisional arrest, pending the outcome of extradition proceedings. For the purpose of these consultations, the principal law enforcement contact for the United States will be the Director of the Office of International Affairs of the Criminal Division of the Department of Justice.

I have the honor to propose that this letter and your reply constitute an understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Sincerely yours,

GEORGE P. SHULTZ.

---

OTTAWA, *January 11, 1988.*

JLA–0026.

Hon. GEORGE P. SHULTZ,
*Secretary of State of the United States of America.*

DEAR MR. SECRETARY: I have the honour to acknowledge receipt of your letter of today's date concerning transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters". I accept your proposal that your letter and this reply constitute an Understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Yours sincerely,

JOE CLARK.

PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE
UNITED STATES OF AMERICA AND CANADA SIGNED AT WASHINGTON
ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES
ON JUNE 28 AND JULY 9, 1974

The Government of the United States of America and the Government of Canada;

Desiring to make more effective the Extradition Treaty between the Contracting Parties, signed at Washington on December 3, 1971, as amended by the agreement effected by an Exchange of Notes on June 28 and July 9, 1974 (hereinafter referred to as "the Extradition Treaty");

Have agreed as follows:

## ARTICLE I

Article 2 of the Extradition Treaty is deleted and replaced by the following:

### "ARTICLE 2

"(1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

"(2) An offense is extraditable notwithstanding

"(i) that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States, or

"(ii) that it relates to taxation or revenue or is one of a purely fiscal character."

## ARTICLE II

The SCHEDULE to the Extradition Treaty, as amended, is deleted.

## ARTICLE III

Paragraph (2) of Article 3 of the Extradition Treaty is deleted. Paragraph (3) of Article 3 of the Extradition Treaty is amended to read as follows:

"(2) When the offense for which extradition is requested was committed outside the territory of the requesting State, the executive or other appropriate authority of the requested State shall grant extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances. If the laws in the requested State do not so provide, the executive

(5)

EX_MUCHIKEKWANAPE_031

authority in the requested State may, in its discretion, grant extradition."

## ARTICLE IV

Paragraph (2) of Article 4 of the Extradition Treaty, as amended, is deleted and replaced by the following:

"(2) For the purpose of this Treaty, the following offenses shall be deemed not to be offenses within subparagraph (iii) of paragraph 1 of this Article:

"(i) An offense for which each Contracting Party has the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to its competent authorities for the purpose of prosecution;

"(ii) Murder, manslaughter or other culpable homicide, malicious wounding or inflicting grievous bodily harm;

"(iii) An offense involving kidnapping, abduction, or any form of unlawful detention, including taking a hostage;

"(iv) An offense involving the placing or use of explosives, incendiaries or destructive devices or substances capable of endangering life or of causing grievous bodily harm or substantial property damage; and

"(v) An attempt or conspiracy to commit, or counselling the commission of, any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses."

## ARTICLE V

Article 7 of the Extradition Treaty is deleted and replaced by the following:

### "ARTICLE 7

"When the person sought is being proceeded against or is serving a sentence in the requested State for an offense other than that for which extradition is requested, the requested State may surrender the person sought or postpone surrender until the conclusion of the proceedings or the service of the whole or any part of the sentence imposed."

## ARTICLE VI

Paragraph (3) of Article 11 of the Extradition Treaty is deleted and replaced by the following:

"(3) A person arrested shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to such application if a request for extradition and the documents specified in Article 9 have not been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request and documents are subsequently received."

## ARTICLE VII

The Extradition Treaty is amended by adding the following after Article 17:

7

"Article 17 bis

"If both contracting Parties have jurisdiction to prosecute the person for the offense for which extradition is sought, the executive authority of the requested State, after consulting with the executive authority of the requesting State, shall decide whether to extradite the person or to submit the case to its competent authorities for the purpose of prosecution. In making its decision, the requested State shall consider all relevant factors, including but not limited to:

"(i) the place where the act was committed or intended to be committed or the injury occurred or was intended to occur;

"(ii) the respective interests of the Contracting Parties;

"(iii) the nationality of the victim or the intended victim; and

"(iv) the availability and location of the evidence."

## Article VIII

Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date.

## Article IX

(1) This Protocol shall be subject to ratification in accordance with the applicable procedures of the Government of the United States and the Government of Canada and instruments of ratification shall be exchanged as soon as possible.

(2) The Protocol shall enter into force upon the exchange of instruments of ratification.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

DONE in duplicate at Ottawa, this 11th day of January 1988, in the English and French languages, the two texts being equally authentic.

For the Government of the United States of America.

George P. Shultz.

For the Government of Canada.

Joe Clark.

O

**FORM:**      **Certificate of Official Records**

<u>CERTIFICATE OF AUTHENTICITY OF OFFICIAL RECORDS</u>

I, the undersigned, _____, attest that my position with the

Government of Canada is _____ and that in that position I am authorized by

the laws of Canada to attest that the documents attached hereto and described below:

(1)     are true copies of official records that are authorized by the laws of Canada to be

recorded or filed in _____, which is a government

office or agency.

(2)     set forth matters that are authorized by the laws of Canada to be reported and

recorded or filed.

Description of Documents:


(SEAL)                                        _____

                                                          (Signature)

                                                 _____

                                                             (Title)

                                                 _____

                                                            (Place)

                                                 _____

                                                            (Date)

Case 3:21-mj-01181-BGS   Document 24-1   Filed 06/04/21   PageID.140   Page 36 of 90

| 107TH CONGRESS 2d Session | SENATE | TREATY DOC. 107–11 |
| --- | --- | --- |

# SECOND PROTOCOL AMENDING EXTRADITION TREATY WITH CANADA

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF CANADA, SIGNED AT OTTAWA ON JANUARY 12, 2001



JULY 11, 2002.—The Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

99–118                WASHINGTON : 2002

EX_MUCHIKEKWANAPE_035

## LETTER OF TRANSMITTAL

————

THE WHITE HOUSE, *July 11, 2002.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Second Protocol Amending the Treaty on Extradition Between the Government of the United States of America and the Government of Canada, as amended, signed at Ottawa on January 12, 2001. In addition, I transmit, for the information of the Senate, the report of the Department of State with respect to the Second Protocol. As the report explains, the Second Protocol will not require implementing legislation.

The Second Protocol amends the Extradition Treaty Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988.

The Second Protocol, upon entry into force, will enhance cooperation between the law enforcement communities of both nations. The Second Protocol incorporates into the U.S.-Canada Extradition Treaty a provision on temporary surrender of persons that is a standard provision in more recent U.S. bilateral extradition treaties. It also provides for new authentication requirements of documentary evidence, which should streamline the processing of extradition requests.

I recommend that the Senate give early and favorable consideration to the Second Protocol and give its advice and consent to ratification.

GEORGE W. BUSH.

(III)

# LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, May 31, 2002.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Second Protocol Amending the Treaty on Extradition Between the Government of the United states of America and the Government of Canada, signed at Ottawa on January 12, 2001 ("Second Protocol"). I recommend that the Second Protocol be transmitted to the Senate for its advice and consent to ratification.

The Second Protocol will strengthen the U.S.-Canada extradition relationship by incorporating a temporary surrender mechanism into the Extradition Treaty Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988 ("Extradition Treaty"). The Second Protocol will also streamline the extradition process by modifying the Extradition Treaty's authentication requirements relating to the admissibility of documentary evidence.

A temporary surrender mechanism has become a standard provision in more recent U.S. bilateral extradition treaties. It allows person who have been found extraditable to be temporarily surrendered to one State to stand trial while they are still serving sentences in the other State. Temporary surrender can be an important tool for use in cases where serious crimes have been committed in one country which might go unpunished if trial in that country were to be delayed for a long period while a sentence was being served for crimes committed in the other country. It enables sequential trials of individuals who have committed extraditable offenses in both countries at a time when witnesses and evidence to both crimes are more readily available.

Article 1 of the Second Protocol amends the Extradition Treaty to provide for a new Article 7bis, which will follow Article 7's existing provisions authorizing the State in receipt of an extradition request ("requested State") to delay surrender until after proceedings against a person in that State have been completed or the person's sentence in that State has been served.

New article 7bis(1) provides that if the requested State has granted an extradition request in accordance with the Treaty with respect to a person who already has been convicted and sentenced in the requested State, it may temporarily surrender the person to the requesting State for prosecution. It further provides that the courts of the requested State must not be divested by virtue of the temporary surrender of jurisdiction over any appeal or habeas cor-

(V)

pus application relating to the conviction or sentence in the requested State.

Article 7bis(2) provides that the person surrendered pursuant to paragraph (1) must be kept in custody in the requesting State. It also provides that the person must be returned to the requested State within forty-five days after the conclusion of the proceedings for which the person's presence was required or at another time as specified by the requested State, in accordance with conditions determined by the Parties. This provision anticipates that authorities in the United States and Canada, which in some cases will include state-level authorities, will consult to determine appropriate conditions for the temporary surrender of an individual, including arrangements for the transfer and return of the prisoner, as well as any extraordinary matters that may be relevant, such as medical care requirements. Consistent with our normal extradition practice, any case-specific agreements or assurances relating to the temporary surrender would be concluded by the federal authorities on behalf of state authorities. Similar to the language in paragraph (1), Article 7bis(2) also provides that the transfer of the person back to the requested State will not divest the courts of the requesting State of jurisdiction over any appeal or habeas corpus application relating to the matter for which the prisoner was temporarily surrendered.

Article 7bis(3) provides that the time spent in custody in the requesting State may be credited to the sentence in the requested State. In the case of the United States, credit for time served by a person surrendered to Canadian authorities may differ among U.S. state and federal authorities.

Article 7bis(4) provides that the requested State can waive the return of the surrendered person in the event the person's sentence in the requested State expires during the temporary surrender period. Article 7bis(4) provides that in such cases the person's surrender shall be considered a "final surrender" under the Extradition Treaty.

Because temporary surrender is contingent on a grant of extradition, Article 7bis(5) provides that the requesting State does not have to make a further request for the extradition of a person who has been returned to the requested State after having been convicted and sentenced in the requesting State for the offense for which temporary surrender was granted.

Article 7bis(6) provides that a person who has been returned to the requested State, after having been convicted and sentenced during a temporary surrender, must be finally surrendered once the custodial portion of the person's sentence in the requested State has been completed or, if the requested State so specifies, at an earlier time. This provision contemplates that the requested State will finally surrender a person who has been released on parole or under other conditions. It also envisions that the requested State may choose to surrender the person at an earlier time.

Article 7bis(7) recognizes that there may be reasons not to proceed with final surrender even though the person was convicted and sentenced during a temporary surrender. Article 7bis(7) (a) provides that final surrender will not take place when the requesting State advises that it is no longer required because the sentence

imposed in the requesting State has expired or for other reasons. Similarly, Article 7bis(7) (b) provides that the person will not be surrendered to the requesting State in the event the competent authority of the requested State revokes its original grant of extradition.

Article 2 of the Second Protocol will establish a new framework for the admissibility of documentary evidence in support of a request for extradition by replacing existing Article 10(2) of the Extradition Treaty.

