UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF<br>THE EXTRADITION OF<br>RODERICK MUCHIKEKWANAPE | ) Hon. Bernard G. Skomal<br>) Misc. No. 21-mj-1181-BGS<br>) |

### CERTIFICATION AND COMMITTAL FOR EXTRADITION

**I.  Background**

This is a proceeding under 18 U.S.C. § 3184 pursuant to a request by the Government of Canada (hereafter "Canada") through the United States Government (hereafter "United States") for the extradition from the United States to Canada of RODERICK MUCHIKEKWANAPE (hereafter "Muchikekwanape") under the provisions of the Extradition Treaty Between the United States of America and Canada (hereafter "Treaty").  (ECF No. 24-1 at 2–44.)

Canada's request to extradite Muchikekwanape has two grounds.  First, Canada seeks extradition to enforce his life sentence for murder.  (ECF No. 1 at 2.) In 2000, Muchikekwanape was convicted of first-degree murder in the course of a sexual assault and sentenced to life in prison without the possibility of parole for at least 25 years.  (*Id.* at 2–3.)  In October 2020, Muchikekwanape allegedly escaped from prison and remained at large until he was arrested in San Diego.  (*Id.*)  Second, Canada has charged him by indictment with escape and being at large without excuse.  (*Id.*)

On March 29, 2021, the Court issued a provisional arrest warrant for the arrest of Muchikekwanape pursuant to a complaint filed by the United States on behalf of

1

Canada under the Extradition Treaty between the United States and Canada. (*See id.*) Muchikekwanape was arrested thereafter and made his initial appearance on April 1, 2021 before this Court and was held without bond. (ECF No. 12.) The United States filed a Memorandum of Extradition Law and Request for Detention. (ECF No. 4.) On May 12, 2021, Muchikekwanape moved for his release in his Application for Order to Release Relator from Federal Custody. (ECF No. 18.) On May 18, 2021, the Court denied Muchikekwanape's Application to Release and adopted the United States' response in full. (ECF No. 21 at 2.)

The U.S. Department of State received a formal extradition request from the Government of Canada on May 21, 2021. (ECF No. 24-1.) The Court finds that Canada's request complies with the Treaty's 60-day timeline for submitting formal extradition requests. (*See id.* at 2 ¶ 3, 3 ¶ 6, 33 [Treaty Art. 11(3)].) The Charge d'Affaires of the United States of America, of the U.S. Embassy in Ottawa, Canada, certified Canada's extradition package in accordance with 18 U.S.C. § 3190. (*Id.* at 3, 45.) Canada's documents thus are properly and legally authenticated and must be admitted into evidence in these proceedings. (*Id.* at 43 [Treaty Art. 10(2)(a)], 44; 18 U.S.C. § 3190.) The United States produced Canada's extradition request to Muchikekwanape on May 28, 2021. Muchikekwanape is not contesting these findings. (ECF No. 34.)

Thereafter, pursuant to Court order, the United States filed its opening brief in support of extradition on June 4, 2021. (ECF No. 24.) Muchikekwanape filed his Opposition on June 23, 2021. (ECF No. 28.) The United States filed its Reply on July 9, 2021. (ECF No. 33.) On July 22, 2021, the Court held a status hearing. (ECF No. 34.) At this status hearing, Muchikekwanape indicated that he was not contesting his murder conviction. (*Id.*) Muchikekwanape further indicated that the

only elements he was contesting were those made in his Opposition which regard the escape charge. (*Id.*)

For the reasons set forth below, the Court **GRANTS** the request for extradition and **CERTIFIES** Muchikekwanape as extraditable.

## II. Requirements of Certification

Extradition from the United States is governed by 18 U.S.C. § 3184, which confers jurisdiction on "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States" to conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation, and to issue a certification of extraditability to the Secretary of State. 18 U.S.C. § 3184; *see Cornejo-Barreto v. Seifert,* 218 F.3d 1004, 1009 (9th Cir. 2000).