Consistent with U.S. extradition law on the admissibility of documentation, new Article 10(2)(a) reiterates the existing requirement that, in the case of a request from Canada, documents be authenticated by an officer of the Department of Justice of Canada and certified by the principal diplomatic or consular office of the United States in Canada. Article 10(2)(b), however, changes existing requirements with respect to requests emanating from the United States, so as to take advantage of changes in Canadian law regarding the admissibility of extradition documents in Canadian courts. Specifically, Article 10(2)(b) eliminates the requirement that the United States have its documentary evidence in support of extradition requests to Canada authenticated by an officer of the U.S. Department of State and certified by the principal diplomatic or consular officer of Canada in the United States. Instead, Article 10(2) (b) streamlines the authentication process by allowing documents to be certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction. When the person whose extradition is sought has already been convicted, documents supporting the U.S. request are to be certified by a judicial, prosecuting or correctional authority who can attest to the fact that the documents are accurate. These changes should simplify and thereby reduce the administrative burden of processing extradition requests by the United States.

New Article 10(2) (c) provides an alternative to subparagraphs (a) and (b), by providing that documents may also be certified or authenticated in any other manner accepted by the law of the requested State. This addition will enable both countries to take advantage of any changes to their applicable laws.

Article 3 of the Second Protocol addresses the relationship between the Second Protocol and the Extradition Treaty. Paragraph (1) provides that the Second Protocol will form an integral part of the Extradition Treaty. Paragraph (2) provides for retroactivity, noting that, notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, the Second Protocol will apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date. Finally, paragraph (3) provides that the Second Protocol is subject to ratification, and enters into force upon the exchange of instruments of ratification. The Second Protocol would terminate upon termination of the Extradition Treaty.

The Second Protocol does not require implementing legislation. A Technical Analysis explaining in detail the provisions of the Second Protocol is being prepared by the United States negotiating delegation, consisting of the Departments of State and Justice, and will

VIII

be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Second Protocol by the Senate at an early date.

Respectfully submitted,

COLIN L. POWELL.

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION

BETWEEN

THE GOVERNMENT OF THE UNITED STATES OF AMERICA

AND

THE GOVERNEMENT OF CANADA

Signed at Washington on December 3, 1971,
as amended by an Exchange of Notes at Washington on June 28 and July 9, 1974,
and by a Protocol signed at Ottawa on January 11, 1988

THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND
THE GOVERNMENT OF CANADA (hereinafter "the Parties");

RECOGNIZING the close bilateral relationship which exists between them,
reflected in numerous instruments and mechanisms of legal cooperation;

COMMITTED to strengthening legal cooperation in the fight against crime;
and

DESIRING to make more effective the Extradition Treaty between the Parties,
signed at Washington on December 3, 1971 (hereinafter "the Extradition Treaty"), as
amended by an exchange of notes of June 28 and July 9, 1974, and the Protocol to the
Extradition Treaty between the Parties, signed at Ottawa on January 11, 1988
(hereinafter "the Protocol");

HAVE AGREED as follows:

## ARTICLE 1

The Extradition Treaty is amended by adding the following after Article 7:

"Article 7 bis

1.    The requested State, after granting an extradition request made in accordance
with the Extradition Treaty, may temporarily surrender a person who has been
convicted and sentenced in the requested State, in order that the person sought may be
prosecuted in the requesting State. The temporary surrender of the person shall not
divest the Courts in the requested State of jurisdiction over any appeal or habeas corpus
application relating to the conviction or sentence that otherwise may be available under
the laws of the requested State.

(1)

2.      A person temporarily surrendered pursuant to paragraph 1 shall be kept in custody in the requesting State. The person shall be returned to the requested State within forty-five (45) days after the conclusion of the proceedings for which the person's presence was required in the requesting State or at another time as specified by the requested State, in accordance with conditions to be determined by the Parties for that purpose.    The return of the person to the requested State shall not divest the Courts in the requesting State of jurisdiction over any appeal or habeas corpus application that otherwise may be available under the laws of that State, in relation to the matter for which the person was temporarily surrendered.

3.      The period of time spent in custody in the requesting State may be credited to the sentence in the requested State.

4.      When the sentence that the person was serving in the requested State expires during the temporary surrender, the requested State may waive the return of the person and the surrender will be considered to be a final surrender.  A "final surrender" is a surrender of a person pursuant to this Treaty other than as provided for by this Article.

5.      Subject to paragraph 7, if a person temporarily surrendered and returned to the requested State has been sentenced to imprisonment in the requesting State for the offence for which the person was temporarily surrendered, the person shall be finally surrendered to the requesting State, in accordance with paragraph 6, without a further request for extradition.

6.      Final surrender shall take place when the person has finished serving the custodial portion of the sentence in the requested State, or at an earlier time specified by the requested State.

7.      Final surrender shall not take place when:

    (a)     the requesting State advises that final surrender is no longer required due to the expiration of the sentence imposed or for other reasons; or

    (b)     after the temporary surrender, the warrant or order for the final surrender of a person sought is revoked by the competent authority of the requested State."

## ARTICLE 2

Article 10(2) of the Extradition Treaty is deleted and replaced by the following text:

"(2)    The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when:

    (a)     in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada;

EX_MUCHIKEKWANAPE_042

(b)   in the case of a request emanating from the United States for a person who is sought for prosecution, they are certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction. In the case of a request emanating from the United States for a person who is sought in connection with a conviction, the documents must be certified by a judicial, prosecuting or correctional authority who attests to the fact that the documents are accurate; or

(c)   they are certified or authenticated in any other manner accepted by the law of the requested State."

### ARTICLE 3

1.   This Second Protocol shall form an integral part of the Extradition Treaty.

2.   Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Second Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offence was committed before or after that date.

3.   This Second Protocol shall be subject to ratification, and shall enter into force upon the exchange of instruments of ratification. It shall terminate upon termination of the Extradition Treaty.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Second Protocol.

DONE in duplicate at *Ottawa* this *Twelfth* day of *January* 2001 in the English and French languages, the two texts being equally authentic.

FOR THE GOVERNMENT OF
THE UNITED STATES OF
AMERICA

FOR THE GOVERNMENT
OF CANADA



Embassy of the United States of America

## Certificate to be Attached to Documentary Evidence Accompanying Requisitions in the United States for Extradition

## AMERICAN FOREIGN SERVICE

Ottawa, Canada, May 19, 2021

I, Katherine Brucker, Chargé d'Affaires of the United States of America at Ottawa, Canada, hereby certify that the annexed papers, being authenticated supporting documents proposed to be used upon an application for the extradition from the United States of **Roderick MUCHIKEKWANAPE** who is wanted to stand trial in the Province of British Columbia for one count of escape and being at large without excuse, contrary to Section 145(1) of the *Criminal Code*, and who is wanted for enforcement of a life sentence for one count of first degree murder, contrary to section 235(1) of the *Criminal Code* are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Canada, as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed this 19th day of May, 2021.

Katherine Brucker
Chargé d'Affaires of the
United States of America

Form 36- Foreign Service

SENSITIVE BUT UNCLASSIFIED

EX_MUCHIKEKWANAPE_044

Department of Justice    Ministère de la Justice
Canada                  Canada

Ottawa, Canada
K1A 0H8

## <u>CERTIFICATE OF AUTHENTICATION</u>

IN THE MATTER OF the request for the extradition of **Roderick MUCHIKEKWANAPE** from the United States of America to Canada

I, Marisa Ferraiuolo, Counsel, International Assistance Group, Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented by Canada in support of the request for the extradition of **Roderick MUCHIKEKWANAPE** who is wanted to stand trial in the Province of British Columbia for one count of escape and being at large without excuse, contrary to Section 145(1) of the *Criminal Code*, and who is wanted for enforcement of a life sentence for one count of first degree murder, contrary to section 235(1) of the *Criminal Code.*

THAT the documentation attached to this certificate is composed of:

- the Affidavit of Law of Dorothy Pui Huen Tsui, Crown Counsel, BC Prosecution Service, Ministry of Attorney General of British Columbia to which is appended:

  - as exhibit "A", a copy of the Information sworn before a Justice of the Peace in the Province of British Columbia on November 6, 2020; and

  - as exhibit "B", a copy of the Warrant for Arrest dated November 6, 2020 issued by a Justice of the Peace in the Province of British Colombia.

- the Affidavit of Fact of Constable Darcy Wade Burke, a peace officer with the Royal Canadian Mounted Police to which is appended:

  - as exhibit "A", a copy of the Disposition issued by the Manitoba Court of Queen's Bench, dated December 13, 2000;

  - as exhibit "B", a copy of the Warrant for Apprehension and Recommitment to Custody in a Penitentiary, dated October 29, 2020 issued by Institution Head, Shawna N. Hopfner, of the Province of British Columbia;

  - as exhibit "C", a copy of the Information sworn before a Justice of the Peace in the Province of British Columbia on November 6, 2020;



- as exhibit "D", a copy of the Warrant for Arrest dated November 6, 2020 issued by a Justice of the Peace in the Province of British Colombia;

- as exhibit "E", a copy of the fingerprint record of Roderick Muchikekwanape dated December 2, 1997; and

- as exhibit "F", a copy of a photograph of Roderick Muchikekwanape.

- the Statement of Law Daniel Alonso Veas-Henriquez, Legal Counsel, Legal Services, Correctional Service Canada to which is appended:

  - as exhibit "A", a copy of the text for section 235 of the *Criminal Code*.

- the Statement of Fact of Lisa Manson, National Manager, Sentence Management, Correctional Service of Canada to which is appended:

  - as exhibit "A", a copy of the Disposition issued by the Manitoba Court of Queen's Bench, dated December 13, 2000;

  - as exhibit "B", a copy of the Warrant for Apprehension and Recommitment to Custody in a Penitentiary, dated October 29, 2020 issued by Institution Head, Shawna N. Hopfner, of the Province of British Columbia; and

  - as exhibit "C", a copy of a photograph of Roderick Muchikekwanape.


THAT James Barbour, Crown Counsel, whose original signature appears at the end of the Affidavit of Dorothy Pui Huen Tsui, is a Commissioner of Oaths for the Province of British Columbia, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

THAT Dorothy Pui Huen Tsui, Crown Counsel, whose original signature appears at the end of the Affidavit of Constable Darcy Wade Burke, is a Commissioner of Oaths for the Province of British Columbia, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

The Seal of the Minister of Justice of Canada is hereby affixed this 17th day of May, 2021.

_____
Marisa Ferraiuolo, Counsel
International Assistance Group
Department of Justice of Canada

| | |
|---|---|
| CANADA | ) IN THE MATTER OF AN |
| PROVINCE OF BRITISH COLUMBIA | ) APPLICATION FOR THE |
| CITY OF ABBOTSFORD | ) EXTRADITION FROM THE |
| | ) UNITED STATES OF AMERICA |
| | ) TO CANADA OF RODERICK |
| | ) MUCHIKEKWANAPE |
| | ) WHO STANDS CHARGED IN |
| | ) CANADA WITH THE |
| | ) OFFENCE OF BEING |
| | ) UNLAWFULLY AT LARGE |

## AFFIDAVIT OF LAW

I, Dorothy Pui Huen Tsui, Barrister and Solicitor, of the City of Vancouver, Province of British Columbia, Canada **MAKE OATH AND SAY AS FOLLOWS:**

### A. Qualifications

1. I am a citizen of Canada and a resident of the City of Coquitlam, in the Province of British Columbia, Canada.

2. In 2013, I received a juris doctor (J.D.) from the University of British Columbia, in Vancouver, Canada. In May of 2014, I was called to the Bar of the Province of British Columbia. From that time until the present, I have been a member in good standing of the Law Society of British Columbia, and as such, I am entitled to practice law, and have practised law, in the Province of British Columbia, Canada, as a Barrister and Solicitor.