To obtain a certificate of extraditability on behalf of the requesting state, the United States has the burden of demonstrating the following requirements have been met: (1) the Court is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge. *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016); *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008).

"Extradition treaties are to be liberally construed so as to effect their purpose, that is, to surrender fugitives for trial for their alleged offenses." *In re Extradition of Santos*, 795 F. Supp. 2d 966, 970 (C.D. Cal. 2011) (quoting *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936)). If the judge finds that the elements are satisfied, the judge "must certify the individual as extraditable to the Secretary of State." *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005). "The magistrate

judge 'has no discretionary decision to make.'" *Id.* (quoting *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997)).

The Secretary of State then exercises his discretion as to whether the individual will be extradited to the requesting nation. 18 U.S.C. § 3186; *Prasoprat*, 421 F.3d at 1012. The Secretary of State makes the ultimate decision on whether to surrender the individual to the requesting country. *Prasoprat*, 421 F.3d at 1012 (citing *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003)).

### III. Discussion

At the July 22, 2021 Status Conference (ECF No. 34), Muchikekwanape's counsel informed the court that Muchikekwanape does not contest any of the above cited elements as to the murder conviction and the life sentence imposed by Canada. Muchikekwanape's counsel also informed the court that as to the escape charge, Muchikekwanape was only contesting the issues in his Briefing in Support of Denial of Request for Extradition. (ECF No. 28.) The contested issues in Muchikekwanape's briefing are whether the escape charge falls within the terms of the extradition treaty, and whether there is probable cause to believe Muchikekwanape committed the escape charge. (*Id.* at 2.)

#### A. Element One

Element one addresses whether the Court is authorized to conduct the extradition proceeding. Extradition proceedings may be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State[.]" 18 U.S.C. § 3184. The judicial officer conducting the extradition hearing does not exercise "any part of the judicial power of the United States," but rather acts in a "non-institutional capacity by virtue of a special authority." *In re*


*Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993) (citations and internal quotation marks omitted).

Both magistrate judges and district judges may render a certification under § 3184. *See Austin v. Healey*, 5 F.3d 598, 601–02 (2d Cir. 1993). In this District, Local Criminal Rule 57.4 expressly permits magistrate judges to conduct extradition proceedings. S.D. Cal. Crim. L.R. 57.4(a)(3). Therefore, this Court has authority to conduct the extradition proceedings.

**B. Element Two**

Element two addresses whether the Court has jurisdiction over the fugitive. The Court has jurisdiction over a fugitive who is found within its jurisdictional boundaries. Section 3184 provides that a magistrate judge "may, upon complaint made under oath, charging any person found within his jurisdiction [. . .] issue his warrant for the apprehension of the person so charged, that he may be brought before such [. . .] magistrate judge, to the end that the evidence of criminality may be heard and considered." 18 U.S.C. § 3184. A provisional arrest warrant for extradition provides nationwide authority to arrest the fugitive. *Pettit v. Walshe*, 194 U.S. 205, 218–20 (1904). Under § 3184 and case law, extradition proceedings are properly held in the jurisdiction in which the fugitive is found. *See id.* at 218; *Zhenli Ye Gon v. Holt*, 774 F.3d 207, 210 (4th Cir. 2014); *see also, e.g.*, Complaint, *In re Extradition of Cesar Horacio Duarte Jaquez*, No. 20-mc-22829-UNA (S.D. Fla. July 2020), ECF No. 1; *In re Extradition of Trinidad*, 754 F. Supp. 2d 1075, 1079 (N.D. Cal. 2010); *In re Extradition of Lingad*, No. 06-mg-1278-POR, 2007 WL 628025, at *6 (S.D. Cal. Feb. 2007).

Muchikekwanape was found within this District, thus this Court has jurisdiction over him in these proceedings.