3. Since May 30, 2014, I have been employed as a Crown Counsel with the British Columbia Prosecution Service of the Ministry of Attorney General of British Columbia, I practice exclusively in the field of criminal law.

4. The British Columbia Prosecution Service is responsible for the conduct of criminal prosecutions in the Province of British Columbia. Another function of the British Columbia Prosecution Service is to exercise responsibility on behalf of the Attorney General of British Columbia, with respect to applications by the Attorney General of British Columbia for the extradition to Canada from foreign jurisdictions of persons charged in British Columbia with offences contrary to Canada's *Criminal Code*, R.S.C. 1985, c. C-46.

5. My primary responsibility as a Crown Counsel has been a trial prosecutor for a range of offences, including crimes of violence and offences against the administration of justice. In this role, I routinely make oral and written submissions

2

to the Court about how Canadian criminal law and procedure operates. As a Crown Counsel, from time to time, I have also had charge approval responsibilities. These responsibilities include reviewing evidence gathered in the course of police investigations and making an assessment of whether there is a substantial likelihood that a person will be convicted of an offence based on that evidence.

6. Based on my training and experience, I am an expert in the criminal law and procedure of Canada.

## B. OVERVIEW OF THE CANADIAN CRIMINAL LAW AND HISTORY OF THIS EXTRADITION REQUEST

7. In Canada, the federal government has legislative authority for criminal law. The *Criminal Code of Canada,* R.S.C. 1985, c-46, is a statute enacted by the Parliament of Canada containing the law relating to criminal offences for the whole of Canada and every province thereof, including the Province of British Columbia. The *Criminal Code* is currently in force in Canada and the Province of British Columbia, and was in force throughout Canada and the Province of British Columbia at the time Roderick Muchikekwanape ("Muchikekwanape") is alleged to have committed the offences with which he is currently charged as set out in the Affidavit of Constable Burke.

8. In each of Canada's provinces, the provincial Attorney General has jurisdiction to enforce criminal law and conduct prosecutions relating to offences set out in the *Criminal Code*. In the province of British Columbia, lawyers employed as Crown Counsel by the British Columbia Prosecution Service have the authority and duty to conduct criminal prosecutions on behalf of the Attorney General of British Columbia. As a Crown Counsel, I am an agent for the Attorney General of British Columbia.

9. To be convicted of a criminal offence in Canada, Crown Counsel must prove all elements of the offence beyond a reasonable doubt.

10. Before charges are laid in the Province of British Columbia, Crown Counsel reviews all the evidence obtained in the police investigation. Charges are only approved if Crown Counsel is satisfied there is (i) a substantial likelihood of conviction on the available evidence and (ii) it is in the public interest to proceed against the accused.

11. Pursuant to the *Criminal Code,* a form called an "Information" is the document by which charges are initiated and brought before the court. The purpose of the Information is to state the offences the accused person is facing and to give notice of the particular offence the are alleged to have committed.

12. Under the *Criminal Code*, there are three types of offences: (i) indictable offences, (ii) summary conviction offences; and (iii) hybrid offences. Canadian law has abolished the common law division of offences into felonies and misdemeanours. However, indictable offences are roughly equivalent to felonies and summary conviction offences are roughly equivalent to misdemeanours. Generally speaking, indictable offences are more serious offences carrying more severe penalties, and summary conviction offences are less serious offences carrying less severe penalties. Hybrid offences may be prosecuted by indictment or summary conviction procedure at the election of the prosecution.

13. The *Criminal Code* contains the following provisions related to escape from lawful custody and being unlawfully at large which are relevant to this extradition request.

### Escape and being at large without excuse

**145 (1)** Every person who escapes from lawful custody or who is, before the expiration of a term of imprisonment to which they were sentenced, at large in or outside Canada without lawful excuse, is guilty of

> **(a)** an indictable offence and liable to imprisonment for a term of not more than two years; or
> **(b)** an offence punishable on summary conviction.

14. Section 145 (1) was in full force and effect on October 29, 2020, the date of the commission of the offence alleged in this extradition request, and this section continues to be in effect.

15. A charge under section 145(1) of the *Criminal Code* is a hybrid offence, and the Crown may elect to proceed by way of indictment or summary conviction. An offence under section 145(1) is deemed to be indictable until an election is made to proceed by way of summary conviction. The Crown, if successful in securing the extradition of Muchikekwanape on the charge under section 145(1), will elect to proceed by indictment. .

16. Offences prosecuted by indictment do not have a limitation period with respect to the time before which an Information must be sworn against an accused alleging an offence.

17. An accused person being prosecuted for indictable offences has the election to be tried in Provincial Court of British Columbia or the Supreme Court of British Columbia. If the accused person elects to be tried in the Supreme Court of British Columbia, they also may also elect to have their trial by either a judge and jury or by judge alone.

4

## C. **PROSECUTION FOR THE OFFENCE OF BEING UNLAWFULLY AT LARGE**

18. Muchikekwanape, date of birth             , is charged with, and his extradition is sought for the prosecution of, the following offence:

    Count 1:    Roderick Muchikekwanape, on or about the 29th day of October, 2020, at or near Mission, in the Province of British Columbia, was at large without lawful excuse before the expiration of a term of imprisonment to which he was sentenced, contrary to Section 145(1) of the *Criminal Code*.

19. The *actus reus* for being unlawfully at large is committed when an offender physically escapes from lawful custody. The *mens rea* requirement of the offence is that the offender escaped knowing they did not have a lawful excuse to leave custody.

20. Information 92691-1 sets out these charges and Court Liaison Officer C. Mitchell swore this Information on November 6, 2020 before a Justice of the Peace in the Province of British Columbia.

    **A true copy of Information 92691-1 is attached and marked as Exhibit "A" to this Affidavit.**

21. A Justice of the Peace in the Province of British Columbia issued a warrant of arrest for Muchikekwanape on November 6, 2020.

    **A true copy of the warrant of arrest is attached and marked as Exhibit "B" to this Affidavit.**

22. I have read and reviewed the Information charging the accused, Muchikekwanape, with single count as set out above. I have read and reviewed the warrant of arrest of Roderick Muchikekwanape issued in respect of Information 92691-1. I have read and reviewed the affidavit of Constable Darcy Wade Burke (Cst. Burke) filed in support of this extradition request and the exhibits appended thereto.

23. When Muchikekwanape escaped from custody on October 29, 2020, he was serving a life sentence and had not been released on parole.

24. The maximum penalty for escaping and being unlawfully at large is two years imprisonment.

25. In Canada, there is no statutory limitation period of general application in respect of indictable offences. As a result, an indictable offence may be initiated at any time and is not barred by any time limitations.

26. Since the Crown is proceeding by indictment, there is no limitation period against the prosecution of the criminal offence on which extradition is being sought.

27. In addition, the charge laid against Muchikekwanape is not statute barred.

28. In Canada, to convict an accused person, the trier of fact must be satisfied that the guilt of the accused has been established beyond a reasonable doubt.

29. In my opinion, the evidence disclosed by the affidavit of Cst. Burke, filed in support of this extradition request establishes a *prima facie* case upon which a reasonable jury, properly instructed, could be satisfied beyond a reasonable doubt and convict the accused, Muchikekwanape, of the charge set out in paragraph 16 above.

30. The offence on which Muchikekwanape's extradition is sought is an extraditable offence. It is not a political offence or an offence of a political character. The offence was not charged for the purpose of prosecuting Muchikekwanape on account of his race, religion, gender, sexual orientation, ability status, nationality or political opinion, and Muchikekwanape will not be prejudiced by reason of his race, religion, gender, sexual orientation, ability status, nationality or political opinion.

31. Muchikekwanape has not been prosecuted or convicted or sentenced in Canada for the offence for which his extradition is sought.

32. This affidavit is made in support of a request for the extradition of Muchikekwanape and for no improper purpose.

SWORN BEFORE ME at the                    )

City of Abbotsford,                        )

Province of British Columbia, Canada,      )

this __17__ day of __May__ 2021            )

_____
A Commissioner for Taking Affidavits
in and for the Province of British Columbia,
Canada

Jim Barbour
Crown Counsel
Ministry of Justice
2845 Cruickshank St.
Abbotsford, BC  V2T 6X1

_____
Dorothy Pui Huen Tsui
Crown Counsel
BC Prosecution Service
Ministry of Attorney General of British Columbia

# Exhibit A

EX_MUCHIKEKWANAPE_052

| Court Identifier: 3561 - P - R - A |
| Court File Number: 92691 |
| Type Reference: |
| Info. Seq. Number: 1 |
| Agency File Number: 719:20-12158 |
| DNA: [X]     K File: [ ]     SOR: [ ] |

**INFORMATION BY TELECOMMUNICATION THAT PRODUCES A WRITING/DÉNONCIATION PAR TÉLÉCOMMUNICATION QUI REND LA COMMUNICATION SOUS FORME ÉCRITE**

CANADA:
PROVINCE OF BRITISH COLUMBIA
PROVINCE DE LA COLOMBIE-BRITANNIQUE

Pursuant to Section 508.1(2) of the *Criminal Code* and/or Section 13.1 of the *Offence Act* (British Columbia)/
Suivant le paragraphe 508.1(2) du *Code criminel* et/ou l'article 13.1 de l'*Offence Act* (Colombie-Britannique)

**"BY INDICTMENT"**

In the Provincial Court of British Columbia/Dans le tribunal provincial de la Colombie-Britannique.

This is the information of / Les présentes constituent la dénonciation de   C . MITCHELL   , a Court Liaison Officer  (the "informant" / le "dénonciateur") of / de Mission, British Columbia submitted before a justice by telecommunication that produces a writing / transmise à un juge de paix, par télécommunication qui rend la communication sous forme écrite.

The Informant says that he/she has reasonable and probable grounds to believe and does believe that: / Le(la) dénonciateur(trice) déclare qu'il(elle) a des motifs raisonnables et probables de croire et croit effectivement que:

**Count 1**

Roderick MUCHIKEKWANAPE, on or about the 29th day of October, 2020, at or near Mission, in the Province of British Columbia, was at large without lawful excuse before the expiration of a term of imprisonment to which he was sentenced, contrary to Section 145(1) of the Criminal Code.

Pursuant to Section 508.1(2) of the *Criminal Code* and / or Section 13.1 of the *Offence Act* (British Columbia) the Informant states that all matters contained in this Information are true to my knowledge and belief.

Suivant le paragraphe 508.1(2) du *Code criminal* et / ou l'article 13.1 de l'*Offence Act* (Colombie-Britannique), le dénonciateur(trice) déclare qu'il/elle croit vrais, au meilleur de sa connaissance, les renseignements contenus dans la dénonciation.