///

## C. Element Three

Element three regards whether the applicable extradition treaty is in full force and effect. Section 3184 provides for extradition in particular situations, including when there is a treaty or convention in force between the United States and a requesting state. 18 U.S.C. § 3184; *see Then v. Melendez*, 92 F.3d 851, 853 (9th Cir. 1996). The Court must defer to the U.S. Department of State's determination of a treaty's being in full force and effect. *Then*, 92 F.3d at 854; *see Kasternova v. United States*, 365 F.3d 980, 986 (11th Cir. 2004).

The Treaty here is in full force and effect. Attorney Advisor Tom Heinemann of the Department of State's Office of the Legal Advisor confirms this in his declaration accompanying Canada's extradition request. (ECF No. 24-1 at 2.)

## D. Element Four

Element four concerns whether the crimes for which surrender is requested are covered by the treaty. The question of whether an offense is extraditable involves determining: (1) whether it is listed as an extraditable crime in the relevant treaty; (2) whether the alleged conduct is criminalized in both countries; and (3) whether the offenses in both countries are substantially analogous. *See Quinn v. Robinson*, 783 F.2d 776, 783, 791 (9th Cir. 1986); *see also Wright v. Henkel*, 190 U.S. 40, 58 (1903).

Under the principle of dual criminality, "no offense is extraditable unless it is criminal in both jurisdictions." *Caplan v. Vokes*, 649 F.2d 1336, 1343 (9th Cir. 1981) (citing *Collins v. Loisel*, 259 U.S. 309, 312 (1922)). "It is well established that all the principle of dual criminality requires is that the particular acts alleged constitute a crime in both jurisdictions." *Emami v. U.S. Dist. Court*, 834 F.2d 1444, 1450 (9th Cir. 1987). "The name by which the crime is described in the two countries need not be the same, nor need the scope of the liability for the crimes be

either coextensive or the same in both countries." *Id.* Instead, "dual criminality exists if the 'essential character' of the acts criminalized by the law of each country is the same and if the laws are 'substantially analogous.'" *Theron v. United States Marshal*, 832 F.2d 492, 496 (9th Cir. 1987), *abrogated on other grounds by United States v. Wells,* 519 U.S. 482 (1997). For two offenses to be substantially analogous, the court looks at whether "[t]he essential character of the transaction is the same, and made criminal by both statutes." *Wright*, 190 U.S. at 58; *United States v. Knotek*, 925 F.3d 1118, 1131 (9th Cir. 2019). In assessing dual criminality, the extradition magistrate judge may consider, in order of preference, similar criminal provisions of federal law, similar laws of the state in which the fugitive was found, and the law of the preponderance of the states. *Theron,* 832 F.2d at 496.

Article 1 of the Treaty provides for the return of fugitives charged with, or convicted of, an extraditable offense—"any of the offenses covered by Article 2 of this Treaty committed within the territory of the other[.]" (ECF No. 24-1 at 10.) Article 2 states that "[e]xtradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment." (*Id.* at 32.)

 1. **First-Degree Murder**

Muchikekwanape does not dispute this element as to the murder conviction and service of sentence. In 2000, Muchikekwanape was convicted of first-degree murder, in violation of § 235(1) of the Criminal Code of Canada and sentenced to life imprisonment. (ECF No. 24-1 at 58, 62, 75.) Section 235(1) and (2) provide that anyone convicted of first degree murder is guilty of an indictable offense and shall be imprisoned to life in prison. (*Id.* at 80.)

The underlying conduct of this conviction is analogous to murder in the United States. Specifically, Muchikekwanape attacked, sexually assaulted, and murdered a woman in Canada in 1998. (*Id.* at 56–57 ¶ 6, 80–81 ¶ 4.) Muchikekwanape dragged her under a bridge and beat her with a rock, causing serious injuries, including fractures of her head and face. (*Id.* at 56–57 ¶ 6, 80–81 ¶ 4.) Muchikekwanape removed her clothing from the waist down and cut her genitalia. (*Id.* at 56–57 ¶ 6, 80–81 ¶ 4.) Muchikekwanape then threw her body into the river. (*Id.* at 81 ¶ 4.)