Dated/Fait le   NOVEMBER 6, 2020

at/a   ABBOTSFORD
British Columbia / Colombie-Britannique

Signature of Informant / Signature du(de la) dénonciateur(trice)

I certify this information was received by me by means of telecommunication that produces a writing at / Je certifie que j'ai reçu la présente dénonciation par un moyen de télécommunication qui rend la communication sous forme écrite à

1:37 ᵖ m, on/le   NOV 0 6 2020   at/à   Abbotsford   , British Columbia/Colombie-Britannique
time/heure        date                    city/municipality  ville/municipalité
                                           Process/Acte
                                           de procédure:   WAR              confirmed

A Justice of the Peace in and for the Province of British Columbia / Un juge de paix dans et pour la province de la Colombie-Britannique.

A Justice of the Peace in and for the Province of British Columbia / Un juge de paix dans et pour la province de la Colombie-Britannique.

Name/nom:   A. Caldwell
Justice of the Peace

This is EXHIBIT   "A"   attached to the
Affidavit of   Dorothy pui Huen Tsui
sworn the   17   day of   May  , 20 21

A Commissioner for taking Affidavits
in the Province of British Columbia

I HEREBY CERTIFY THIS TO BE A
TRUE COPY OF THE ORIGINAL OF

I HEREBY CERTIFY THIS TO BE A
TRUE COPY OF THE ORIGINAL OF
WHICH IT PURPORTS TO BE A COPY

| Page | of |
| 1 | 1 |

PCR822  04/2019

Exhibit B

EX_MUCHIKEKWANAPE_054

**Warrant for Arrest**

In the Provincial Court

Canada: Province of British Columbia

Police File No.
719:20-12158

Court File No.
3561:92691-1

Ban - none

Primary Enf. Agency:

D.O.B.: ▓▓▓▓▓▓

To the Peace Officers in the Province of British Columbia:

This warrant is issued for the arrest of Roderick Muchikekwanape of , ,  referred to in this warrant as the accused. Because the accused has been charged with the following offence(s):

**Count 1, on or about October 29, 2020, at or near Mission BC, did commit an offence of Escape from lawful custody or being unlawfully at large, contrary to section 145(1) Criminal Code.**

See a total of 1 Charge

This is EXHIBIT ____"B"____ attached to the

Affidavit of __Dorothy pui Huen Tsui__

sworn the __17__ day of __May__, 20 _21_

_[signature]_

A Commissioner for taking Affidavits
in the Province of British Columbia

Certified A True And Correct Copy
Of The Document Filed Herein

.......... _[signature]_ ..........
CLERK OF THE COURT

And because:

there are reasonable and probable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused. 507(4), 512(1)

You are therefore ordered, in Her Majesty's name, to immediately arrest the accused and bring them before any Justice/Judge in and for the Province of British Columbia to be dealt with according to law.

Dated / Fait le **November 6, 2020**

at / à **Abbotsford**

British Columbia / Colombie-Britannique

**A. Caldwell** 2020.11.06 13:44:48 -08'00'

Justice of the Peace / Juge de paix A Caldwell, in and for the Province of British Columbia / dans et pour la province de la Colombie-Britannique

**Endorsement of Warrant**

**CANADA: Province of British Columbia - Form 29 (Section 507)** Whereas this warrant is issued under section 507, 508 or 512 of the *Criminal Code* in respect of an offence other than an offence mentioned in section 522 of the *Criminal Code*, I hereby authorize the release of the accused pursuant to section 499 of that Act.

Dated

at | British Columbia | A Justice of the Peace in and for the Province of British Columbia

| Warrant Cancelled (Return to Registry) | | | | Warrant Executed (Return to Registry and attach original bail document if applicable) |
|---|---|---|---|---|
| by | | | | |
| Person contacted | | | by | |
| by phone at | | m.  Date | | Date |
| Reason | | | Bail reinstated | |

PCR014
Form 7
Rev 12/2019   13:44-06.11.2020

**File, Police**

Page 1 of 2

(CC) Warrant for Arrest (adult)

| | |
|---|---|
| CANADA ) | IN THE MATTER OF AN |
| PROVINCE OF BRITISH COLUMBIA ) | APPLICATION FOR THE |
| CITY OF MISSION ) | EXTRADITION FROM THE |
| ) | UNITED STATES OF AMERICA |
| ) | TO CANADA OF RODERICK |
| ) | MUCHIKEKWANAPE WHO |
| ) | STANDS CHARGED IN CANADA |
| ) | WITH THE OFFENCE OF |
| ) | BEING UNLAWFULLY AT LARGE |

## AFFIDAVIT OF FACT

I, Constable Darcy Wade Burke (Cst. Burke), a police officer in the City of Mission, Province of British Columbia, Canada, MAKE OATH AND SAY AS FOLLOWS:

1. I am a Police Officer and have been a member of the Royal Canadian Mounted Police ("RCMP") for the last 10 years. I hold the rank of Constable. I am currently assigned to the Serious Crime Unit of the Mission Detachment and have been in that unit since September of 2019. Previously, I was assigned to the Integrated Homicide Investigation Team, and before that, I was assigned to General Duty policing.

2. I have personal knowledge of the matters and facts in this affidavit, except where such facts are stated to be on information and belief, and in such case, I believe them to be true.

3. This affidavit relates to the investigation, evidence, and charges against Roderick Muchikekwanape ("Muchikekwanape") for escaping Mission Institution and being unlawfully at large on October 29, 2020, in the City of Mission, Province of British Columbia, and is made in support of the extradition request from the United States of America to Canada on those charges.

4. I became personally involved in this investigation on November 3, 2020. I was assigned the role of lead investigator and tasked with completing the investigation. In order to fulfill this role, I have reviewed the investigative file in its entirety, including police statements, Correctional Service of Canada ("CSC") Reports and witness statements.

## BACKGROUND

5. Muchikekwanape is currently serving a life sentence for First Degree Murder at Mission Minimum Institution, located at 33737 Dewdney Trunk Road, City of Mission, in the Province of British Columbia, Canada.

6. In July of 1998, in the City of Winnipeg, in the Province of Manitoba, Canada, Muchikekwanape attacked a female victim, dragged her under a bridge, and killed her

1

while sexually assaulting her. Muchikekwanape also beat the victim with a rock and broke her cheekbones and nose, and fractured her skull. He also used a sharp object to cut her genitalia.

7. Muchikekwanape was convicted of First Degree Murder on December, 13, 2000 and was sentenced to life imprisonment.
**Attached as Exhibit A to my Affidavit is a true copy of the Disposition, issued by the Manitoba Court of Queen's Bench**

8. Muchikekwanape was transferred to Mission Minimum Institution on August 24, 2020 and resided at House 10 since that day.

## SUMMARY OF THE EVIDENCE

9. On October 29, 2020 at 22:32, Amandeep Kambo, a CSC employee working at Mission Minimum Institution, called the Mission RCMP to report that Muchikekwanape was unlawfully at large.

10. During the October 29, 2020, 22:00 headcount of all inmates, CSC staff members at Mission Minimum Institution discovered that Muchikekwanape was not accounted for and could not be located within the prison or on prison grounds. Muchikekwanape has been unlawfully at large since that time.

11. CSC staff conducted a search of Muchikekwanape's room within House 10, and observed that all of Muchikekwanape's personal effects had been emptied from the room.

12. Between October 30, 2020 and November 3, 2020, members of the Mission RCMP attended Mission Minimum Institution, interviewed various inmates, and learned the following:

    a. Muchikekwanape had received a call two to three weeks prior to October 29, 2020 appeared upset after the call;

    b. An inmate in House 10 believed that phone call was from Muchikekwanape's parole officer, was not good news and perhaps related to a denial of a work order;

    c. Muchikekwanape usually cooked for two other indigenous inmates and dinner was usually ready at 19:00;

    d. On October 29, 2020, however, dinner was ready earlier than 1900, which was unusual;

    e. Muchikekwanape had been pacing back and forth in the kitchen that day and appeared stressed;

    f. Muchikekwanape had previous discussions with an inmate about Muchikekwanape wanting to go to the United States;

    g. Muchikekwanape was last seen wearing dark clothing, and the last time any inmate saw him on October 29, 2020 was shortly after the 19:00 count.

EX_MUCHIKEKWANAPE_057

13. A Warrant of Apprehension and Recommitment to Custody was issued On October 29, 2020, at 2320 by A/Warden Hopfner.

   **Attached as Exhibit B to my Affidavit is a true copy of the Warrant of Apprehension and Recommitment to Custody**

**Prosecution for offence of being unlawfully at large**

14. I have been informed by the British Columbia Prosecution Service of the Ministry of Attorney General, and do believe, that Muchikekwanape has been charged on Information 92691-1 with the offence of being unlawfully at large, contrary to section 145(1) of the *Criminal Code* of Canada.

   Count 1:     Roderick Muchikekwanape, on or about the 29th day of October, 2020, at or near Mission, in the Province of British Columbia, was at large without lawful excuse before the expiration of a term of imprisonment to which he was sentenced, contrary to Section 145(1) of the *Criminal Code*.

   **Attached as Exhibit C to my Affidavit is a true copy of that Information**

15. After Information 92691-1 was sworn and filed in the Provincial Court of British Columbia, a warrant was issued for the arrest of Muchikekwanape, and this warrant is currently outstanding.

   **Attached as Exhibit D to my Affidavit is a true copy of that warrant**

16. I have been informed by the British Columbia Prosecution Service of the Ministry of Attorney General, and do believe, that if Muchikekwanape is returned to Canada, he will be prosecuted for this offence.

**Identification of Mr. Muchikekwanape**

17. Persons charged with criminal offences in Canada are fingerprinted, photographed and given a number identifying that person to the set of prints (an "FPS" number). These fingerprint records are kept in a central registry by the RCMP in Ottawa, Ontario, Canada. Roderick Muchikekwanape's FPS number is ▅▅▅▅.

   **Attached as Exhibit E to my Affidavit is a true copy of the fingerprint record of Roderick Muchikekwanape obtained from the RCMP.**

3

18. Roderick Muchikekwanape's CSC records also contain a photograph taken of him during his intake to Mission Minimum Institution. On May 12, 2021, I requested and received a copy of that photograph from Darcy Singh, Security Intelligence Officer at Mission Minimum Institution. Darcy Singh also informed me that he was familiar with what Muchikekwanape looked like before his escape on October 29, 2020, had viewed the photograph of Muchikekwanape contained with Mission Minimum Institution's records, and can confirm that the person in the photograph is the person reported missing from Mission Minimum Institution on October 29, 2020.

**Attached as Exhibit F to my Affidavit is a true copy of Roderick Muchikekwanape's intake photograph to Mission Minimum Institution obtained from his CSC Records.**

19. Roderick Muchikekwanape has the following identifiers:
   - Full Name: Roderick Muchikekwanape
   - Date of Birth: ▮▮▮▮▮▮
   - Physical Description: Indigenous, heavy build, medium complexion, black hair, brown eyes, has a goatee, height: 6ft, weight: 216 lbs.
   - FPS #: ▮▮▮▮

20. This affidavit is made in support of the request for the extradition of Muchikekwanape from the United States of America, and for no improper purpose. I believe all of the above information to be accurate to the best of my knowledge.