The Department of State has found that this offense is covered by the Treaty and extraditable. (*Id.* at 2 ¶ 5.) The Court should defer to its view. *See Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961); *Charlton v. Kelly*, 229 U.S. 447, 468 (1913).

Muchikekwanape's crime is covered by the Treaty because, if he had committed it in the United States, he plainly could be charged with a murder. Under federal law, Muchikekwanape could be charged under 18 U.S.C. § 1111, which provides:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by [. . .] willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any [. . .] aggravated sexual abuse or sexual abuse [. . .] is murder in the first degree.

18 U.S.C. § 1111(a). First-degree murder under § 1111 is punishable by death or life imprisonment. 18 U.S.C. § 1111(b).

Under California law, Muchikekwanape could be charged under Penal Code §§ 187 and 189. Section 187 provides that "[m]urder is the unlawful killing of a human being [. . .] with malice aforethought." Cal. Penal Code § 187(a). And under § 189, first-degree murder is "[a]ll murder that is perpetrated by means of [. . .] willful, deliberate, and premeditated killing, or that is committed in the perpetration

of, or attempt to perpetrate, [. . .] rape[,]" among other means. Cal. Penal Code § 189(a). First-degree murder is punishable by death, imprisonment for life without the possibility for role, or imprisonment for a term of 25 years to life. Cal. Penal Code § 190(a).

Therefore, Muchikekwanape's first-degree murder conviction in Canada would be murder under United States federal and California state law.

### 2. Escape

In November 2020, it is alleged that Muchikekwanape escaped his federal penitentiary in British Columbia. Muchikekwanape was charged by indictment with one count of escape and being at large without lawful excuse, in violation of § 145(1) of the Criminal Code of Canada. (*See* ECF 24-1 at 50.) Specifically § 145(1) provides:

> Every person who escapes from lawful custody or who is, before the expiration of a term of imprisonment to which they were sentenced, at large in or outside Canada without lawful excuse, is guilty of (a) an indictable offence and liable to imprisonment for a term of not more than two years; or (b) an offence punishable by summary conviction.

(ECF 24-1 at 50.) Because Canada is prosecuting Muchikekwanape by indictment, the offense is punishable by up to two years' imprisonment, and there is no limitations period. (*Id.*)

The conduct alleged to have been committed by Muchikekwanape constitutes escape under § 145(1) in that he left his prison in British Columbia and was on the run for five months, until he was arrested in San Diego in late March. (*Id.* at 58, 82–83.) "It is well established that all the principle of dual criminality requires is that the particular acts alleged constitute a crime in both jurisdictions." *Emami*, 834 F.2d at 1450.

The Department of State has found that this offense also is covered by the Treaty and extraditable. (*Id.* at 2.) The Court should defer to its view. *See Kolovrat*, 366 U.S. at 194; *Charlton*, 229 U.S. at 468.

Muchikekwanape could be charged with the analogous offense of escape in the United States. Under § 4082(a): "The willful failure of a prisoner to remain within the extended limits of his confinement [. . .] shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title." 18 U.S.C. § 4082(a). Pursuant to § 751(a) of Chapter 35, a convicted person like Muchikekwanape may be punished for escape from custody by up to five years' imprisonment:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both[.]

18 U.S.C. § 751(a). A person violates this statute when (1) they were in lawful custody, (2) as a result of a conviction, and (3) escaped from that custody. *United States v. Bailey*, 444 U.S. 394, 407–08 (1980); *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003).

Muchikekwanape's escape from prison in Canada, where he was serving his sentence for murder, thus would be a criminal offense in the United States. Because the offense is punishable in both the United States and Canada by more than one year in prison, dual criminality exists, and the Treaty covers Canada's escape charge. (ECF No. 24-1 at 32 [Treaty Art. 2(1)].)