Affirmed before me at Mission,                )
in the Province of British Columbia,           )
the 17 day of ___MAY___, 2021                  )
                                               )
                                               )
                                               )
_____              )       _____
A Commissioner for taking affidavits           )       Constable Darcy Burke
in British Columbia                            )

Dorothy Tsui
Crown Counsel
Ministry of Justice

4

# Exhibit A

EX_MUCHIKEKWANAPE_060

CANADA
**Province of Manitoba**

## DISPOSITION

| LAST NAME | FIRST NAME | INITIAL | DATE OF BIRTH | DAY | MONTH | YEAR |
|---|---|---|---|---|---|---|
| MUCHIKEKWANAPE | RODERICK | | | | | |

Hereinafter called the accused appeared before this court on the information/indictment **attached** for the following adjudication.

**DATE**

| | | | |
|---|---|---|---|
| _____ | Proceedings | ☐ Summary | ☐ Indictment |
| _____ | Accused Election | ☐ Provincial Judge | ☐ QB Judge | ☐ Judge and Jury |
| _____ | Re-election | ☐ Provincial Judge | |
| Oct. 26, 2000 | Arraignment | ☐ QB Judge | ☑ Judge and Jury |

| DATE | COUNT | PLEA | | VERDICT | | | | ☐ guilty plea ☐ ordered to stand trial included offence of | JUDGE / JUSTICE |
|---|---|---|---|---|---|---|---|---|---|
| | | Stay of Proceedings | guilty / not guilty | ordered to stand trial | discharged | guilty | not guilty | | |
| Oct 26/00 | 1 | ☐ | ☐ ☑ | ☐ | ☐ | ☐ | ☐ | | MAC INNES |
| Dec. 13/00 | 1 | ☐ | ☐ ☐ | ☐ | ☐ | ☑ | ☐ | | KRINDLE |
| | | ☐ | ☐ ☐ | ☐ | ☐ | ☐ | ☐ | | |
| | | ☐ | ☐ ☐ | ☐ | ☐ | ☐ | ☐ | | |

☐ Other : _____

The accused/offender received the following disposition:

☐ acquitted     ☐ charge dismissed     ☐ absolute discharge

☐ conditional sentence for _____     ☐ Restitution (see attached Restitution Order)

☐ fine (see attached Fine Order) *(term of sentence)*  ☐ fine surcharge (see attached Fine Order)     ☐ surcharge waived

☐ prohibition from operating for a period of _____  ☐ motor vehicle  ☐ vessel  ☐ aircraft  ☐ railway equipment

☐ prohibit possession of firearms and weapons  ☐ discretionary  ☐ mandatory  ☐ mandatory lifetime order
*(period of prohibition)*  *(period of prohibition)*

☐ Other _____

☐ Order of Confiscation

☐ DNA Order  ☐ Primary (Mandatory)  ☐ Secondary (Discretionary)  ☐ Retrospective  ☐ No DNA ordered

**Terms and Conditions** _____

☑ be imprisoned for the following term:     ☐ time already served ( _____ days)

*Life with no eligibility for parole for 25 years*

☐ Intermittent (see reversal)     ☐ offender requests to serve time

**Notice of Warrant of Committal on Reverse**

☐ conditional discharge  ☐ suspended sentence  ☐ Peace Bond Amount _____  Period of Time _____

☐ enter into a Probation Order  ☐ supervised  ☐ unsupervised  For a period of _____ from ☐ the date of this Order

☐ the expiration of term of imprisonment, upon the conditions:  ☐ following  ☐ concurrently imposed this day

☐ the expiration of Conditional Sentence Order

Further conditions of  ☐ PO Probation Order  ☐ CS Conditional Sentence  ☐ PB Peace Bond

_____ ☐ report to a Probation Officer

_____ ☐ abstain absolutely from the consumption or possession of  ☐ alcohol  ☐ non-prescription drugs  ☐ other intoxicants;

_____ ☐ abstain from owning, possessing, or carrying a weapon;

_____ ☐ perform _____ hours of community service work, as directed by Probation Services and to be completed

☐ within probation period  _____

_____ ☐ attend, participate and complete  ☐ addictions assessment and/or

☐ domestic violence  ☐ sexual offender  ☐ anger management

☐ _____ counseling as directed and supervised by Probation Services;

_____ ☐ no contact or communication/non-association directly or indirectly with _____

_____ ☐ not to attend at or near _____

_____ ☐ pay restitution in accordance with the Restitution Order;

_____ ☐ to reside _____

_____ ☐ _____

_____ ☐ _____

| | | | |
|---|---|---|---|
| Judge/Justice KRINDLE | Dec. 1, 2000 Date | "120" Winnipeg Location | Alicia Shandil Clerk of the Court |

Court File No.: CR 99-01-20690

| Domestic Violence | ☐ Yes | ☑ No |
|---|---|---|

White - Court
MG 10884E (Rev. 6/00)     Yellow - Warrant/Other

EX_MUCHIKEKWANAPE_061

**TO THE PEACE OFFICERS AND TO THE KEEPER OF A PROVINCIAL/FEDERAL INSTITUTION.**

THIS IS, THEREFORE, TO COMMAND IN HER MAJESTY'S NAME THAT:

YOU, THE PEACE OFFICER, arrest and convey the offender safely to a Provincial/Federal Institution and deliver him/her to the keeper thereof.

YOU, THE KEEPER to receive the offender into your custody and to keep him/her in accordance with the aforesaid adjudication and for so doing this is a sufficient warrant.

**AUX AGENTS DE LA PAIX ET AU GARDIEN D'UN ÉTABLISSEMENT PROVINCIAL OU D'UN PÉNITENCIER.**

AU NOM DE SA MAJESTÉ :

IL VOUS EST PAR LES PRÉSENTES ORDONNÉ, À VOUS L'AGENT DE LA PAIX, d'arrêter le délinquant, de le conduire sûrement à l'établissement ou au pénitencier et de l'y remettre au gardien.

IL VOUS EST PAR LES PRÉSENTES ORDONNÉ, À VOUS LE GARDIEN, de recevoir le délinquant sous votre garde et de l'y détenir conformément à la décision indiquée ci-dessus.   Les présentes sont, pour ce faire, un mandat suffisant.

Sentence to be served intermittently as described next/La sentence doit être purgée de façon discontinue de la manière suivante :

Initially report to/Vous devez d'abord vous présenter à (au) _____

(street/rue)                                    (city/ville)

Manitoba and thereafter as directed by Corrections/au Manitoba et, par la suite, selon les directives du Service correctionnel.

Sentence to commence/Début de la sentence : _____  at/à _____
(day of the week/jour de la semaine)      (date)      (time/heure)

to/jusqu'au _____  at/à _____ and every consecutive/puis chaque
(day of the week/jour de la semaine)   (date)   (time/heure)

☐ weekend/fin de semaine   ☐ week day or/jour de semaine ou   ☐ Saturday/Sunday/samedi/dimanche
(check one/cocher une case)

until the completion of the sentence/jusqu'à la fin de la sentence.

This is EXHIBIT " A " attached to the
Affidavit of Cst. Darcy Wade Burke
sworn the 17 day of May, 20 21

A Commissioner for taking Affidavits
in the Province of British Columbia

I HEREBY CERTIFY THIS TO BE A
TRUE COPY OF THE ORIGINAL OF
WHICH IT PURPORTS TO BE A COPY

Exhibit B

# MAND IEL/UAL WARR

Page 1

Correctional Service
Canada

CANADA
PROVINCE/TERRITORY OF **BRITISH COLUMBIA**

PROTECTED B ONCE COMPLETED

**F.P.S.**
**D.O.B.**
**W.E.D.**

IN THE MATTER OF THE CORRECTIONS AND CONDITIONAL RELEASE ACT
CHAPTER 20 OF THE STATUTES OF CANADA (1992)

### WARRANT OF APPREHENSION AND RECOMMITMENT TO
### CUSTODY IN A PENITENTIARY (section 11.1)

TO ANY PEACE OFFICER IN CANADA

WHEREAS, **MUCHIKEKWANAPE, RODERICK**                    , of   **MISSION INSTITUTION**
hereinafter referred to as the offender, is a person sentenced, committed or transferred to a penitentiary and is at large
without lawful authority before the expiration of the sentence imposed upon her/him by a court of law.

AND WHEREAS, I   **HOPFNER, SHAWNA N**                    , an institutional head
have reasonable and probable grounds, as follows, to believe that the offender should be apprehended and
recommitted pursuant to the provisions of section 11.1 of the Corrections and Conditional Release Act.

THIS IS THEREFORE to command you to apprehend the offender, convey him/her safely to a penitentiary and deliver
him/her to the keeper thereof, together with the following precept:

YOU THE SAID keeper are hereby commanded to receive the offender into custody in the said penitentiary to undergo
a term of imprisonment pursuant to the provisions of the Corrections and Conditional Release Act.

DATED this **29th** day of **October**    , **2020** ,
at the City/Town/Municipality of **MISSION**
in the Province/Territory of **BRITISH COLUMBIA**

HOPFNER, SHAWNA N
Institutional Head

EXECUTED on the _____ day of _____ , _____ ,
at the City/Town/Municipality of _____
in the Province/Territory of _____
by _____

PEACE OFFICER                                         RANK

WARRANT NO.   **UB0A00001061**

I HEREBY CERTIFY THIS TO BE A
TRUE COPY OF THE ORIGINAL OF
WHICH IT PURPORTS TO BE A COPY

This is EXHIBIT _____ "B" attached to the
Affidavit of ___ cst. Darcy Wade Burke
sworn the 17 day of May , 20 21

A Commissioner for taking Affidavits
in the Province of British Columbia

WARRANT OF APPREHENSION AND RECOMMITMENT TO CUSTODY IN A PENITENTIARY (section 11.1)  | DISTRIBUTION

Ce formulaire existe aussi en français.
CSC 1127 (R-12-12) OMS VERS (1)

Original = Offender SM File
Copy = National Monitoring Centre

Date and Time Produced  2020/10/29 23:20          TIME IS BASED ON A 24-HOUR CLOCK PERIOD.          Page 1 of 1

Exhibit C

| Court Identifier: 3561 - P - R - A |
| Court File Number: 92691 |
| Type Reference: |
| Info. Seq. Number: 1 |
| Agency File Number: 719:20-12158 |
| DNA: [X]    K File: [ ]    SOR: [ ] |

## INFORMATION BY TELECOMMUNICATION THAT PRODUCES A WRITING/DÉNONCIATION PAR TÉLÉCOMMUNICATION QUI REND LA COMMUNICATION SOUS FORME ÉCRITE

CANADA:
PROVINCE OF BRITISH COLUMBIA
PROVINCE DE LA COLOMBIE-BRITANNIQUE

Pursuant to Section 508.1(2) of the *Criminal Code* and/or Section 13.1 of the *Offence Act* (British Columbia)/
Suivant le paragraphe 508.1(2) du *Code criminel* et/ou l'article 13.1 de l'*Offence Act* (Colombie-Britannique)

### "BY INDICTMENT"

In the Provincial Court of British Columbia/Dans le tribunal provincial de la Colombie-Britannique.

This is the information of / Les présentes constituent la dénonciation de   C. MITCHELL   , a Court Liaison Officer  (the "informant" / le "dénonciateur") of / de Mission, British Columbia submitted before a justice by telecommunication that produces a writing / transmise à un juge de paix, par télécommunication qui rend la communication sous forme écrite.