10

Muchikekwanape argues that Article 9(2) of the Treaty required that the extradition request "shall be accompanied by a description of the person sought, a statement of the facts of the case, the text of the laws of the requesting State describing the offense and prescribing the punishment for the offense, and a statement of the law relating to the limitation of the legal proceedings." (ECF Nos. 24-1 at 14 [Treaty Art. 9(2)]; 28 at 2–3.) Muchikekwanape interprets this provision as requiring the actual text of the statute under the criminal code similar to the text cited for the murder offense. (ECF No. 28 at 2–4.)

Initially, the Court finds that there is no requirement in the Treaty, including in Article 9(2), that requires a copy of the relevant portion of the criminal code for the charge of escape be included in the extradition request. Further, the extradition request included the quoted actual text of the criminal code for escape. (ECF No. 24-1 at 50.)

Notwithstanding, the purpose underlying the Article 9(2) requirement that the extradition request include the text of laws describing the offense is to provide the extradite adequate notice of the offense for which extradition is sought. *In re Extradition of Bowman*, No. 19-MJ-5089-JLB, 2020 WL 6689807, at *5 (S.D. Cal. Nov. 2020) (certifying extraditability of fugitive to Scotland), *petition for writ of habeas corpus filed*, *Bowman v. Stafford*, 20-CV-2250-GPC-MSB. Muchikekwanape concurs that the "text of the law" requirement is necessary in order for this Court and Muchikekwanape to have notice of the essential elements of the applicable offense. (ECF No. 28 at 2.)

The cases cited by Muchikekwanape also stand for the proposition that the extraditee was not adequately put on notice of the nature of the offense because the offense, as set forth in the request for extradition, was materially incomplete—a situation not at issue here. *In re Extradition of Molnar* involved the extradition treaty

11

between the United States and Hungary, providing that an extradition request must include the text of the law "describing the essential elements of the offense." 202 F. Supp. 2d 782, 787 (N.D. Ill. 2002). That court determined that Hungary's extradition request did not sufficiently describe the elements of the offense. *Id.* *In re Extradition of Ferriolo* concerned the extradition treaty between the United States and Italy, also requiring that a request include the text describing "the essential elements." 126 F. Supp. 3d 1297, 1301 (M.D. Fla. 2015). The court there concluded Italy's extradition request did not comply with that treaty because the request did not include all relevant sections of code under which the fugitive had been convicted or provide full English translations. *Id.*

The court finds that Muchikekwanape was put on full notice of the nature of the escape offense. As part of the extradition package, the criminal code section for escape was quoted verbatim. (*See* ECF No. 24-1 at 50.) Therefore, the Court finds that the extradition request complies with the Treaty and Article 9(2).

### E. Element 5

Element 5 regards whether there is probable cause that the fugitive committed the charged offenses, i.e., murder and escape. To certify to the Secretary of State a fugitive's extradition, the Court must find that the evidence provided by the requesting country is "sufficient to sustain the charge." 18 U.S.C. § 3184; *see, e.g.*, *Knotek*, 925 F.3d at 1124; ECF No. 24-1 at 15 [Treaty Art. 10(1)] (extradition shall be granted if the evidence is sufficient to justify committal for trial or to prove the fugitive is the identical person convicted by the courts of the requesting state). "The probable cause standard applicable in extradition proceedings is defined in accordance with federal law and has been described as 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable

belief of the accused's guilt.'" *United States v Wiebe*, 733 F.2d 549, 553 (8th Cir. 1984) (citation omitted).

A certification of extraditability is properly based entirely on the authenticated documentary evidence and information provided by the requesting government. *See* 18 U.S.C. § 3190; *Collins*, 259 U.S. at 317; *Skaftouros v. United States*, 667 F.3d. 144, 155, n.16 (2d Cir. 2011); *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986). "[A]uthentication is the only requirement for admissibility of evidence under general United States extradition law. *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1406 (9th Cir. 1988); *see also Zanazanian v. United States*, 729 F.2d 624, 627 (9th Cir. 1984).

The documents Canada has submitted in its extradition package are properly certified, (ECF No. 24-1 at 3, 44) and thus must be admitted as evidence here. 18 U.S.C. § 3190; *see* (ECF No. 24-1 at 43 [Treaty Art. 10(2)(a)]). Of note, Muchikekwanape did not object to the admissibility of Exbibit A. (*See* ECF No. 24-1.)