The Informant says that he/she has reasonable and probable grounds to believe and does believe that: / Le(la) dénonciateur(trice) déclare qu'il(elle) a des motifs raisonnables et probables de croire et croit effectivement que:

Count 1

Roderick MUCHIKEKWANAPE, on or about the 29th day of October, 2020, at or near Mission, in the Province of British Columbia, was at large without lawful excuse before the expiration of a term of imprisonment to which he was sentenced, contrary to Section 145(1) of the Criminal Code.

Pursuant to Section 508.1(2) of the *Criminal Code* and / or Section 13.1 of the *Offence Act* (British Columbia) the Informant states that all matters contained in this Information are true to my knowledge and belief.

Suivant le paragraphe 508.1(2) du *Code criminal* et / ou l'article 13.1 de l'*Offence Act* (Colombie-Britannique), le dénonciateur(trice) déclare qu'il/elle croit vrais, au meilleur de sa connaissance, les renseignements contenus dans la dénonciation.

Dated/Fait le   NOVEMBER 6, 2020

at/a   ABBOTSFORD
British Columbia / Colombie-Britannique

Signature of Informant / Signature du(de la) dénonciateur(trice)

I certify this information was received by me by means of telecommunication that produces a writing at / Je certifie que j'ai reçu la présente dénonciation par un moyen de télécommunication qui rend la communication sous forme écrite à

1:37 p m, on/le   NOV 0 6 2020   at/à   Abbotsford   , British Columbia/Colombie-Britannique
time/heure        date                          city/municipality  ville/municipalité

Process/Acte
de procédure:   WAR                confirmed

A Justice of the Peace in and for the Province of British Columbia / Un juge de paix dans et pour la province de la Colombie-Britannique.

A Justice of the Peace in and for the Province of British Columbia / Un juge de paix dans et pour la province de la Colombie-Britannique.

Name/nom:   A. Caldwell
Justice of the Peace

I HEREBY CERTIFY THIS TO BE A TRUE COPY OF THE ORIGINAL OF WHICH IT PURPORTS TO BE A COPY

This is EXHIBIT   "C"   attached to the

Affidavit of   Cst. Darcy Wade Burke

sworn the   17   day of   May   , 20 21

A Commissioner for taking Affidavits in the Province of British Columbia

| Page | of |
| 1 | 1 |

PCR822  04/2019

Exhibit D

## Warrant for Arrest

| | Police File No. | Court File No. |
|---|---|---|
| | 719:20-12158 | 3561:92691-1 |

**In the Provincial Court**

Canada: Province of British Columbia

Ban - none

Primary Enf. Agency:

D.O.B.: ███████

To the Peace Officers in the Province of British Columbia:

This warrant is issued for the arrest of **Roderick Muchikekwanape** of , ,  referred to in this warrant as the accused. Because the accused has been charged with the following offence(s):
**Count 1, on or about October 29, 2020, at or near Mission BC, did commit an offence of Escape from lawful custody or being unlawfully at large, contrary to section 145(1) Criminal Code.**

**See a total of 1 Charge**

This is EXHIBIT "D" attached to the

Affidavit of Cst. Darcy Wade Bueke

sworn the 17 day of May, 2021.

A Commissioner for taking Affidavits
in the Province of British Columbia

Certified A True And Correct Copy
Of The Document Filed Herein

CLERK OF THE COURT

And because:

**there are reasonable and probable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused. 507(4), 512(1)**

You are therefore ordered, in Her Majesty's name, to immediately arrest the accused and bring them before any Justice/Judge in and for the Province of British Columbia to be dealt with according to law.

Dated / Fait le **November 6, 2020**

at / à **Abbotsford**

British Columbia / Colombie-Britannique

A. Caldwell  2020.11.06 13:44:48 -08'00'

Justice of the Peace / Juge de paix A Caldwell, in and for the Province of British Columbia / dans et pour la province de la Colombie-Britannique

(CC) Warrant for Arrest (adult)

| Endorsement of Warrant | | |
|---|---|---|
| **CANADA: Province of British Columbia - Form 29 (Section 507)** Whereas this warrant is issued under section 507, 508 or 512 of the *Criminal Code* in respect of an offence other than an offence mentioned in section 522 of the *Criminal Code*, I hereby authorize the release of the accused pursuant to section 499 of that Act. | | |
| Dated | | |
| at | British Columbia | A Justice of the Peace in and for the Province of British Columbia |

| Warrant Cancelled (Return to Registry) | | | | Warrant Executed (Return to Registry and attach original bail document if applicable) |
|---|---|---|---|---|
| by | | | | |
| Person contacted | | | | by |
| by phone at | | m. Date | | Date |
| Reason | | | Bail reinstated | |

PCR014
Form 7
Rev 12/2019   13:44-06.11.2020

**File, Police**

Page 1 of 2

# Exhibit E

# C-216

FINGERPRINT IDENTIFICATION
IDENTIFICATION DACTYLOSCOPIQUE

I HEREBY CERTIFY THIS TO BE A
TRUE COPY OF THE ORIGINAL OF
WHICH IT PURPORTS TO BE A COPY

| | Arrived - Arrivé | Certified - Certifé par | QC - CQ | AFIS - SAID | |
|---|---|---|---|---|---|
| | | | | | 20000⬛6 |
| | | | Year of Birth Année de naissance | | |

| R | | | Middle | Ring - Annulaire | Little - Auriculaire |
|---|---|---|---|---|---|

IF ANY FINGERPRINT IT IS NOT RECORDED, GIVE THE REASON - IF AMPUTATED, DEFORMED OR INJURED, GIVE DATE

| Contributing Agency Organisme contributeur | Contributor's No./Reference No. N° du contributeur/N° de référence | | Signature of official taking fingerprints Signature du préposé aux empreintes | Date fingerprinted Date de prélèvement des empreintes |
|---|---|---|---|---|
| | Ind Ref # Réf. Ind: | | | Y-A    M    D-J |
| | CBSA/CIC-ASFC/CIC : FOSS-SSOBL: | | | |
| | Signature of person fingerprinted (full name and address) - Signature de la personne dactyloscopiée (nom au complet et adresse) | | | DOB - Y-A    M    D-J DDN |

| Surname - Nom de famille MUCHIKEKWANAPE | Given Name 1 - Prénom 1 RODERICK | Given Name 2 - Prénom 2 | Other Given Names - Autres prénoms |
|---|---|---|---|
| Other names, aliases, nicknames, maiden name, Autres noms, nom d'emprunt, sobriquets, nom de jeune fille | Given Name 1 - Prénom 1 | Given Name 2 - Prénom 2 | Other Given Names - Autres prénoms |

| Apartment / Unit # / Street Address-Adresse (rue, n° d'app. ou d'unité) | City - Ville | Prov.  Postal-Code-Postal |
|---|---|---|

| Sex - Sexe ☒ M  ☐ F | Hair - Cheveux | Eyes - Yeux Brown | Height - Taille (cm) 182 | Weight - Poids (kg) 85 | FPS NO. - N° FPS |
|---|---|---|---|---|---|
| Race ☐ White Blanche  ☐ Non white (specify) Autre (préciser) | | | Complexion - Teint | | |

| Place of birth - Lieu de naissance Country - Pays City - Ville | CAUTION - MISE EN GARDE: | |
|---|---|---|
| | ☐ Violent  Violent   ☐ Suicidal  Suicidaire   ☐ Escape risk Risque d'évasion | |
| If foreign born, port and date of entry in Canada - En cas de naissance à l'étranger, port d'entrée et date d'arrivée au Canada | VOLUNTEER SCREENING INITIATIVE (VSI) (CHARGE NO. 1) INITIATIVE DE FILTRAGE DES BÉNÉVOLES (ACCUSATION N° 1) | Young Person - Adolescent  ☐ |
| Y-A    M    D-J | ☐ Sex related Infraction sexuelle   ☐ Spousal assault Violence conjugale   ☐ Other family violence Autre type de violence familiale | Investigating Agency - Organisme enquêteur |
| Peculiarities, marks scars, tattoos, deformities, etc. Traits caractéristiques, marques, cicatrices, tatouages, difformités, etc. | ☐ Publication ban Interdiction de publication   ☐ Child sex offence Agression sexuelle sur enfant   ☐ M  Âge ☐ F  Âge | |
| | Occupation - Employer - Profession - Employeur | |

| Name and address of NOK - Nom et adresse du plus proche parent | Gang Affiliation - Appartenance à une bande |
|---|---|

This is EXHIBIT  "E" attached to the
Affidavit of  Cst. Darcy Wade Bueke
sworn the  17  day of  May , 2021

A Commissioner for taking Affidavits
in the Province of British Columbia

| Date & place of sentence Date et lieu de la sentence | Disposition - Décision |
|---|---|

EX_MUCHIKEKWANAPE_070

0430869999991207936

2021-05-13

v3.2.0.226   2021-05-13 13:33:07

RCMP GRC C-216 (2008-05) RTIDATR 001.01

Exhibit F

EX_MUCHIKEKWANAPE_071

This is EXHIBIT "F" attached to the
Affidavit of Cst. Darcy Wade Burke
sworn the 21 day of May, 2021

A Commissioner for taking Affidavits
In the Province of British Columbia

I HEREBY CERTIFY THIS TO BE A
TRUE COPY OF THE ORIGINAL OF
WHICH IT PURPORTS TO BE A COPY



MUCHIKEKWANAPE FPS# ███████

CANADA
PROVINCE OF BRITISH COLUMBIA
CITY OF MISSION

IN THE MATTER OF a request for the extradition of RODERICK MUCHIKEKWANAPE: from the UNITED STATES OF AMERICA to CANADA to serve his remaining term of imprisonment for an offence contrary to the *Criminal Code.*

## STATEMENT OF LAW OF DANIEL ALONSO VEAS-HENRIQUEZ

I, Daniel Alonso Veas-Henriquez, of the City of Gatineau, in the province of Quebec, SAY AS FOLLOWS:

1.  I am a Notary licensed to practice law in the Province of Quebec.  I received my legal training at the University of Ottawa, Ontario, where I obtained a Juris Doctor (LLL) degree in 2003. I then received a degree in Notarial Law in 2008 at the University of Montréal. I was called to the Chamber of Notaries of the Province of Quebec in October 2008. Since March 2015, I have been employed with the Department of Justice Canada, acting as counsel to the Correctional Service of Canada ("CSC") as part of its Legal Services Unit.

2.  As counsel with the CSC Legal Services Unit, I provide the CSC with legal assistance in both advisory and litigation matters.  In particular, I provide the CSC with legal opinions regarding the *Corrections and Conditional Release Act*, SC 1992, c 20 ("*CCRA*"), and the *Criminal Code*, RSC 1985, c C-46 ("*Criminal Code*").

3.  As the counsel assigned to this case, I have reviewed the files maintained by CSC in relation to Roderick Muchikekwanape ("Mr. Muchikekwanape").  I am therefore familiar with the facts of this case and believe the information contained in this Statement to be true.

4.  Canada is seeking the extradition of Mr. Muchikekwanape to serve the remainder of his life sentence he has received, on December 13, 2000, by the Court of Queen's Bench in Manitoba, as set out below:

- One (1) count of First Degree Murder, contrary to section 235(1) of the *Criminal Code.*.