**1. Murder Conviction**

Muchikekwanape does not contest the probable cause determination regarding his murder conviction. Notwithstanding, the Court's probable-cause determination may be based solely on the Canadian judgment of conviction. (*See* ECF No. 24-1 at 14 [Treaty Art. 9(4)], 62–63, 86). "[T]here is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which a fortiori establishes probable cause." *Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) (citation omitted). A foreign conviction – resulting from a trial at which the extraditee was present – warrants a probable cause finding. *See, e.g., In re Extradition of Hughes*, 2013 WL 1124294, at *6 (C.D. Cal. Mar. 2013) ("Where, as here, the fugitive has already been convicted, the conviction is

13

dispositive of the issue of probable cause."); *United States v. Vigil*, 2013 WL 314755, at *3 (E.D. Cal. Jan. 2013) ("[A] conviction is dispositive of the probable cause issue [in an extradition analysis]."); *Haxhiaj v. Hackman*, 528 F.3d 282, 290 (4th Cir. 2008) ("A foreign conviction entered after a trial at which the defendant was present suffices, in and of itself, to establish probable cause.").

Even if Muchikekwanape's conviction was not dispositive of a probable cause finding, there was competent evidence to support the belief that the accused had committed the charged offense. The facts underlying his conviction, as set forth in properly authenticated affidavits provided by Canada, demonstrate Muchikekwanape's guilt. (*See* ECF No. 24-1 at 75 ¶¶ 8–9, 81–82 ¶ 4.) The Court adopts these facts as detailed in the above cited documents and finds that Canada's extradition package sets forth enough evidence to "sustain the charge" of first-degree murder. The term remaining on Muchikekwanape's sentence is life; he will be required to serve the rest of it in custody. (*Id.* at 75–76, 83.)

### 2. Escape

Muchikekwanape contends that Canada has failed to present sufficient and competent evidence to satisfy a probable cause finding by this Court. (ECF No. 28 at 4.) Specifically, Muchikekwanape argued:

> Here, the statements of the witnesses were not provided. Reports were not provided. The government did not present any statements from the individuals who took those statements. Nor does the declaration describe who made these statements or whether the statements were made in a group setting or individually such that they could be considered corroboration. Rather, the declarant is from an individual who did not conduct any witness interviews, but rather "reviewed the investigative file in its entirety, including police statements, Correctional Service of Canada ("CSC") reports, and witness statements. None of these documents are included in Canada's request though.

(*Id.* at 5–6.)

The Supreme Court has found that extradition may be predicated entirely on the "unsworn statements of absent witnesses." *Collins*, 259 U.S. at 317. Indeed, both sworn and unsworn statements contained in properly authenticated documents are permissible. *Artukovic*, 784 F.2d at 1356. Additionally, hearsay evidence is permitted in extradition proceedings. *Then*, 92 F.3d at 855; *Escobedo*, 623 F.2d at 1102 (permitting written third-party account of deposition testimony).

Even though Muchikekwanape does not cite to Exhibit A (ECF No. 24-1) to identify which evidence he is contending is insufficient and not competent, the evidence provided by Canada in support of probable cause to support the escape is Constable Darcy Burke's Affidavit of Fact and Lisa Manson's Statement of Facts. (*See* ECF No. 24-1 at 57–60, 81–84.)