5. As a result of the conviction, dated October 26 2000, Mr. Muchikekwanape received a sentence of life imprisonment with no eligibility of parole for 25 years.  A copy of the Disposition issued by the Court of Queen's Bench in Winnipeg, Manitoba on December 13, 2000 which records the conviction of Mr. Muchikekwanape is attached as **Exhibit "A" to the Statement of Facts of Lisa Manson.**

6. Mr. Muchikekwanape commenced his term of imprisonment at the Stony Mountain Institution, a federal penitentiary located in the province of Manitoba.  On August 24, 2020, he was transferred to another federal penitentiary, Mission Institution, in Mission, British Columbia.

7. On October 29, 2020, Mr. Muchikekwanape escaped from Mission Institution and a Warrant of Apprehension and Recommitment to Custody in a Penitentiary, by the Mission Institutional Head was issued for Mr. Muchikekwanape.  The Warrant of Apprehension and Recommitment to Custody in a Penitentiary has been issued for Mr. Muchikekwanape. It is attached as **Exhibit "B" to the Statement of Facts of Lisa Manson**.

8. Lisa Manson is the National Manager, Sentence Management for the CSC.  As such, she is familiar with the details of the sentence imposed on Mr. Muchikekwanape, as well as the calculation of his sentence and the remainder of the sentence that he must serve should he be returned to Canada. The Statement of Facts of Ms. Manson is included with this request for extradition. I have carefully reviewed Ms. Manson's Statement of Facts and the documents attached to it. I believe the facts set out in her Statement Facts are true.

9. Based on my review of Ms. Manson's Statement of Facts, I am satisfied that Mr. Muchikekwanape was sentenced to a term of life imprisonment as a result of his convictions on December 13, 2020, for the offence set out in paragraph 4, and as a result of this conviction, Mr. Muchikekwanape has yet to serve the remainder of his life sentence.

**OFFENCES AND LEGAL PROVISIONS**

10. The *CCRA* is a statute enacted by Parliament of Canada. The CCRA relates to all federal inmates for the whole of Canada, including those in the province of British Columbia.

11. The *CCRA* was in force on December 13, 2000 (i.e., the date on which Mr. Muchikekwanape was convicted and sentenced), and at all relevant times thereafter. It remains in force today.

12. A Warrant for Apprehension and Recommitment to Custody in a Penitentiary can be issued under the terms of section 11.1 of the *CCRA* when an inmate is at large without lawful authority before the expiration of the sentence according to law.

13. The *Criminal Code* is a statute enacted by the Parliament of Canada. It contains the law relating to criminal offences for the whole of Canada. It therefore applies to the province of British Columbia. The *Criminal Code* was a duly enacted law of Canada that was in force when Mr. M. committed the first degree murder offence and at all relevant times thereafter. It remains in force today.

14. Under Canadian law, criminal offences are divided into three categories: indictable offences, summary conviction offences, and offences that are, at the election of the Crown, either indictable or summary conviction (known as "hybrid offences"). Generally speaking, indictable offences are more serious offences carrying more severe penalties, and summary conviction offences are less serious offences carrying less severe penalties. The offence of which Mr. Muchikekwanape was convicted on December 13, 2000, is an indictable offence for which the punishment is a mandatory life sentence.

15. A copy of the text for section 235 of the *Criminal Code* under which Mr. Muchikekwanape was convicted and sentenced is attached as **Exhibit A.**

16. Once a person such as Mr. Muchikekwanape is sentenced to a period of imprisonment in Canada exceeding two years, the administration of their sentence in terms of release from

prison and suspension of their conditional release from prison is done in accordance with the *CCRA*.

17. Under Canadian law, any time spent in custody by an escapee, such as Mr. Muchikekwanape, awaiting extradition back to Canada would not be automatically credited towards his remaining Canadian sentence.  If the U.S.A extradites Mr. Muchikekwanape back to Canada in accordance with this request, he will be required to serve the remaining term of his sentence in custody.

18. Any time spent Unlawfully at Large would not count towards Mr. Muchikekwanape' life sentence. Section 719(2) of the *Criminal Code* provides that any time during which a convicted person is Unlawfully at Large does not count as part of any term of imprisonment imposed on the person.

19. In Canada, there is no statutory limitation period of general application in respect of indictable offences.  No particular limitation period applies to the offences and sentences at issue in this case.  Rather, under Canadian law, the rule relating to the prosecution of indictable offences is that, in the absence of a specific statutory provision to the contrary, the initiation of a prosecution for an indictable offence is not barred by the passage of any period of time.

20. This Statement of Law is made in support of the request for the extradition of Mr. Muchikekwanape from the U.S.A., and for no improper purpose. I believe all of the above information to be accurate to the best of my knowledge.

Dated in Gatineau, Quebec on the 17th day of May 2021.

VeasHenriquez, Daniel
Digitally signed by VeasHenriquez, Daniel
Date: 2021.05.17 15:23:15 -04'00'

Daniel Alonso Veas-Henriquez

# Exhibit A



DATE DOWNLOADED: Mon May 17 15:37:55 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
Revised Statutes of Canada, 1985 (1985).

ALWD 6th ed.
. Revised Statutes of Can, 1985 (1985).

APA 7th ed.
(1985). Revised Statutes of Canada, 1985. Ottawa, Queens's Printer for Canada.

Chicago 17th ed.
Revised Statutes of Canada, 1985. Ottawa, Queens's Printer for Canada.

McGill Guide 9th ed.
Revised Statutes of Can, 1985 (Ottawa: Queens's Printer for Canada., 1985)

AGLC 4th ed.
Revised Statutes of Canada, 1985 (Queens's Printer for Canada., 1985)

MLA 8th ed.
Revised Statutes of Canada, 1985. Ottawa, Queens's Printer for Canada. HeinOnline.

OSCOLA 4th ed.
Revised Statutes of Canada, 1985. Ottawa, Queens's Printer for Canada.

Provided by:
Available Through: Justice Canada, PPSC-SPPC

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

EX_MUCHIKEKWANAPE_078

death of her newly-born child, if at the time of the act or omission she is not fully recovered from the effects of giving birth to the child and by reason thereof or of the effect of lactation consequent on the birth of the child her mind is then disturbed. R.S., c. C-34, s. 216.

omission volontaire, elle cause la mort de son enfant nouveau-né, si au moment de l'acte ou de l'omission elle n'est pas complètement remise d'avoir donné naissance à l'enfant et si, de ce fait ou par suite de la lactation consécutive à la naissance de l'enfant, son esprit est alors déséquilibré. S.R., ch. C-34, art. 216.

**Manslaughter**

**234.** Culpable homicide that is not murder or infanticide is manslaughter. R.S., c. C-34, s. 217.

**234.** L'homicide coupable qui n'est pas un meurtre ni un infanticide constitue un homicide involontaire coupable. S.R., ch. C-34, art. 217.

*Homicide involontaire coupable*

**Punishment for murder**

**235.** (1) Every one who commits first degree murder or second degree murder is guilty of an indictable offence and shall be sentenced to imprisonment for life.

**235.** (1) Quiconque commet un meurtre au premier degré ou un meurtre au deuxième degré est coupable d'un acte criminel et doit être condamné à l'emprisonnement à perpétuité.

*Peine pour meurtre*

**Minimum punishment**

(2) For the purposes of Part XXIII, the sentence of imprisonment for life prescribed by this section is a minimum punishment. R.S., c. C-34, s. 218; 1973-74, c. 38, s. 3; 1974-75-76, c. 105, s. 5.

(2) Pour l'application de la partie XXIII, la sentence d'emprisonnement à perpétuité prescrite par le présent article est une peine minimale. S.R., ch. C-34, art. 218; 1973-74, ch. 38, art. 3; 1974-75-76, ch. 105, art. 5.

*Peine minimale*

**Punishment for manslaughter**

**236.** Every one who commits manslaughter is guilty of an indictable offence and liable to imprisonment for life. R.S., c. C-34, s. 219.

**236.** Quiconque commet un homicide involontaire coupable est coupable d'un acte criminel et passible de l'emprisonnement à perpétuité. S.R., ch. C-34, art. 219.

*Punition de l'homicide involontaire coupable*

**Punishment for infanticide**

**237.** Every female person who commits infanticide is guilty of an indictable offence and liable to imprisonment for a term not exceeding five years. R.S., c. C-34, s. 220.

**237.** Toute personne du sexe féminin qui commet un infanticide est coupable d'un acte criminel et passible d'un emprisonnement maximal de cinq ans. S.R., ch. C-34, art. 220.

*Punition de l'infanticide*

**Killing unborn child in act of birth**

**238.** (1) Every one who causes the death, in the act of birth, of any child that has not become a human being, in such a manner that, if the child were a human being, he would be guilty of murder, is guilty of an indictable offence and liable to imprisonment for life.

**238.** (1) Est coupable d'un acte criminel et passible de l'emprisonnement à perpétuité toute personne qui, au cours de la mise au monde, cause la mort d'un enfant qui n'est pas devenu un être humain, de telle manière que, si l'enfant était un être humain, cette personne serait coupable de meurtre.

*Fait de tuer, au cours de la mise au monde, un enfant non encore né*

**Saving**

(2) This section does not apply to a person who, by means that, in good faith, he considers necessary to preserve the life of the mother of a child, causes the death of that child. R.S., c. C-34, s. 221.

(2) Le présent article ne s'applique pas à une personne qui, par des moyens que, de bonne foi, elle estime nécessaires pour sauver la vie de la mère d'un enfant, cause la mort de l'enfant. S.R., ch. C-34, art. 221.

*Réserve*

**Attempt to commit murder**

**239.** Everyone who attempts by any means to commit murder is guilty of an indictable offence and liable to imprisonment for life. R.S., c. C-34, s. 222.

**239.** Est coupable d'un acte criminel et passible de l'emprisonnement à perpétuité quiconque, par quelque moyen, tente de commettre un meurtre. S.R., ch. C-34, art. 222.

*Tentative de meurtre*

**Accessory after fact to murder**

**240.** Every one who is an accessory after the fact to murder is guilty of an indictable offence and liable to imprisonment for life. R.S., c. C-34, s. 223.

**240.** Tout complice de meurtre après le fait est coupable d'un acte criminel et passible de l'emprisonnement à perpétuité. S.R., ch. C-34, art. 223.

*Complice de meurtre après le fait*

CANADA                                   IN THE MATTER OF a request for the extradition of
PROVINCE OF BRITISH COLUMBIA             RODERICK MUCHIKEKWANAPE: from the
CITY OF MISSION                          UNITED STATES OF AMERICA to CANADA to
                                         serve his remaining term of imprisonment for an
                                         offence contrary to the *Criminal Code*.

## STATEMENT OF FACTS OF LISA MANSON

I, Lisa Manson, of the City of Kingston, in the Province of Ontario, SAY AS FOLLOWS:

1. I am the National Manager, Sentence Management, for the Correctional Service of Canada (CSC). As such, I am familiar with the computation of sentences in Canada. In my position with CSC, I have access to and have reviewed the contents of and evidence in the CSC's files relating to Roderick Muchikekwanape (Mr. Muchikekwanape) in preparation of this Statement. I believe the information in this Statement to be true.

2. The CSC is the federal government agency in Canada responsible for administering sentences of two years or more, as imposed by the courts. In addition, the CSC manages institutions of various security levels and supervises offenders under conditional release or long-term supervision in the community.