Constable Burke is a Canadian police officer and the lead investigator in this case. In order to fulfill her role, Constable Burke reviewed the investigative file in its entirety, which included police statements, Correctional Service reports (CSR), and witness statements. (ECF No. 24-1 at 57.) Constable Burke makes her Affidavit under Oath and provides that all the information therein to be accurate to the best of his knowledge. (*Id.*)

Lisa Manson is the National Manager, Sentence Management, for the Correctional Service of Canada (CSC). (ECF No. 24-1 at 81.) Lisa Manson indicates in her Statement of Facts that she is familiar with the computation of sentences in Canada. (*Id.*) In her position with CSC, Lisa Manson has access to and has reviewed the contents of and evidence in the CSC's files relating to Roderick Muchikekwanape in preparation of her Statement. (*Id.*) The CSC is the federal government agency in Canada responsible for administering sentences of two years or more, as imposed by the courts. (*Id.*) In addition, the CSC manages institutions

of various security levels and supervises offenders under conditional release or long-term supervision in the community. (*Id.*)

Lisa Manson's Statement relates to allegations that Muchikekwanape, a Canadian born citizen, escaped from a federal correctional facility in Mission, British Columbia on October 29, 2020. (*Id.* at 81–82.) Lisa Manson certifies that the facts contained in her Statement to be accurate to the best of her knowledge and belief. (*Id.* at 81, 84.)

This Circuit and other courts routinely rely on the foreign investigator's summary of the facts. *See Zanazanian*, 729 F.2d at 626 (This court invoked *Collins* in *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726 (9th Cir.1975), to find competent an investigation report by Japanese police which reviewed, among other items, hearsay statements of numerous witnesses.); *Emami*, 834 F.2d at 1451 ("Emami has not challenged the authentication of Keller's affidavit, and so barring any conflict with specific provisions of the Treaty, the hearsay statements Keller summarized in his affidavit are admissible."); *Manta*, 518 F.3d at 1139, 1145–47 (affirming probable-cause determination relying on foreign prosecutor's investigation report); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1162–63, 1166 (11th Cir. 2005) (affirming probable-cause determination relying on foreign investigator's unsworn bill of indictment); *Bovio v. United States*, 989 F.2d 255, 259–61 (7th Cir. 1993) (affirming probable-cause determination relying on foreign investigator's statement); *In re Extradition of Sainez*, No. 07-MJ-177-JMA, 2008 WL 366135, at *15 (S.D. Cal. Feb. 2008) ("The Court may properly consider all of the [documentary] evidence [submitted in support of the extradition request], whether sworn or unsworn, or whether the evidence consists of an actual statement given by a witness or a summary thereof.").

Based on the above cited caselaw, this Court finds that Constable Burke's and Lisa Manson's summary of the facts to be admissible for a finding of probable cause. Of note, both are Canadian law enforcement officers who have certified that the facts contained therein are accurate to the best of their knowledge.

The Canadian Criminal Code §145(1) provides that "[e]very person who escapes from lawful custody or who is, before the expiration of a term of imprisonment to which they were sentenced, at large in or outside Canada without lawful excuse, is guilty of [. . .] an indictable offence and liable for a term of imprisonment of not more than two years[.]" (*See also* ECF No. 24-1 at 50.)

Constable Burke attests in her summary of the facts that on October 29, 2020 at 22:32, CSC employee Kambo who was working at the Mission Minimum Institution called RCMP (Royal Canadian Mounted Police) that Muchikekwanape was unlawfully at large. (*Id.* at 58.) Early on that date, at 22:00 a headcount of all inmates was taken, and Muchikekwanape was not accounted for. (*Id.*) Muchikekwanape could not be located within the prison or on the prison grounds. (*Id.*) CSF staff conducted a search of his room and observed that all of his personal effects had been emptied from his room. (*Id.*) Thereafter, at 23:20 on that same date a Warrant of Apprehension and Recommitment was issued for Muchikekwanape for being at large before the expiration of his sentence. (*Id.* at 58–59, 62–63, 65.)

Lisa Manson certified that on October 29, 2020, Muchikekwanape escaped from Mission Institution, while serving his sentence. (*Id.* at 81.) A Correctional Manager from Mission Institution Minimum contacted the CSC National Monitoring Centre to report the escape of Muchikekwanape as he was not present for the count conducted at 10:00 pm Pacific Daylight Time. (*Id.* at 82.) All institutional areas accessible to inmates were searched and Muchikekwanape was not located. (*Id.*) As a result, a Warrant of Apprehension and Recommitment to

Custody in a Penitentiary was issued for Muchikekwanape by the Institutional Head. (*Id.* at 82–83.)