3. This Statement relates to allegations that Mr. Muchikekwanape, a Canadian citizen born on ▇▇▇▇▇▇▇▇, escaped from a federal correctional facility in Mission, British Columbia on October 29, 2020.

4. The facts underlying the conviction of Mr. Muchikekwanape and for which his he received a life sentence are as follow: On July 24, 1998, Mr. Muchikekwanape and the victim were observed walking together after leaving a house party. As they approached a bridge, Mr. Muchikekwanape attacked the victim and dragged her under the bridge where he killed her in the course of a sexual assault. He beat the victim with a rock causing extensive injuries including a fractured skull, broken jaw, cheekbones and nose. Mr. Muchikekwanape removed the victim's clothing from the waist down, and used a sharp

object, cutting into her genitalia. He removed her bracelet and dragged the victim's body down the riverbank and threw it in the river.

5.  On August 5, 1998, Mr. Muchikekwanape was arrested and on August 21, 1998, he was charged with First Degree Murder.

6.  On October 26, 2000, Mr. Muchikekwanape was convicted, and on December 13, 2000 was sentenced before Justice Krindle of the Court of Queen's Bench in Winnipeg, Manitoba for the following offence:

- First Degree Murder, contrary to section 235(1) of the *Criminal Code*

7.  Mr. Muchikekwanape received a sentence of life minimum with no eligibility of parole for 25 years.

8.  Attached as **Exhibit "A"** is a true copy of the Disposition issued by the Court of Queen's Bench in Winnipeg, Manitoba on December 13, 2000 which records the conviction and sentence of Mr. Muchikekwanape for the above described offence.

9.  On December 13, 2000, Mr. Muchikekwanape commenced his life minimum sentence of imprisonment at Stony Mountain Institution, a federal penitentiary located in the province of Manitoba. On August 24, 2020, he was transferred to another federal penitentiary, the Mission Institution, in Mission, British Columbia.

10. On October 29, 2020, Muchikekwanape escaped from Mission Institution, while serving his sentence.

11. A Correctional Manager from Mission Institution Minimum contacted the CSC National Monitoring Centre to report the escape of Mr. Muchikekwanape as he was not present for the count conducted at 10pm Pacific Daylight Time. All institutional areas accessible to inmates were searched and Mr. Muchikekwanape was not located. As a result, a Warrant

of Apprehension and Recommitment to Custody in a Penitentiary was issued for Mr. Muchikekwanape by the Institutional Head.

12. Attached as **Exhibit "B"** is a true copy of the Warrant of Apprehension and Recommitment to Custody in a Penitentiary.

13. In November, US authorities informed the RCMP that a person matching Mr. Muchikekwanape's description had been seen just outside Seattle in Washington State, United States of America.

14. On December 4, 2021, Canada sent a Provisional Arrest request for Mr. Muchikekwanape to the United States of America (U.S.).

15. On March 25, 2021, U.S. authorities provisionally arrested Mr. Muchikekwanape at the University of California, San Diego Hillcrest Hospital , in San Diego, California. He remains in custody at a location known to United States authorities.

16. The period remaining to be served on Mr. Muchikekwanape's Canadian sentence is life.

17. Attached as **Exhibit "C"** is a photograph of Mr. Muchikekwanape, which was taken on August 24, 2020. Gurpal Bhuller, a Parole Officer at Mission Institution where Mr.Muchikekwanape was serving a life sentence, confirms the person in the photo as Mr. Muchikekwanape. Gurpal Bhuller will also testify that the photo is from a CSC database. As a Parole Officer, Mr. Bhuller had direct dealings with Mr. Muchikekwanape.

18. Mr. Muchikekwanape has the following identifiers:

- Full name: Roderick Muchikekwanape
- Aliases:
  MUCH, Roderick Toot
  GAMBLER, Thomas Robert
  STARKES, Paul Edward
- Date of Birth: ███████
- Citizenship: Canadian
- Physical description:
  - i. Height: 183cm
  - ii. Weight: 98kg
  - iii. Eyes: brown
  - iv. Hair: black

19. I certify the facts contained in my Statement to be accurate to the best of my knowledge and belief.

20. The present Statement is drafted for the purpose of a request from Canada to the U.S. to extradite Mr. Muchikekwanape.

Dated in Kingston, Ontario on the 17th day of May 2021.

MansonShillington, Lisa
Digitally signed by MansonShillington, Lisa
Date: 2021.05.17 15:10:36 -04'00'

_____

Lisa Manson
National Manager, Sentence Management

Exhibit A

Certified true copy

**CANADA**
**Province of Manitoba**

# DISPOSITION

| LAST NAME | FIRST NAME | INITIAL | DATE OF BIRTH | DAY | MONTH | YEAR |
|---|---|---|---|---|---|---|
| MUCHIKEKWANAPE | Roderick | | | | | |

Hereinafter called the accused appeared before this court on the information/indictment **attached** for the following adjudication.

DATE

| | Proceedings | ☐ Summary | ☐ Indictment | |
|---|---|---|---|---|
| | Accused Election | ☐ Provincial Judge | ☐ QB Judge | ☐ Judge and Jury |
| | Re-election | ☐ Provincial Judge | | |
| Oct. 31, 2000 | Arraignment | ☐ QB Judge | ☑ Judge and Jury | |

| DATE | COUNT | Stay of Proceedings | PLEA | | VERDICT | | | | ☐ guilty plea<br>☐ ordered to stand trial<br>Included offence of | JUDGE / JUSTICE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | guilty | not guilty | ordered to stand trial | discharged | guilty | not guilty | | |
| Oct 26/00 | 1 | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | | MACINNES |
| Dec. 13/00 | 1 | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | | KRINDLE, J |
| | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | |
| | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | |

☐ Other :

The accused/offender received the following disposition:
- ☐ acquitted  ☐ charge dismissed  ☐ absolute discharge
- ☐ conditional sentence for _____ (term of sentence)  ☐ Restitution (see attached Restitution Order)
- ☐ fine (see attached Fine Order)  ☐ fine surcharge (see attached Fine Order)  ☐ surcharge waived
- ☐ prohibition from operating for a period of _____  ☐ motor vehicle  ☐ vessel  ☐ aircraft  ☐ railway equipment
- ☐ prohibit possession of firearms and weapons  ☐ discretionary  ☐ mandatory (period of prohibition)  ☐ mandatory lifetime order
- ☐ Other _____

☐ Order of Confiscation
☐ DNA Order  ☐ Primary (Mandatory)  ☐ Secondary (Discretionary)  ☐ Retrospective  ☐ No DNA ordered

Terms and Conditions _____

☑ be imprisoned for the following term:   ☐ time already served ( _____ days)

_Life with no eligibility for parole for 25 years_

☐ Intermittent (see reverse)   ☐ offender requests to serve time

**Notice of Warrant of Committal on Reverse**

- ☐ conditional discharge  ☐ suspended sentence  ☐ Peace Bond Amount _____  Period of Time _____
- ☐ enter into a Probation Order  ☐ supervised  ☐ unsupervised  For a period of _____ from ☐ the date of this Order
  - ☐ the expiration of term of imprisonment, upon the conditions:  ☐ following  ☐ concurrently imposed this day
  - ☐ the expiration of Conditional Sentence Order

Further conditions of  ☐ PO Probation Order  ☐ CS Conditional Sentence  ☐ PB Peace Bond

- _____ ☐ report to a Probation Officer _____
- _____ ☐ abstain absolutely from the consumption or possession of  ☐ alcohol  ☐ non-prescription drugs  ☐ other intoxicants;
- _____ ☐ abstain from owning, possessing, or carrying a weapon;
- _____ ☐ perform _____ hours of community service work, as directed by Probation Services and to be completed
- _____ ☐ within probation period
- _____ ☐ attend, participate and complete  ☐ addictions assessment and/or
  - ☐ domestic violence  ☐ sexual offender  ☐ anger management
  - ☐ counseling as directed and supervised by Probation Services;
- _____ ☐ no contact or communication/non-association directly or indirectly with _____
- _____ ☐ not to attend at or near _____
- _____ ☐ pay restitution in accordance with the Restitution Order;
- _____ ☐ to reside _____
- _____ ☐ _____
- _____ ☐ _____

| | | | |
|---|---|---|---|
| _signature_ | Dec. 13 2000 | "120" Winnipeg | _Alicia Abanell_ |
| Judge/Justice KRINDLE | Date | Location | Clerk of the Court |

Court File No.: CR 99-01-20690

| | Domestic Violence | ☐ Yes | ☑ No |
|---|---|---|---|

White - Court
M/G 10684E (Rev. 6/00)
Pink - Crown
Yellow - Warrant/Other

EXP. MUCHIKEKWANAPE_085

Exhibit B

# MAND IEL/UAL WARR

Page 1

Correctional Service
Canada

PROTECTED B ONCE COMPLETED

CANADA
PROVINCE/TERRITORY OF **BRITISH COLUMBIA**

**F.P.S.**   ▮▮▮▮▮
**D.O.B.**  ▮▮▮▮▮
**W.E.D.**

IN THE MATTER OF THE CORRECTIONS AND CONDITIONAL RELEASE ACT
CHAPTER 20 OF THE STATUTES OF CANADA (1992)

### WARRANT OF APPREHENSION AND RECOMMITMENT TO CUSTODY IN A PENITENTIARY (section 11.1)

TO ANY PEACE OFFICER IN CANADA

WHEREAS, **MUCHIKEKWANAPE, RODERICK**                    , of   **MISSION INSTITUTION**
hereinafter referred to as the offender, is a person sentenced, committed or transferred to a penitentiary and is at large
without lawful authority before the expiration of the sentence imposed upon her/him by a court of law.

AND WHEREAS, I   **HOPFNER, SHAWNA N**                              , an institutional head
have reasonable and probable grounds, as follows, to believe that the offender should be apprehended and
recommitted pursuant to the provisions of section 11.1 of the Corrections and Conditional Release Act.

THIS IS THEREFORE to command you to apprehend the offender, convey him/her safely to a penitentiary and deliver
him/her to the keeper thereof, together with the following precept:

YOU THE SAID keeper are hereby commanded to receive the offender into custody in the said penitentiary to undergo
a term of imprisonment pursuant to the provisions of the Corrections and Conditional Release Act.

DATED this **29th** day of **October**  , **2020** ,
at the City/Town/Municipality of **MISSION**
in the Province/Territory of **BRITISH COLUMBIA**

**HOPFNER, SHAWNA N**
Institutional Head

EXECUTED on the _____ day of _____ , _____
at the City/Town/Municipality of _____
in the Province/Territory of _____
by _____

PEACE OFFICER                                    RANK
WARRANT NO.   **UB0A00001061**

---

WARRANT OF APPREHENSION AND RECOMMITMENT TO CUSTODY IN A PENITENTIARY (section 11.1)

**DISTRIBUTION**

Ce formulaire existe aussi en français.
CSC 1127 (R-12-12) OMS VERS (1)

Original = Offender SM File
Copy = National Monitoring Centre

**Date and Time Produced**  2020/10/29 23:20          TIME IS BASED ON A 24-HOUR CLOCK PERIOD.          Page 1 of 1

EX_MUCHIKEKWANAPE_087

Exhibit C



EX_MUCHIKEKWANAPE_089