Under federal law, probable cause "exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Rodis v. City, County of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009) (quoting *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007)). "The probable cause standard is incapable of precise definition or quantification into percentages" and is a "fluid concept" because it "depends on the totality of the circumstances" and "turn[s] on the assessment of probabilities in particular factual contexts[.]" *In re Extradition of Santos*, 795 F. Supp. 2d at 971–72 (citing *Rodis,* 558 F.3d at 969); *see Wiebe*, 733 F.2d at 553 ("The probable cause standard applicable in extradition proceedings is defined in accordance with federal law and has been described as 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'").

Although the federal probable cause standard applies, the probable cause finding need not be "predicated upon evidence that would be admissible at a preliminary hearing or before a grand jury in the United States." *Zanazanian,* 729 F.2d at 626 (citing *Collins,* 259 U.S. at 317). The magistrate judge's function is "to determine whether there is 'any' evidence sufficient to establish reasonable or probable cause." *United States ex rel. Sakaguchi*, 520 F.2d at 730–31; *see Cleugh v. Strakosch,* 109 F.2d 330, 333 (9th Cir. 1940) (stating, in an extradition case, that "the sole question was, and is, whether there was any evidence warranting the finding that there was reasonable or probable cause to believe appellee guilty—not whether such evidence was sufficient, but whether there was any such evidence"); *In re Extradition of Santos,* 795 F. Supp. 2d at 972.

The Court finds that the Statement of Facts of Constable Burke and Lisa Manson clearly establish probable cause that Muchikekwanape escaped from lawful custody before the expiration of his term of imprisonment and was at large in or outside Canada without lawful excuse. Muchikekwanape was not present for the head count conducted at 10:00 pm Pacific Daylight Time. All institutional areas accessible to inmates were searched and Muchikekwanape was not located. CSF staff conducted a search of his room and observed that all of his personal effects had been emptied from his room. Thereafter, on that same date, a Warrant of Apprehension and Recommitment was issued for Muchikekwanape for being at large before the expiration of his sentence. The fact that Muchikekwanape was arrested in San Diego in March 2021 adds reliable and conclusive evidence that he escaped from lawful custody and was at large outside of Canada without any lawful excuse. Muchikekwanape offered no evidence of having a lawful excuse for being at large. In fact, Muchikekwanape agreed at the July 22, 2021 hearing that the extradition decision may be made on the papers on file. (ECF No. 34.)

After the Warrant for Apprehension and Recommitment was issued on October 29, 2020, Constable Burke detailed inmate interviews conducted by Mission RCMP in her Statement of Facts. Those statements were taken between October 30, 2021 and November 3, 2020 and detailed therein. (ECF No. 24-1 at 58.) The Court has not considered any of those inmate statements in its finding of probable cause. As Muchikekwanape correctly points out, "[a]ll evidence does not have the same importance even if it is authentic and admissible." (ECF No. 28 at 4) (citing *United States v. Kin-Hong*, 110 F.3d 103, 121 (1st Cir. 1997)).

///
///
///

## IV.     Conclusion

THEREFORE, pursuant to 18 U.S.C. § 3184, the Court **GRANTS** the request for extradition and **CERTIFIES** to the Secretary of State of the United States of America that Fugitive Roderick Muchikekwanape is extraditable to Canada on the offenses for which extradition was requested.  It is ordered pursuant to 18 U.S.C. § 3186 that Muchikekwanape be committed to the custody of the United States Marshal pending final disposition of this matter by the Secretary of State.

I further order that the Clerk of this Court forward a certified copy of this Certification and Committal for Extradition, together with a copy of the evidence presented in this case, including the formal extradition documents received in evidence and any testimony received in this case, to the Secretary of State.

**IT IS SO ORDERED**.

Dated:  September 15, 2021

Hon. Bernard G. Skomal
United States Magistrate Judge